# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT WHARTON,** | CIVIL ACTION |
| Petitioner, | No. 01-6049 |
| v. | THIS IS A CAPITAL CASE |
| **DONALD T. VAUGHN, et al.** | |
| Respondents. | |

Goldberg, J.                                                 March 4, 2019

## MEMORANDUM OPINION

Thirty-five years ago, Petitioner Robert Wharton and his cohort murdered a West Philadelphia couple and nearly froze to death their six-month-old daughter. The facts of these killings are particularly horrific.

Angry that he had not been paid what he believed was debt owed for construction work, Wharton first terrorized his victims by breaking into their home, mutilating family pictures, vandalizing the home and defecating on the floor. On January 30, 1984, Wharton and his accomplice again broke into the victims' home, where they tied the couple up, and then watched television for several hours contemplating the couple's fate. The wife, Ferne Hart, was then bound in duct tape, taken to the second floor, stripped almost entirely naked and drowned in the bathtub. The husband, Bradley Hart, was taken to the basement and strangled to death with an electrical cord while being forced to lay face down in a pan of water.

Not satisfied, and knowing that the couple's six-month-old was also in the house, Wharton turned the heat off and left the child alone in the house in the dead of winter to freeze to death. Found two days later, the infant barely survived.

In 1985, after having confessed to the murders, Wharton was convicted of two counts of first-degree murder and sentenced to death.

For the past three decades, Wharton has sought to overturn his conviction and death sentence. Wharton's efforts were consistently and zealously opposed by the Philadelphia District Attorney's Office. Wharton's conviction and death sentence have been reviewed by the Pennsylvania Supreme Court on direct review and state collateral review. And on federal habeas review in this Court, Wharton raised 23 separate claims, which I addressed in a 157-page opinion denying each of the claims. Wharton appealed to the United States Court of Appeals for the Third Circuit, and, in 2018, that court affirmed my decision in all respects except as to one penalty-phase claim, pertaining to whether counsel was ineffective for failing to place before the penalty phase jury evidence of Wharton's adjustment to prison. The Third Circuit remanded the case to this Court for the sole purpose of conducting an evidentiary hearing on that single claim.

As it did in the state court proceedings, the Philadelphia District Attorney's Office zealously advocated against Wharton in the federal court proceedings, consistently seeking the affirmance of the death sentence.

Then, most recently on February 6, 2019—a week before a status-of-counsel hearing was scheduled to take place before me—the District Attorney's Office submitted notice that, after three decades of advocating for a death sentence for Wharton, it would no longer contest the only remaining penalty-phase claim and would not seek a new death sentence in state court. This notice provided no explanation for this complete reversal of course, and requested that I issue an order

summarily granting relief, without conducting the evidentiary hearing as directed by the Third Circuit. Unsurprisingly, Wharton's counsel joined in this request, submitting a one-page joint proposed order to that effect.

Notwithstanding the prosecutor's unexplained concession, the law requires that I independently evaluate the merits of Wharton's remaining claim. Because I cannot do so on the current record, I will deny the parties' request that I summarily grant habeas relief, and will order that the parties further brief the issues discussed below.

## I. FACTUAL & PROCEDURAL BACKGROUND[1]

As discussed above, Wharton was convicted in the Philadelphia Court of Common Pleas in 1985 of two counts of first-degree murder and other related offenses. The victims were Bradley and Ferne Hart, whom Wharton and another man murdered as retribution for criticisms of, and failure to pay for, certain construction work that Wharton had performed. Wharton v. Vaughn, 722 F. App'x 268, 270 (3d Cir. 2018).

At trial, the prosecution introduced Wharton's confession, and other compelling evidence such as the victim's property being found in Wharton's possession. The jury convicted Wharton of both murders and, following the separate penalty phase, returned a verdict of death. Wharton, 722 F. App'x at 271.

Wharton appealed to the Pennsylvania Supreme Court, which, in 1992, affirmed the conviction but reversed the death sentence, due to a defect in the jury charge. In a second penalty hearing held later that year, another jury returned a verdict of death. Wharton appealed again, but this time, in 1995, the Pennsylvania Supreme Court affirmed. Wharton, 722 F. App'x at 271-72.

