IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT WHARTON, | : | |
| | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | No. 01-6049 |
| | : | |
| TAMMY FERGUSON,[1] Superintendent, | : | **CAPITAL CASE** |
| | : | |
| Respondent. | : | |

**PETITIONER'S MOTION TO EXPAND RECORD,
MOTION FOR APPROVAL OF PROPOSED SETTLEMENT, AND
CONSOLIDATED MEMORANDUM OF LAW ORDERED BY THE COURT**

Petitioner Robert Wharton moves to expand the record, seeks this Court's approval for the proposed settlement of his capital habeas corpus petition, and submits a memorandum of law in compliance with the Court's Order of March 4, 2019 (ECF # 161). In support of his requests for relief, he states the following:

1.  Petitioner Robert Wharton is a death-sentenced Pennsylvania prisoner incarcerated at the State Correctional Institution Phoenix. On August 16, 2012, this Court denied his petition for habeas corpus. ECF # 126. On January 11, 2018, the Court of Appeals for the Third Circuit reversed the Court's order in part, affirming the denial of relief on his convictions but vacating the denial of relief on his death sentence and finding error in the denial of an evidentiary hearing on a single claim.

---

[1] Tammy Ferguson is the current Superintendent of SCI Phoenix. She is automatically substituted for Respondent Vaughn pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

2. On December 3, 2018, the United States Supreme Court denied Mr. Wharton's petition for certiorari, which sought review of his guilt phase claims. *Wharton v. Vaughn*, 139 S. Ct. 594 (2018). Litigation is therefore complete on all claims arising out of Mr. Wharton's convictions and sentences except for the claim now before this Court.

3. On February 6, 2019, the Philadelphia District Attorney, representing the Respondent, filed a Notice of Concession (ECF # 155). The District Attorney advised the Court:

> Following review of this case by the Capital Case Review Committee of the Philadelphia District Attorney's Office, communication with the victims' family, and notice to petitioner's counsel, respondent hereby reports to the Court that it concedes relief on petitioner's remaining claim of ineffective assistance at the second penalty hearing, and does not contest the grant of a conditional writ of habeas corpus with respect to petitioner's death sentences.
>
> In addition, respondent agrees that, following the grant of a conditional writ as to petitioner's death sentences, it will not seek new death sentences in state court.

4. On February 11, 2019, the parties jointly filed a proposed order that would have granted Mr. Wharton habeas relief on his claim that his counsel was ineffective at the penalty phase of trial. ECF # 156-1.

5. On March 4, 2019, this Court issued a Memorandum Opinion and Order addressing two questions: (1) whether it had the obligation, or even the authority, to grant the habeas petition based solely on the District Attorney's concession, and, (2) if the Court must instead make an independent determination on the merits, whether it could do so on the current record without conducting the evidentiary hearing contemplated by the Third Circuit. ECF # 160 at 6, ECF # 161. The Court invited the parties to brief these questions. ECF # 160 at 12.

6. Mr. Wharton moves to expand the record to include the declaration of his trial counsel, William Cannon, Esq., pursuant to Rule 7 of the Rules Governing Habeas Cases. He also moves for the Court's approval of the proposed settlement embodied in the District Attorney's

Notice of Concession. In support of his motion and in compliance with the Court's March 4 order, he relies on the Memorandum of Law below, the attached exhibits, and the record in this case.

                                                      Respectfully submitted,

                                                      /s/ Claudia Van Wyk
                                                      **CLAUDIA VAN WYK**
                                                      **VICTOR J. ABREU**
                                                      Federal Community Defender Office
                                                      Capital Habeas Unit
                                                      Eastern District of Pennsylvania
                                                      Suite 545 West - The Curtis Center
                                                      Philadelphia, Pennsylvania 19106
                                                      (215) 928-0520
                                                      claudia_vanwyk@fd.org
                                                      victor_abreu@fd.org

Dated:     April 3, 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

ROBERT WHARTON,

      Petitioner,

  v.

