IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT WHARTON,** | : | **CIVIL ACTION** |
| *Petitioner,* | : | |
| | : | |
| | : | **CAPITAL CASE** |
| v. | : | |
| | : | |
| **DONALD VAUGHN, et al.** | : | **NO. 01-6049** |
| *Respondents.* | : | |

## DISTRICT ATTORNEY'S OFFICE REPLY TO ATTORNEY GENERAL'S AMICUS BRIEF

Respondent District Attorney's Office of Philadelphia (DAO) files this short reply to the Attorney General's Amicus Brief in order to address the argument made on pages 45-49 of that brief, and the accompanying Exhibit F. This portion of the Attorney General's Brief contains material that is irrelevant to the single legal issue before this Court. It also contains material that is outside the scope of this Court's Order appointing the Attorney General (AG) as amicus and includes misleading statements regarding the nature of the DAO's interaction with the victims' family.

### A. This Court's Order Appointing Amicus

1. This Court currently has before it "a single penalty-phase claim, pertaining to whether Petitioner's counsel was ineffective for failing to place before the penalty-phase jury evidence of Petitioner's adjustment to prison." Order, 5/7/19, p.1.

2. On March 4, 2019, this Court "explained that [it] could not make the required independent evaluation of the merits of the remaining habeas claim on the current record." Order, 5/7/19, p. 2.

3. To assist it in resolving the remaining penalty-phase claim, this Court directed the AG "to submit an amicus brief in this matter, setting out its position as to whether Petitioner is entitled to relief on his remaining habeas claim." Order, 5/7/19, pp. 3, 4.

4. This Court's Order did not ask or authorize the AG to provide information about the opinions of the victims' family regarding the appropriate penalty, nor would such material appear to fall within the scope of a proper non-party amicus brief.

**B. The Attorney General's Amicus Brief Contains Irrelevant and Factually Misleading Statements Pertaining to the DAO's Contacts with the Victims' Family**

5. The AG's brief includes representations about the DAO's communications with the family members of the two victims in this case. *See* Amicus Brief, at 45-49. Its brief also attaches letters from some of those family members. *See* Amicus Brief, Exhibit F.

6. However natural and worthy of respect they may be, the sentiments of the victims' family regarding the death penalty are irrelevant to the single question before the Court: whether trial counsel was ineffective for failing to present evidence of Petitioner's adjustment to prison during the penalty phase of his trial.

7. In fact, the opinions of a homicide victim's family members may not be considered in deciding whether the death penalty is appropriate in a particular case. The United States Supreme Court has prohibited the introduction of "characterizations and opinions from a victim's family members about the crime, the defendant, and the appropriate sentence" during the penalty phase of a capital trial. Bosse v. Oklahoma, 137 S. Ct. 1, 2, (2016) (*citing* Booth v. Maryland, 482 U.S. 496 (1987) and holding that lower courts "remain[] bound by Booth's prohibition on … opinions from a victim's family members about … the appropriate sentence").

8. In addition, the AG's description of the DAO's interactions with the victims' family is factually misleading.

9. Under normal circumstances, the DAO views its communications with victims and family members as private matters and does not employ such communications, as the AG has done here, to justify or support its legal arguments on post-conviction issues.

10. However, because the AG's brief places these private communications in issue and in the public record, the DAO is obligated to explain the steps taken by its Law Division Victim Services Coordinator to ensure that the DAO apprised the family of the status of the case and complied with the applicable laws pertaining to victims' rights.

11. As her attached Affidavit reflects, Victim Services Coordinator Heather Wames contacted a family member (the brother of one of the two decedents), explained the status of the case, informed the brother that the office

was reviewing the death penalty aspect of the case, provided him with her own contact information, and asked him to invite any interested family member to contact her. Ms. Wames made sure to invite the brother to share her contact information with the other family members. *See* Wames Affidavit, 7/30/19 (attached here as Exhibit A).

12. Ms. Wames' contacts with this family member continued for eight months, from November of 2018 through July of 2019, during which she kept him apprised of the status of the case, including advising him that the office intended to agree to death penalty relief. In particular, she informed the family member that a life sentence does not mean that a defendant might more likely be released, an impression that he had apparently formed after speaking with someone from the AG's office.

13. Despite her ongoing availability, Ms. Wames was not contacted by any family member other than the brother with whom she spoke.

/s/ *Paul M. George*
Assistant Supervisor, Law Division
Nancy Winkelman, Supervisor, Law Division
Lawrence S. Krasner, Philadelphia District Attorney
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
(215) 686-5730