---

[1] A more detailed recitation of the factual and procedural background of this case can be found in the opinion of the Third Circuit, affirming in part, and vacating and remanding in part, this Court's denial of habeas relief. Wharton v. Vaughn, 722 F. App'x 268, 270-272 (3d Cir. 2018). The facts set out below are derived from that opinion and the record in this case.

Thereafter, Wharton filed a petition in the Philadelphia Court of Common Pleas under the Pennsylvania Post Conviction Relief Act ("PCRA"). The PCRA court denied the petition without hearing in 1997, and the Pennsylvania Supreme Court affirmed in 2002. Wharton, 722 F. App'x at 272.

In December 2001, Wharton initiated this federal habeas proceeding under 28 U.S.C. § 2254. This matter was initially assigned to the Honorable James T. Giles, who appointed Wharton counsel. Thereafter, Wharton filed his habeas petition and supporting memorandum of law. Judge Giles held oral argument on the petition in 2006. (See Doc. Nos. 1, 5, 22, 69.)

In 2008, before a decision was rendered on Wharton's habeas petition, the case was reassigned to me. Thereafter, I permitted certain discovery and held an evidentiary hearing on several of Wharton's 23 claims, after which I permitted supplemental briefing. (See Doc. Nos. 81, 106, 112-113, 116.)

In August 16, 2012, I issued a 157-page opinion denying relief on each of Wharton's 23 claims, but granting a certificate of appealability on two of the claims. Wharton appealed, and the Third Circuit expanded the certificate of appealability to include one additional claim, concerning whether Wharton's counsel at the second penalty hearing was ineffective for failing to introduce mitigating evidence that Wharton was adjusting well to incarceration. (I refer to this claim hereinafter as the "Remaining Sentencing Claim.") (See Doc. Nos. 126-127.)

In January 2018, the Third Circuit affirmed all of my rulings including the denial of the two claims on which I had granted the certificate of appealability, and remanded on only one issue—the Remaining Sentencing Claim. The Third Circuit directed that I hold an evidentiary hearing on the Remaining Sentencing Claim, because such a hearing could show: (1) that Wharton's counsel at the second penalty hearing acted unreasonably by failing to investigate

4

Wharton's adjustment to prison, and (2) that there is a reasonable probability that, had counsel presented the evidence of adjustment, the jury would have voted against imposing a death sentence. Wharton, 722 F. App'x at 272-284.

Following that decision, Wharton filed a petition for a writ of certiorari with the U.S. Supreme Court, which was denied on December 3, 2018. At that point, the case became ripe for addressing the Remaining Sentencing Claim on remand. See Wharton v. Vaughn, 139 S. Ct. 594 (cert denied Dec. 3, 2018).

On January 4, 2019, Wharton filed in this Court a *pro se* "Petition for Appointment of New Counsel," seeking to remove his current counsel—the Capital Habeas Corpus Unit of the Federal Community Defender's Office—which has represented Wharton since being appointed by Judge Giles in 2003. After receiving this *pro se* submission, I scheduled a status conference to address the issue with counsel. (See Doc. Nos. 13, 152-53.)

However, shortly before this hearing, on February 6, 2019, the Philadelphia District Attorney's Office filed a "Notice of Concession of Penalty Phase Relief." The Notice indicates that the prosecutor is conceding relief on the Remaining Sentencing Claim, and that it will not "not seek new death sentences in state court." The Notice further states that the "the grant of sentencing relief on [Wharton's] penalty phase ineffectiveness claim in accordance with [its] concession would end the litigation of this case . . . and eliminate the need for . . . [further] proceedings in this Court." Curiously, after 35 years of consistently and zealously seeking a death sentence, the Notice provides no explanation as to the basis of the concession, noting only that the decision to concede was made "[f]ollowing review of this case by the Capital Case Review Committee of the Philadelphia District Attorney's Office, communication with the victims' family, and notice to [Wharton's] counsel." (Doc. No. 155.)