TAMMY FERGUSON, et al.,

      Respondents.
_____

:
:
:  CIVIL ACTION
:
:
:  No. 01-6049
:
:  **CAPITAL CASE**
:
:

### MEMORANDUM OF LAW

**I. The Court Should Expand The Record To Include The Declaration Of Trial Counsel.**

  Rule 7 of the Rules Governing Section 2254 Cases authorizes a habeas court to "direct the parties to expand the record by submitting additional materials relating to the petition." These materials may include affidavits. Habeas Rule 7(a), (b); *see Vasquez v. Hillery*, 474 U.S. 254, 258 (1986) (noting with approval district court's expansion of record with affidavits, pursuant to Rule 7, in support of habeas claim); *Blackledge v. Allison*, 431 U.S. 63, 81 (1977) (noting that consideration of affidavits and other documents under Rule 7 may render hearing unnecessary); *Pursell v. Horn*, 187 F. Supp. 2d 260, 381-82 (W.D. Pa. 2002) (expanding record with affidavits and other documents detailing undiscovered mitigating evidence, because Commonwealth did not dispute facts, and granting habeas relief on ineffective assistance claim without evidentiary hearing).

  Mr. Wharton moves to expand the record to include a declaration executed by his trial counsel, William Cannon, Esq., on July 3, 2018. *See* Exhibit 1; *see also* 28 U.S.C. § 1746 (any matter that, according to rule, may be proven by affidavit may also be proven by declaration). Mr.

1

Cannon specifically addresses the sole claim before this Court, and the District Attorney considered his declaration when deciding to seek a settlement of this litigation. Because the declaration squarely "relat[es]" to the petition, the Court should expand the record to include it.

## II. The Evidence Provides Ample Basis for the District Attorney's Proposed Settlement.

The Notice of Concession filed in this Court (ECF # 155) arose from settlement negotiations between the District Attorney and counsel for petitioner Robert Wharton. Mr. Wharton's supporting proffer and the record in this case provided the District Attorney with substantial grounds for settlement, including a grant of sentencing relief.

First, Mr. Wharton presented trial counsel Cannon's 2018 declaration (Exhibit 1). Mr. Cannon states that he represented Mr. Wharton at both his initial trial in 1985 and his penalty resentencing trial in 1992, and that he "did not investigate and/or present evidence of his prison adjustment during his six years of incarceration between the two trials." Exhibit 1, ¶ 4. He continues:

> If I were called to testify at [the hearing ordered by the Third Circuit], I would explain that I was not operating under any strategy or tactic when I did not investigate and present evidence of Mr. Wharton's positive prison adjustment at his second penalty hearing and argue to the jury that Mr. Wharton's life should be spared because he posed no danger to inmates or staff if he were sentenced to life.

Exhibit 1, ¶ 6.

The District Attorney also reviewed the six years of prison records available to Mr. Cannon at the time of the 1992 penalty retrial (Exhibit 2), and the report of psychologist Harry Krop, Ph.D., who had reviewed the records and conducted a clinical interview and evaluation (Exhibit 3, ¶ 2). As the Third Circuit described the prison records in its de novo review of this claim, Mr. Wharton's monthly evaluations indicated "that Wharton was adjusting well to prison life and that his behavior was generally satisfactory," although "a few of them contain negative information." Opinion,

Court of Appeals for Third Circuit, January 11, 2018 (Exhibit 4), at 30. Mr. Wharton's grievances, as Dr. Krop interpreted them, "exhibit[ed] concern over the day-to-day details of his incarceration . . . demonstrating a relative acceptance of [Wharton's incarceration]." Exhibit 4 at 29 (quoting Declaration of Harry Krop, Ph.D. (Exhibit 3, ¶ 5)). Dr. Krop concluded:

> It is my opinion that during the time period in question Mr. Wharton made a positive adjustment to prison life. It is also my opinion that had he been given a life sentence in 1992—or now—he would be a prime candidate for constructive rehabilitation in the general prison population. Accordingly, it is my further opinion that he would not pose a future danger to the prison community in the event he were to serve a sentence of life imprisonment.