Two days later, the parties submitted for my approval a one-page Proposed Order granting habeas relief. The Proposed Order provides that "upon a careful and independent review of the parties' submissions and all prior proceedings in this matter," the petition for a writ of habeas corpus is "granted in part, as to the sentences of death, on the ground of counsel's ineffectiveness at the second penalty hearing." The Proposed Order further provides that Wharton "shall be released from custody unless the Commonwealth of Pennsylvania grants him a new sentencing hearing or resentences him to life without parole within 180 days." However, like the District Attorney's Notice, the Proposed Order does not set out the reasons why the merit of Wharton's Remaining Sentencing Claim is apparent on the current record, such that the evidentiary hearing ordered by the Third Circuit is not required. (Doc. No. 156)

Because I conclude that I must independently evaluate the merits of Wharton's Remaining Sentencing Claim, notwithstanding the District Attorney's unexplained about-face, and because I cannot do so on the current record, I decline to adopt the parties' Proposed Order. Rather, I will order the parties to provide any facts and legal authority supporting their request that I grant of habeas relief on the current record.

## II.  DISCUSSION

The prosecutor's unexplained concession of the Remaining Sentencing Claim presents two questions: (1) whether I have the obligation—or even the authority—to grant Wharton's petition for a writ of habeas corpus under 28 U.S.C. § 2254, based solely on this concession, or whether I must independently review, and determine the merits of, that now-conceded claim; and (2) if I must make an independent determination on the merits, whether I can do so on the current record, without conducting the evidentiary hearing directed by the Third Circuit.

For the reasons set out below, I conclude that I must make an independent determination of the merits of the Remaining Sentencing Claim, and that I cannot do so on the current record. However, because the Notice and the parties' Proposed Order do not sufficiently address these issues, I will give the parties the opportunity to brief them.

### A. *May a Court Grant Habeas Relief Based Only on the District Attorney's Concession, or Must it Independently Evaluate the Merits of the Conceded Claim?*

The federal statute authorizing a district court to grant habeas relief to a state prisoner, 28 U.S.C. § 2254, limits a district court's authority to grant such relief. Specifically, § 2254(a) provides, in relevant part, that "a district court shall entertain an application for a writ of habeas corpus . . . *only on the ground that [the state prisoner] is in custody in violation of the Constitution or laws or treaties of the United States*." (emphasis added) Thus, under § 2254, a district court's authority to grant the writ is limited to those cases in which there has been a violation of the Constitution or laws of the United States. It logically follows that a district court cannot dispense with this limitation merely because the prosecutor has now changed its position and conceded that there has been such a violation.

In addition to being consistent with the plain text of § 2254, this conclusion is supported by the cases that address the effect of a state's concession of a habeas claim. At least two Courts of Appeals—the Courts of Appeals for the Fifth and Seventh Circuits—have squarely addressed the question and concluded that such a concession does not relieve a court of its responsibility to consider the merits of a habeas claim. See Johnson v. McCaughtry, 265 F.3d 559, 564 (7th Cir. 2001); Every v. Blackburn, 781 F.2d 1138, 1140–41 (5th Cir. 1986).

In Johnson, a state prisoner brought a petition for a writ of habeas corpus pursuant to § 2254. 265 F.3d at 562. The district court denied the petition as barred by the statute of limitations. Id. But after the petitioner appealed to the Seventh Circuit, "the government confessed error . . . ,

stating that [the petitioner's] habeas petition was timely filed, and requesting remand" to the district court for consideration of the merits. Id. at 564. Notwithstanding this concession, the Seventh Circuit independently considered the statute of limitations issue, explaining that "[r]egardless of which position the [state] chooses to advocate, we will make an independent judicial assessment of whether the district court correctly dismissed [the petitioner's] petition based on the statute of limitations." Id.