Exhibit 3, ¶ 7.

This evidence formed the background of the settlement negotiations. The Third Circuit anticipated that the District Attorney might present his own expert, or otherwise "counter[]" the evidence proffered by Petitioner. Exhibit 4 at 28, 30. The District Attorney's Office, however, ultimately determined that it need not present its own evidence. It considered Mr. Wharton's proffer along with his criminal record (three burglary arrests) and the trial record, including the jurors' two days of deliberations and initial deadlock. It consulted the victims' families, weighed resources and policy priorities, and decided that settlement of the litigation before this Court was appropriate.

In light of those representations, Mr. Wharton, after consultation with counsel, has agreed to the proposed settlement, and seeks this Court's approval for the reasons below.

3

**III.    The Court Can Approve The Proposed Settlement On The Basis Of The District Attorney's Concession In Combination With The Attached Submissions And The Record In This Case.**

**A.    The Third Circuit's De Novo Ruling That Mr. Wharton Has Presented A Prima Facie Claim Of Ineffective Assistance Is Supported By the Record and Controlling Precedent.**

Trial counsel's declaration, in light of the Third Circuit's opinion and the record in the case, should enable the Court to accept the proposed settlement.

*Deficient performance.*  On the performance prong, the Court of Appeals ruled de novo:

> "[A] defendant's disposition to make a well-behaved and peaceful adjustment to life in prison is itself an aspect of his character that is by its nature relevant to the sentencing determination." *Skipper v. South Carolina*, 476 U.S. 1, 7 (1986). As a result, a defense attorney has a duty to obtain a capital defendant's prison records "as part of the 'obligation to conduct a thorough investigation of the defendant's background,'" *Blystone*, 664 F.3d at 422-23 (quoting *Williams*, 529 U.S. at 396). Wharton alleges that Cannon failed to obtain those records in this case, and nothing in the habeas record contradicts that allegation. If Wharton is given an opportunity to question Cannon in an evidentiary hearing — Cannon has yet to testify about this evidence — Wharton may be able to show that Cannon acted unreasonably. *See id*. at 420 ("[I]f counsel has failed to conduct a reasonable investigation to *prepare* for sentencing, then he cannot possibly be said to have made a reasonable decision as to what to *present* at sentencing."). Accordingly, we conclude that Wharton has made a prima facie showing under Strickland's performance prong.

Exhibit 4 at 28.  Mr. Cannon's declaration is sufficient to establish that he failed to obtain and present the prison records and had no strategic reason for that failure.  Rule 7 gives the Court the authority to rely on the declaration to establish those facts.

The Third Circuit had a strong legal basis for finding a prima facie case of deficient performance.  The Supreme Court has repeatedly recognized capital counsel's obligation to obtain and review relevant background records as part of a reasonable investigation. *See Rompilla v. Beard*, 545 U.S. 374, 383 (2005) (counsel deficient for failing to examine court file); *Wiggins v. Smith*, 539 U.S. 510, 527-28 (2003) (counsel unreasonably abandoned investigation after obtaining limited background records, given what records disclosed); *Williams v. Taylor*, 529 U.S. 362, 396

4

(2000) (counsel ineffective for deficient mitigation investigation, including failure to seek prison and juvenile records, even though records included some negative information); *see also Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999) (counsel ineffective at penalty phase, in part, for failing to present mitigating evidence readily available in the prison records offered by the state, which showed good behavior).