Likewise, Every involved a state prisoner's § 2254 petition. 781 F.2d at 1139. There, the petitioner sought habeas relief on the ground that the state sentencing court had violated his right to due process by failing to consider certain sentencing alternatives. Id. The district court denied the habeas petition on the merits, concluding that the state sentencing court had, in fact, been aware of the sentencing alternatives. Id. at 1140. After the petitioner appealed to the Fifth Circuit, the state "concede[d] that [the petitioner] should receive another evidentiary hearing" on the claim. Id. The Fifth Circuit refused to summarily accept that concession, holding that "[t]he state's confession of error, if incorrect, d[id] not bind [the court]." Id. Rather, the court "retain[ed] the . . . full authority to reject a state's erroneous confession of error and to decide the case in accord with the law." Id. at 1141.

Multiple district courts have likewise refused to blindly accept a state's concession of habeas relief. See Saldano v. Cockrell, 267 F. Supp. 2d 635, 642 (E.D. Tex. 2003) (noting, in reaching the merits of a § 2254 petition in which the state conceded, that the court was nevertheless "required to perform an independent analysis of [the petitioner]'s claim"); Keyes v. Renico, No. 05-cv-71160, 2005 WL 2173212, at *3 (E.D. Mich. Sept. 2, 2005) (same); Korematsu v. United States, 584 F. Supp. 1406, 1413–14 (N.D. Cal. 1984) (concluding, in reaching the merits of a petition for a writ of coram nobis challenging a federal criminal conviction, that notwithstanding

the government's concession, the court must independently review "the original record and the evidence . . . to determine whether there is support for the petition"). And my research has revealed no cases reaching a contrary conclusion.

The courts in Johnson and Every relied on two U.S. Supreme Court decisions in which the Court declined to accept concessions by the government made for the first time on direct appeal. See Young v. United States, 315 U.S. 257, 258 (1942); Sibron v. New York, 392 U.S. 40, 58-59 (1968). In Young, a person convicted of a federal drug offense in district court appealed his conviction. 315 U.S. at 257-58. By the time the case reached the U.S. Supreme Court on direct appeal, the government had conceded that the conviction should be reversed. Id. at 258. Before addressing the merits of the defendant's claims, the Court first noted that it was not bound by the government's concession:

> The public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent. But such a confession does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed. The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as that of the enforcing officers. Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties.

Id. at 258–59 (citations omitted).

Similarly, in Sibron, a person convicted of a New York state drug offense appealed his conviction, and the New York Court of Appeals affirmed. 392 U.S. at 44. The U.S. Supreme Court granted certiorari on the issue of whether certain evidence should have been suppressed because it was obtained in violation of the Fourth and Fourteenth Amendments. Id. Before the U.S. Supreme Court, the district attorney responsible for the prosecution conceded that the evidence should have

9

been suppressed. Id. at 58. Citing its opinion in Young, the Court concluded that this concession was not binding, and did not relieve the Court of its obligation to make an independent determination of the merits of the defendant's constitutional claim. Id. And, of particular relevance here, the Court noted that this obligation to conduct an independent assessment was heighted by the fact that the concession was made "not by a state official, but by the elected legal officer of one political subdivision within the State"—namely one county's district attorney. Id. at 58-59. As the Court explained:

> It is the uniform practice of this Court to conduct its own examination of the record in all cases where the Federal Government or a State confesses that a conviction has been erroneously obtained. For one thing, as we noted in Young, "our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties." . . . Moreover, in this case the confession of error on behalf of the entire state executive and judicial branches is made, not by a state official, but by the elected legal officer of one political subdivision within the State. The District Attorney for Kings County seems to have come late to the opinion that this conviction violated [the defendant's] constitutional rights. For us to accept his view blindly in the circumstances, when a majority of the Court of Appeals of New York has expressed the contrary view, would be a disservice to the State of New York and an abdication of our obligation to lower courts to decide cases upon proper constitutional grounds in a manner which permits them to conform their future behavior to the demands of the Constitution.

Id. (citations omitted).