The Third Circuit has also recognized the importance of records to a constitutionally adequate mitigation investigation. For example, in *Blystone v. Horn*, 664 F.3d 397, 405 (3d Cir. 2011), trial counsel conducted a limited investigation and sought no background records, planning to rely on testimony by Blystone and his parents for his mitigating presentation. On habeas review, Blystone argued that counsel was deficient for failing to develop expert testimony and obtain and review institutional records. *Id.* at 419. The Court of Appeals observed that "we need not delve too deeply" into the question whether counsel's performance was deficient "because the Commonwealth's brief all but concedes that it was." Counsel knew that Blystone had served in the navy and served prison time in Maryland for robbery, but never attempted to obtain records documenting either period of Blystone's life. The fact that these records may have contained unfavorable information did not justify counsel's failure to obtain them. "As Supreme Court precedent makes clear, defense counsel has a duty to obtain administrative records, such as those at issue here, as part of the 'obligation to conduct a thorough investigation of the defendant's background.'" *Id.* at 422-23 (citing *Williams*, 529 U.S. at 396, and 1 ABA Standards for Criminal Justice 4–55 (1980)).

> We think it abundantly clear that trial counsel fell short of professional standards in failing to explore institutional records in the course of investigating Blystone's background in this case. The state court's conclusion to the contrary reflects an unreasonable application of clearly established federal law. *See, e.g., Wiggins,* 539 U.S. at 527–28, 123 S. Ct. 2527 (finding state court's conclusion that counsel

5

performed adequately, even though he did not fully explore known institutional records, to be objectively unreasonable).

*Id.* at 423; *accord Bond v. Beard*, 539 F.3d 256, 288 (3d Cir. 2008) (counsel deficient in part because of failure to obtain school and hospital records and failure to give consulting expert sufficient information).

As in *Blystone* and *Wiggins*, Mr. Wharton's attorney was deficient for failing to obtain, let alone "explore," "known institutional records" in his case.

*Prejudice.* On the prejudice prong, the Third Circuit stressed that, even without the evidence of Mr. Wharton's good prison adjustment, the jurors struggled with their verdict, deliberating for nearly two full days and once reporting a deadlock. Exhibit 4 at 30; *see also* id. at 21. It found that Mr. Wharton had presented a prima facie case that counsel's deficient performance was prejudicial:

> We recognize that Wharton's proffered evidence does, at least to a degree, "cut both ways." But in light of the positive elements of that evidence and the fact that the jury at the second penalty hearing was deadlocked at one point, we conclude that Wharton has made a prima facie showing under Strickland's prejudice prong. That is, he has made a prima facie showing that there is a reasonable probability that at least one juror would have changed his or her vote if presented with this evidence.

Exhibit 4 at 30.

The record and controlling precedent amply support the Third Circuit's ruling. The evidence of Mr. Wharton's positive prison adjustment was relevant mitigating evidence and would have been admissible at his penalty trial. *See Skipper*, 476 U.S. 1. In analogous circumstances, in *Blystone*, the Third Circuit Court rejected the respondents' argument that Blystone could not demonstrate prejudice because of his day-of-trial "waiver" of the right to present mitigation through testimony by his parents and himself. Not only had counsel failed to conduct the type of investigation that should have preceded any decision about what mitigating evidence to present,

6

but even if Blystone had validly waived "all lay witness testimony," that did not mean he would not have permitted counsel to present institutional records and expert testimony. *Id.* at 426-27. The Court found a reasonable probability that, if the jurors had heard expert testimony describing, among other things, Blystone's ability to adapt successfully to institutional life without posing a danger to others, at least one juror would not have voted for death. *Id.* at 427; *accord Bond*, 539 F.3d at 290-92 (deficient investigation, including failure to obtain records and provide them to experts, was prejudicial).[1]

In Mr. Wharton's case, the evidence shows, not just that he was *able* to adapt to prison life, but that he had already done so. During the post-conviction proceedings, his counsel proffered the records that trial counsel had failed to uncover. They demonstrated a positive adjustment during the six years between his two penalty trials. The records included reports by the Department of Corrections Program Review Committee ("PRC"), which saw Mr. Wharton on virtually a monthly basis, and consistently gave him good reports. Every one of the proffered PRC reports included one or more positive notations.[2] Trial counsel could also have presented the opinion of an expert like Dr. Krop. He observed that Mr. Wharton did not meet the criteria for an anti-social personality disorder and that the reports of counselors and mental health personnel consistently indicated his