Here, as in Sibron, the district attorney for a single county within the Commonwealth of Pennsylvania has "come late to the opinion" that a conviction affirmed by the Commonwealth's highest court violates the Constitution. For more than three decades the Philadelphia District Attorney's Office has zealously resisted Wharton's numerous efforts to overturn his death sentence. This litigation has included direct review, state collateral review, federal habeas review before this Court, and affirmance of all but one claim by the Third Circuit. Yet, after so many years of advocating for a death sentence, the District Attorney's Office has now come to believe Wharton's sentence violates the Constitution. And this concession is made without a single

explanation. To accept that view "blindly" and summarily grant habeas relief without independently reviewing the merits of the remaining claim would be an abdication of my responsibility to perform the judicial function.

Finally, while not binding in this federal habeas proceeding under § 2254, I note that the Pennsylvania Supreme Court has taken a similar view that a district attorney's concession of a PCRA petition does not preclude it from reaching the merits of that petition. See Commonwealth v. Brown, 196 A.3d 130, 141-49 (Pa. 2018). In Brown, as here, the Philadelphia District Attorney's Office initially opposed a PCRA petition filed by a state prisoner under sentence of death—only to concede the petition after a change of administration in the Office. Relying on Young and Sibron, as well as the text of the PCRA, the court rejected the District Attorney's argument that its concession of relief was an exercise of its prosecutorial discretion, and thus binding on the court:

> After the jury in this case reached its decision to enter a verdict recommending a death sentence, the district attorney lost any prosecutorial discretion to alter that verdict. If the law were otherwise, district attorneys would have the powers of courts, while courts would be reduced to mere rubber stamps . . . . [I]f the "power" of a court amounts to nothing more than the power "to do exactly what the parties tell it to do, simply because they said so and without any actual merits review, it is not judicial power at all. It is a restriction on power."
>
> Finally, we note that the Philadelphia District Attorney's Office, through the exercise of its prosecutorial discretion, actively sought and obtained a death sentence for [the petitioner]. It cannot now seek to implement a different result based upon the differing views of the current office holder with respect to the prior exercise of prosecutorial discretion. Elections alone cannot occasion efforts to reverse the result of judicial proceedings obtained by the prior office holder. Every conviction and sentence would remain constantly in flux, subject to reconsideration based upon the changing tides of the election cycles.

Id. at 149 (citations omitted).

The reasoning in Brown—supported by the U.S. Supreme Court's decisions in Young and Sibron, and consistent with the reasoning of the Courts of Appeals for the Fifth and Seventh Circuits—is equally applicable here. Accordingly, I will not blindly accept the Philadelphia

11

District Attorney's concession of the Remaining Sentencing Claim and grant habeas relief. Rather, I must independently evaluate that claim to determine whether it has merit. However, I will allow the parties to further brief this legal issue should they choose to do so.

### B. Can an Independent Evaluation of the Merits of the Remaining Sentencing Claim Be Made on the Current Record?

Having concluded that I must independently evaluate the merits of the Remaining Sentencing Claim, it remains to determine whether I can make such an evaluation on the current record before me.

As noted above, the Third Circuit has concluded that Wharton is entitled to an evidentiary hearing on the Remaining Sentencing Claim, because such a hearing could demonstrate that his counsel: (1) "acted unreasonably by failing to investigate and/or present Wharton's prison-adjustment evidence," and (2) that "had [his counsel] presented that evidence at the second penalty hearing, there is a reasonable probability that at least one juror would have voted against imposing the death penalty." Wharton, 722 F. App'x at 281. Neither the District Attorney's Notice nor the parties' Proposed Order identifies facts in the record that conclusively establish Wharton's entitlement to relief on the Remaining Sentencing Claim, such that the evidentiary hearing ordered by the Third Circuit is not required. Accordingly, I conclude that I cannot independently evaluate the merits of the Remaining Sentencing Claim on the current record. However, I will allow the parties to further brief this issue should they choose to do so.

### III. CONCLUSION

For the reasons set out above, I decline to enter the parties' Proposed Order summarily granting habeas relief. However, I will permit both parties to further brief the issues discussed above, before determining the appropriate course of action in this matter.

An appropriate Order follows.