---

[1] Numerous courts have recognized that an attorney's failure to investigate a client's correctional history is ineffective. *See Macias-Macias v. Collins*, 810 F. Supp. 782, 820-23 (W.D. Tex. 1991), *aff'd*, 979 F.2d 1067 (5th Cir. 1992); *Ainsworth v. Woodford*, 268 F.3d 868, 878 (9th Cir. 2001); *Hall v. Washington*, 106 F.3d 742, 752 (7th Cir. 1997); *Horton v. Zant*, 941 F.2d 1449, 1462-63 (11th Cir. 1991); *Nance v. Ozmint*, 626 S.E.2d 878, 882-83 (S.C. 2006); *Ex parte Land*, 775 So.2d 847, 853-54 (Ala. 2000); *Torres-Arboleda v. Dugger*, 636 So. 2d 1321, 1325-26 (Fla. 1994).

[2] As described above, the Third Circuit ruled that the state court unreasonably relied on several records that mentioned misconduct citations and service of disciplinary time in 1989. The last negative report dated to January 1990. Each of the cited reports, moreover, concluded after mentioning the misconduct that Mr. Wharton had a positive adjustment.

positive adjustment. Mr. Wharton's filing of grievances over the day-to-day details of his incarceration demonstrated a "relative acceptance" of his status, and he displayed a positive attitude by studying and entering writing competitions. The doctor stressed that the duration of Mr. Wharton's good adjustment – six years – indicated that the adjustment was genuine. He concluded that Mr. Wharton would be a "prime candidate for constructive rehabilitation," and that he would not have posed a future danger to the prison community if he had received a life sentence. Exhibit 3 ¶ 7.

As the record makes clear, this evidence could have made a strong impression on the sentencing jury. Even without it, the jurors struggled to reach a decision, deliberating briefly late on December 21, 1992, all day before reporting a deadlock after 4 PM on December 22, and again until 3 PM on December 23. Apparently interested in Mr. Wharton's current functioning, they asked the trial court if mitigating evidence "had to be present at the time of the offense?" Although the court instructed them that they could consider evidence "as of now," the defense had not presented any contemporaneous evidence, such as the evidence of Mr. Wharton's prison adjustment and supporting expert testimony.

There is a reasonable probability that if the jurors had learned that, "as of now," Mr. Wharton had a six-year record of positive reports from those responsible for monitoring his behavior, and if they had heard the explanatory opinions of an expert familiar with his prison record, at least one of them would have voted to spare his life.

The Third Circuit's ruling that the records and all the circumstances establish a prima facie case of *Strickland* prejudice was well-founded and gives this Court a solid basis to find the prejudice prong satisfied.

8

### B. This Court Has Authority To Accept The Negotiated Disposition And To Grant Habeas Relief Without A Testimonial Hearing.

The Court has asked the parties to address two questions: (1) whether it may "grant habeas relief based only on the District Attorney's concession, or must it independently evaluate the merits of the conceded claim," and (2) if the Court must determine the merits independently, whether it may do so on the current record without conducting the evidentiary hearing contemplated by the Third Circuit. ECF # 160 at 6-7, ECF # 161.

First, the Court need not address the bare question whether it can rely on the District Attorney's concession alone, because the parties have proposed to settle the litigation on the basis of trial counsel's declaration, other documentary evidence, Mr. Wharton's criminal record, and the entire record of the case, in addition to the concession. In the context of all the evidence, the District Attorney's concession is entitled to substantial deference, even if it is not "binding" on this Court. *See Sibron v. New York*, 392 U.S. 40, 58-59 (1968) (citing *Young v. United States*, 315 U.S. 257, 258 (1942)); *see also Commonwealth v. Cox*, ___ A.3d ___, No. 498 CAP, 2019 WL 1338435, at *13 (Pa. March 26, 2019) (considering Commonwealth's concession on appellate claim for its "persuasive value").

Second, the rules governing § 2254 petitions do not require district courts to order evidentiary hearings, but merely grant them discretion to do so. Acting with or without concessions from respondents, courts in this Circuit have sometimes granted habeas relief on the basis of the paper record. *See Pursell*, 187 F. Supp. 2d at 381-82 (expanding record with affidavits because Commonwealth did not dispute facts, and granting habeas relief without evidentiary hearing); *see also Kindler v. Horn*, 642 F.3d 398, 405 (3d Cir. 2011) (affirming district court grant of relief without hearing) (affirming in part *Kindler v. Horn*, 291 F. Supp. 2d 323, 351, 355-56 (E.D. Pa. 2003) (granting penalty phase relief without evidentiary hearing on instructional error

9

and penalty phase ineffective assistance)); *Jacobs v. Horn*, 395 F.3d 92, 98, 107, 119 (3d Cir. 2005) (noting that district court granted penalty phase relief, without hearing, on claim of ineffective assistance for failing to investigate and present mitigating evidence, and granting further relief on one guilt phase count without hearing) (affirming in part *Jacobs v. Horn*, 129 F. Supp. 2d 390, 422-23 (M.D. Pa. 2001)); *Rollins v. Horn*, No. 05-9004, 06-9005, 2010 WL 2676385, at *2-*3 (3d Cir. July 7, 2010) (affirming district court grant of relief in *Rollins v. Horn*, No. Civ.A.00-1288, 2005 WL 1806504, at *6-*12 (E.D. Pa. July 26, 2005) (granting habeas relief on basis of declarations demonstrating counsel's ineffectiveness in failing to investigate and present mitigating evidence)).

Third, this Court has the power to approve a settlement that will obviate testimonial proceedings ordered on appeal. *See, e.g.*, Order, *Lewis v. Horn*, No. 2:00-cv-00802-BMS (E.D. Pa. July 25, 2011 (ECF #79) ("IT IS HEREBY ORDERED that Petitioner's application for a writ of habeas corpus is conditionally GRANTED AS UNCONTESTED as to Petitioner's sentence of death[.]") (settling action following grant of evidentiary hearing on ineffective assistance at penalty phase in *Lewis v. Horn*, 581 F.3d 92, 117 (3d Cir. 2009)). The proposed settlement will be consistent with both the letter and spirit of the Third Circuit's mandate. *See Casey v. Planned Parenthood,* 14 F.3d 848, 857 (3d Cir. 1994) (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 950 (3d Cir.1985)). "In the absence of specific directions, the question as to what further proceedings can be had consistent with the opinion of the appellate court must be determined from the nature of the case and the pertinent statutory provisions." *Bankers Trust Co.,* 761 F.2d at 950 (holding that district court erred in construing appellate mandate by failing to consider issues on remand that were not addressed in the previous appellate opinion). Here, the Third Circuit has ruled only that it was error to *deny* habeas relief without an evidentiary hearing

10

because Mr. Wharton has presented a prima facie claim. Granting relief, under all the circumstances here, would in no way contradict the law of the case or the Circuit's mandate.

These authorities make clear that this Court may approve the proposed settlement without first holding an evidentiary hearing. Just as a district court may accept a negotiated disposition of a criminal prosecution if the defendant provides a satisfactory factual basis for a guilty plea and the disposition otherwise complies with Criminal Procedure Rule 11(b), this Court may accept the proposed settlement, including a grant of relief on the sole surviving claim, on the basis of Mr. Wharton's prima facie showing of entitlement to relief, Mr. Cannon's declaration, the District Attorney's concession, and the record of the case. The concession is a judicial admission, binding on the Respondent, and this Court can properly rely on it in support of its judgment. *See Wright v. Lamas*, No. 2:13-cv-06420-WB, Report and Recommendation 17 (E.D. Pa. March 29, 2019) (Exhibit 5). Findings of fact are unnecessary, because the Court can rely on the admission. Exhibit 5 at 18 (citing *Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004)).

Against this background, the cases the Court cites in its March 4 memorandum opinion (ECF # 160 at 7 to 11) are not controlling because they all address the abstract question whether the prosecution's concession in a criminal case, *alone*, must end the litigation. Several are distinguishable on additional grounds. In both *Young v. United States*, 315 U.S. 257, and *Sibron v. New York*, 392 U.S. 40, the Supreme Court focused on its obligations as an appellate court and a court of last resort. It observed in *Young* that "our judicial obligations compel us to examine independently the errors confessed" and that "our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of the parties." 315 U.S. at 258-59. In contrast, the Third Circuit remanded Mr. Wharton's case to this Court in a non-precedential opinion, and it is no longer on appeal. Its disposition primarily concerns the parties.

In addition, in *Sibron*, the Supreme Court expressed doubt about the power of the prosecuting authority who had made the concession to bind the state. 392 U.S. at 58-59. Here, the elected District Attorney unquestionably has authority to represent the Respondent.

The other opinions this Court cites rely directly or indirectly on *Sibron* and/or *Young*. *See Johnson v. McCaughtry*, 265 F.3d 559, 563-64 (7th Cir. 2001); *Every v. Blackburn*, 781 F.2d 1138, 1140-41 (5th Cir. 1986); *Saldano v. Cockrell*, 267 F. Supp. 2d 635, 642 (E.D. Tex.) (citing *Every*), *aff'd in part, appeal dismissed in part sub nom. Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004); *Keyes v. Renico*, No. CIV. 05-cv-71160-DT, 2005 WL 217212, at *2-3 (E.D. Mich. Sept. 2, 2005) (citing *Sibron* and *Young*); *Korematsu v. United States*, 584 F. Supp. 1406, 1413-14 (N.D. Cal. 1984) (same; government took inconsistent positions on whether it was conceding error or not).

### C. Recent Decisions Arising From This District Are Instructive.

Several courts have recently addressed questions similar to those facing this Court, although each of them arises in a different procedural posture. In *Commonwealth v. Brown*, 196 A.3d 130, 141-49 (Pa. 2018), the petitioner had appealed the denial of post-conviction relief to the Pennsylvania Supreme Court, and the Philadelphia District Attorney had filed a brief opposing relief and supporting the judgment below. Before the Supreme Court ruled, however, the District Attorney and the petitioner filed a joint motion for relief on a single claim alleging ineffective assistance at the penalty phase. The motion did not "provide any specificity with respect to its newfound agreement." 196 A.3d at 141. The Pennsylvania Supreme Court, citing *Sibron* and *Young*, relied on concerns about its judicial power and appellate authority similar to those of the United States Supreme Court in those cases, and rejected the Commonwealth's change of position during appeal. *Id.* at 149.

In *Speight v. Beard*, E.D. Pa. No. 2:04-cv-4110, Docs. 8, 31 (July 1, 2005, Mar. 2, 2011), the Commonwealth filed a 146-page answer in which it (successfully) contested Mr. Speight's entitlement to relief on claims respecting his murder convictions but raised no defenses to his claims of sentencing error and represented that it was "not contesting a grant of relief as to Speight's sentence." *Id*., ECF # 94 at 10 n.11 (Dec. 22, 2014).  The District Court ordered "[w]ith respect to the penalty of death, upon agreement of Petitioner and Respondents, the petition for a writ of habeas corpus is GRANTED, and Petitioner's case is remanded to the Commonwealth of Pennsylvania for re-sentencing." *Id*., ECF #s 129, 131.  Significantly, the order did not specify the claim or claims on which the District Court had concluded that relief was appropriate.  In state court, the Court of Common Pleas ruled that it had "no authority" to vacate the petitioner's sentence without an "independent judicial determination" by a federal court of a specific claim, and that the agreement of the parties was not an adequate substitute.  *See* Order, *Commonwealth v. Speight*, No. CP-CR-1036271-1992 (March 20, 2019).

In *Wright*, the parties executed a Stipulation and Order while a habeas petition was pending in the district court.  In addition to addressing procedural defenses, the stipulation indicated that:

> Were an evidentiary hearing to be held on Mr. Wright's ineffective assistance of counsel claim, the evidence adduced at such a hearing would likely support a finding that Mr. Wright's counsel was ineffective in violation of Mr. Wright's Sixth Amendment rights, in that counsel neglected to investigate and call to the stand a witness, Ebony Carter, who would have provided material and exculpatory testimony; and
>
> The record of the case supports a grant of habeas relief to Mr. Wright, including the vacating of his conviction and sentence.

Exhibit 5 at 6.  The district court originally accepted the stipulation and entered an order granting habeas relief, but the state court refused to give effect to the order, questioning its scope.  *Id*. at 15. The Magistrate Judge again recommended that the district court grant habeas relief.  As discussed

13

above, he found that the Respondent's judicial admission was a valid basis for his ruling. He concluded:

> I will rely upon the parties' stipulated facts as fair and reasonable, produced as they were by a fair and reasonable litigation and negotiation process, and subject to my own examination of the record. The parties are well represented by excellent counsel, and have had ample time to consider their joint agreement. I find that their joint stipulation is freely and voluntarily made without any compulsion or corrupt influence.

*Id*. at 18.

Mr. Wharton's case, unlike *Brown*, is not an appeal and does not implicate binding precedent. In contrast to both *Brown* and *Speight*, Mr. Wharton does not rely on an unadorned stipulation to support his request for relief and seeks to settle a specific habeas claim on amply supported grounds. As in *Wright*, the District Attorney's judicial admission has specific support— here, the declaration of trial counsel, the other exhibits, and the Third Circuit's ruling that Mr. Wharton has presented a prima facie case.

In sum, this Court can grant Mr. Wharton habeas relief as part of the proposed settlement. His detailed proffer demonstrates that the Court should do so.

### IV. If The Court Does Not Approve The Proposed Settlement, It Should Hold A Hearing.

The Third Circuit found error in this Court's denial of an evidentiary hearing on Mr. Wharton's sole remaining claim. Exhibit 4 at 32. Mr. Wharton has offered to waive his right to that hearing in return for settlement of the case. If this Court does not accept the proposed settlement, however, it should allow him to make a further demonstration of his entitlement to relief at a testimonial hearing.

## CONCLUSION

For the reasons above, this Court should (1) expand the record to include the declaration of William Cannon, Esq., and (2) approve the proposed settlement of this matter. If the Court rejects the settlement, (3) it should allow Mr. Wharton the opportunity to present evidence at a testimonial hearing.

Respectfully submitted,

/s/ Claudia Van Wyk
Claudia Van Wyk
Victor J. Abreu
Federal Community Defender Office
Capital Habeas Unit
Eastern District of Pennsylvania
Suite 545 West - The Curtis Center
Philadelphia, Pennsylvania 19106
(215) 928-0520
claudia_vanwyk@fd.org
victor_abreu@fd.org

Dated:   April 3, 2019

**CERTIFICATE OF SERVICE**

I, CLAUDIA VAN WYK, hereby certify that on this date I served a copy of the foregoing on the following person in the manner indicated below:

<u>BY ELECTRONIC SERVICE THROUGH ECF</u>

Max C. Kaufman, Esq.
Supervisor, Federal Litigation Unit
Office of the Philadelphia District Attorney
3 South Penn Square
Philadelphia, PA 19107

<u>/s/ Claudia Van Wyk</u>
Claudia Van Wyk

Dated:   April 3, 2019
         Philadelphia, PA