# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT WHARTON,** | CIVIL ACTION |
| Petitioner, | No. 01-6049 |
| v. | |
| **DONALD T. VAUGHN, et al.** | |
| Respondents. | |

Goldberg, J.  February 12, 2020

## MEMORANDUM OPINION

This case involves an ongoing death penalty habeas petition. On January 11, 2018, the United States Court of Appeals for the Third Circuit affirmed my denial of 22 of the 23 claims raised by Petitioner, Robert Wharton.[1] As to the last issue—whether Wharton's counsel was ineffective for failing to present prison adjustment evidence at the death penalty phase of his state court proceeding—I had decided that a hearing was unnecessary because Wharton had not made a prima facie showing of a Sixth Amendment violation. The Third Circuit disagreed and remanded the matter for a hearing on this issue.

Following that directive, I set a scheduling conference to address the evidentiary parameters of the remand hearing. In response, the Philadelphia District Attorney's Office (the "District Attorney"), inexplicably filed a "Notice of Concession," regarding Wharton's death sentence. Because the District Attorney has been zealously advocating to uphold Wharton's death

---

[1] The Order entering a judgment regarding Wharton's appeal was not issued until March 26, 2018.

1

sentence since it was imposed decades ago, I attempted to discern the factual and legal basis for this sudden concession. Having received little explanation from the District Attorney's Office, I requested that the Pennsylvania Office of the Attorney General (the "Attorney General") weigh in on Wharton's remaining claim.

Presently, there are several questions before me that must be answered before the remand hearing can be held. The first is whether the District Attorney's concession of the death penalty relieves me of my obligation to independently evaluate the merits of Wharton's last remaining habeas claim. I must also consider the District Attorney and Wharton's objections to my appointment of the Attorney General, as *amicus curiae*, and determine the extent of the Attorney General's participation at the remand hearing.

Having now reviewed the most recent submissions of the parties and the Attorney General, I will attempt, once again, to chart a course for addressing the Third Circuit's remand directive.

## I. RECENT FACTUAL AND PROCEDURAL HISTORY

The gruesome facts that resulted in Wharton's death sentence have been recounted several times and are not germane to the issues resolved in this Opinion. These facts are set out in my August 16, 2012 Memorandum Opinion denying Wharton's petition for habeas corpus (ECF No. 126) and the opinion of the Third Circuit. Wharton v. Vaughn, 722 F. App'x 268 (3d Cir. 2018).

In December 2001, after his death sentence was affirmed by the Pennsylvania Supreme Court, Wharton initiated this federal habeas proceeding under 28 U.S.C. § 2254. In August 16, 2012, I issued a comprehensive opinion addressing each of Wharton's 23 claims and granted a certificate of appealability on two of these claims. Wharton appealed, and the Third Circuit expanded the certificate of appealability to include an additional claim, concerning whether Wharton's counsel was ineffective for failing to introduce mitigating evidence that Wharton was

adjusting well to incarceration (the "Remaining Sentencing Claim"). In January 2018, the Third Circuit affirmed my rulings, including the denial of the two claims on which I had granted the certificate of appealability, and remanded on only one issue—the Remaining Sentencing Claim. In doing so, the Third Circuit reasoned that Wharton had made a prima facie showing under Strickland v. Washington, 466 U.S. 668 (1984), that: (1) his counsel had acted unreasonably by failing to investigate and/or present prison-adjustment evidence; and (2) there was a reasonable probability that at least one juror would have changed his or her vote if presented with prison records from the time between his two death penalty hearings. Wharton v. Vaughn, 722 F. App'x 268, 281 (3d Cir. 2018). Based on this view, the Third Circuit concluded that a hearing on this issue should be held. Id. at 284.

In its assessment of the prejudice prong, the Third Circuit explained that Wharton's prison records, in the time period between his two penalty hearings, could establish that he was adjusting well to prison life, his behavior was generally satisfactory, and thus relevant to the sentencing determination. The Third Circuit noted that had Wharton presented evidence of positive prison adjustment, "the Commonwealth might have countered with other evidence, including an expert holding a contrary opinion." Id. at 281.

Soon after remand, the District Attorney's Office filed a "Notice of Concession of Penalty Phase Relief," stating that it would not "seek new death sentences in state court." (Notice of Concession, ECF No. 155, ¶ 10.) The Notice also stated that the "the grant of sentencing relief on [Wharton's] penalty phase ineffectiveness claim in accordance with [its] concession would end the litigation of this case . . . and eliminate the need for . . . [further] proceedings in this Court." (Id. at ¶ 11.) Yet, the Notice gave no explanation as to the basis of the concession, noting only that the decision to concede was made "[f]ollowing review of this case by the Capital Case Review

Committee of the Philadelphia District Attorney's Office, communication with the victims' family, and notice to [Wharton's] counsel." (Id. at ¶ 9.)[2]

In response, I preliminarily concluded that (1) I must independently evaluate the merits of Wharton's Remaining Sentencing Claim, notwithstanding the District Attorney's concession and that (2) I could not do so based on the current record. I declined to approve the Proposed Order and directed the parties to submit further briefing providing a factual basis and supporting legal authority for a grant of habeas relief on the current record.

## II. THE PARTIES' MOST RECENT SUBMISSIONS

In their most recent submissions, the District Attorney and Wharton continued to insist that I vacate Wharton's death sentence without further analysis. The District Attorney argued: "in light of [the] meriotoriousness [of Wharton's remaining claim]," continuing to seek affirmance of his death sentence did not justify further expenditure of judicial and legal resources, and more years of litigation. (Respondent's Br., ECF No. 162, at 4.)

Relying on the District Attorney's concession, Wharton urged that I grant his requested relief without further consideration. Despite the Third Circuit's remand directive that I hold a hearing, Wharton argued that the rules governing § 2254 petitions do not require district courts to order evidentiary hearings but merely grant them discretion to do so. (Petitioner's Br., ECF No. 163, at 9.) Wharton also moved to expand the record to include a declaration from his trial counsel, William T. Cannon. In this declaration and in apparent support of the death penalty concession,

---

[2] Two days later, the parties submitted for my approval a one-page Proposed Order granting habeas relief and, therefore, vacating Wharton's death sentence. The Proposed Order stated that "upon a careful and independent review of the parties' submissions and all prior proceedings in this matter," the petition for a writ of habeas corpus is "granted in part, as to the sentences of death, on the ground of counsel's ineffectiveness at the second penalty hearing." (Proposed Or., ECF No. 156-1, at 1.) The Proposed Order further provided that Wharton "shall be released from custody unless the Commonwealth of Pennsylvania grants him a new sentencing hearing or resentences him to life without parole within 180 days." (Id.)

4

Cannon stated that he was "not operating under any strategy or tactic" in not presenting evidence of Wharton's positive prison adjustment. (Cannon Dec., 07/03/18, ECF No. 163-1, at 3.)

On May 7, 2019, after reviewing the parties' submissions, I granted Wharton's request to expand the record to include the Cannon declaration. In doing so, I noted that the District Attorney had failed to indicate whether it did any investigation regarding Wharton's adverse or negative adjustment to prison. Nor had the District Attorney even considered consulting with its own expert. Given the lack of information provided by the District Attorney on this important issue— the imposition of a death sentence, I invited an *amicus* submission from the Attorney General.

In its *amicus* brief, the Attorney General pointed to numerous facts, not previously provided to me by the District Attorney that belied Wharton's claim that trial counsel was ineffective for not arguing his positive prison adjustment. These facts included records of (1) Wharton's "numerous" prison misconducts between 1985 and 1992 (two of which involved the possession of contraband constituting both an "implement of escape" and potential weapon), (2) Wharton's attempted escape while in the custody of Philadelphia Deputy Sheriffs, and (3) the Pennsylvania Department of Corrections' ("DOC") Prescriptive Program Plans identifying areas of concern regarding Wharton's "assaultiveness" and "escape." (*Amicus* Br., ECF No. 171, at 12–13.)

The Attorney General also produced a new declaration prepared by Mr. Cannon. As noted above, in his original declaration, Cannon stated that he was not operating under any strategy or tactic when he failed to investigate and present evidence of Wharton's positive prison adjustment. In his new declaration, Cannon explained that, when he submitted his first declaration, he was unaware of the contents of the DOC records regarding Wharton's conduct in prison. Cannon acknowledged that, if any of the DOC records contained information suggesting Wharton had

5

received misconducts in prison, he would have conducted a balancing test to assess whether the DOC records would have "caused more harm than good." (Cannon Dec., 05/31/19, ECF No. 171-5, at 5–6.) It is notable that, before submitting its "concession," the District Attorney never obtained, as the Attorney General did, these prison records or asked Cannon to consider them.

The Attorney General also submitted a declaration and opinion by forensic psychiatrist, John S. O'Brien, III, M.D., J.D. This declaration was prepared in response to the declaration submitted on Wharton's behalf by Harry Krop, Ph.D, who opined that Wharton (1) made a positive adjustment to prison life in the years between his two penalty phase hearings, (2) would be a prime candidate, if given a life sentence, for constructive rehabilitation in the general prison population, and (3) would not pose a future danger to the prison community in the event that he were to serve a sentence of life imprisonment. (Habeas Pet., ECF No. 22, at Ex. 6.) In his declaration, Dr. O'Brien concluded that Dr. Krop's opinion did not reflect a balanced inquiry into Wharton's history, documented behavior, or correctional adjustment and that Krop failed to explore whether contrary views or opinions might be viable and worth considering.

Based upon its investigation, the Attorney General concluded that, given the facts of this investigation and aggravating sentencing factors present in his case, Wharton could not establish a reasonable probability that the outcome of his penalty phase death sentence would have been different if the jury had heard evidence of his alleged "positive" prison adjustment.

The Attorney General also investigated the District Attorney's representation to this Court that the victims had been consulted. As noted previously, the District Attorney had advised the Court that the decision to concede the death penalty was made after "communication with the victims' family." But the Attorney General concluded, based on letters attached to its *amicus* brief from the victims' family members, that the requirements of the Federal Crime Victims' Rights Act

6

and the Pennsylvania Crime Victims Act had not been satisfied. (*Amicus* Br., ECF No. 171, at 47.) Letters from the family members of the deceased, obtained by the Attorney General, stated that they were *not* contacted by the District Attorney and they opposed the District Attorney's "concession" that the death sentence be vacated.

## III. DISCUSSION

### A. The Court is Not Bound by the District Attorney's Concession to Vacate the Death Penalty

The District Attorney and Wharton continue to insist that I blindly accept the District Attorney's mostly unexplained concession that Wharton's death sentence be vacated. Yet, at the same time, both parties concede that the District Attorney's concession is not binding on me. (Respondent's Br., ECF No. 162, at 5; Petitioner's Br., ECF No. 163, at 9.)

The United States Supreme Court's reasoning in Sibron v. New York, 392 U.S. 40 (1968) instructs that I independently evaluate Wharton's last remaining claim. In Sibron, the Supreme Court stated, "[i]t is the uniform practice of this Court to conduct its own examination of the record in all cases where the Federal Government or a State confesses that a conviction has been erroneously obtained." Id. at 58. Other precedent, including a recent pronouncement by the Pennsylvania Supreme Court, supports this conclusion. See Young v. United States, 315 U.S. 257, 258–259 (1942) ("[O]ur judicial obligations compel us to examine independently the errors confessed."); Commonwealth v. Brown, 196 A.3d 130, 141–49 (Pa. 2018) ("[I]f the 'power' of a court amounts to nothing more than the power 'to do exactly what the parties tell it to do, simply because they said so and without any actual merits review, it is not judicial power at all. It is a restriction on power.'").[3]

---

[3] Although not binding on me, I recognize that the District Attorney's view holds persuasive value. See Sibron, 392 U.S. at 58–59 (finding that confessions of error in criminal convictions are entitled to "great weight"); Young, 315 U.S. at 258–259 ("The considered judgment of the law enforcement officers that

Accordingly, I will evaluate the Remaining Sentencing Claim on its merits.

### B. An Evidentiary Hearing is Necessary

The parties and the Attorney General suggest that, given recent developments, a hearing on Wharton's remaining claim may not be needed. I again note that the Third Circuit has directed that Wharton's remaining sentencing claim is entitled to an evidentiary hearing. Wharton, 722 F. App'x at 282, 284.

Moreover, there is simply too much information to evaluate without the benefit of an in-court proceeding. For instance, Wharton acknowledges that there is relevant evidence, counter to his claim for relief, that may be introduced at a hearing: "[t]he Court could expand the record to receive [some materials submitted by the Attorney General that relate to Wharton's claim] pursuant to Rule 7 or admit them as exhibits at a hearing." (Petitioner's Resp. to *Amicus*, ECF No. 180, at 17.) These facts include his prison misconduct records, a new declaration from Mr. Cannon, and a report by Dr. O'Brien analyzing Dr. Krop's opinion on his positive prison adjustment.

The opposing expert opinions of Dr. O'Brien and Dr. Krop also reflect the need for a hearing. It will be difficult to assess the credibility of these opinions without the benefit of evaluating these witnesses in person. In fact, the Third Circuit has anticipated the introduction of this type of counter evidence, stating "had Wharton presented the testimony of Dr. Krop (or a similar expert witness), the Commonwealth might have countered with other evidence, including an expert holding a contrary opinion." Wharton, 722 F. App'x at 281.

---

reversible error has been committed is entitled to great weight . . . ."); Commonwealth v. Cox, 204 A.3d 371, 387 (Pa. 2019) ("[T]his Court has recently explained that confessions of error by the Commonwealth are not binding on a reviewing court but may be considered for their persuasive value.").

In light of these reasons, an evidentiary hearing on Wharton's Remaining Sentencing Claim will be held.

### C. The Attorney General May Participate at the Evidentiary Hearing

Given the District Attorney's reluctance to fully investigate this matter and explain its concession of the death penalty, I conclude that the Attorney General's participation at the hearing is necessary. Therefore, in addition to counsel for Wharton and the District Attorney, the Attorney General may also appear as *amicus curiae* at the hearing and will be permitted to call and cross-examine witnesses.

The extent to which an *amicus* participates in a pending action is solely within the "broad discretion" of the district court. See, e.g., Waste Mgmt. of Pa., Inc. v. City of York, 162 F.R.D. 34, 36 (M.D. Pa. 1995). Because participation of *amicus curiae* is for the benefit of the court, it is solely within the court's discretion to determine "the fact, extent, and manner" of the participation. See also Hard Drive Prods., Inc. v. Does 1-1, 495, 892 F. Supp. 2d 334, 337 (D.D.C. 2012); Steel-Arkansas v. McCarthy, No. 14-cv-0199, 2014 WL 10999271, at *2 (D.D.C. Oct. 24, 2014).

Traditionally, *amicus curiae* status confers the right to file briefs on motions before the court and even to participate separately at oral argument. See, e.g., Liberty Res., Inc. v. Philadelphia Hous. Auth., 395 F. Supp. 2d 206, 208-10 (E.D. Pa. 2005); see also Mathis v. CSL Plasma, Inc., 936 F.3d 171, 176 (3rd Cir. 2019). But the concept of *amicus curiae* is "flexible":

> [A]s long as the *amicus* does not intrude on the rights of the parties, it can have a range of roles: from a passive one of providing information to a more active participatory one. In other words, although amici should not assume control of the litigation, they can take an active role in some cases beyond providing information.

Waste Mgmt. of Pa., Inc., 162 F. R. D. at 36 (quoting Wyatt By and Through Rawlins v. Hanan, 868 F. Supp. 1356, 1358 (M.D. Ala. 1994)).

As distinguished from a third party who is permitted to intervene in a case, an *amicus* serves a very different purpose: "[t]he purpose of *amicus* appearances 'is to assist the Court in reaching the right decision in a case affected with the interest of the general public.'" N.J. Protection and Advocacy, Inc. v. Twp. of Riverside, No. 04-5914, 2006 WL 2226332, at *5 (D.N.J. Aug. 2, 2006) (citations omitted) ("'Courts have found the participation of an *amicus* especially proper where the *amicus* will ensure complete and plenary presentation of difficult issues so that the court may reach a proper decision.'" (internal quotation marks omitted)).

The Third Circuit has held that even when an applicant is not entitled to intervene, it may still appear as a friend of the court for a limited purpose "*where [the third party] can contribute to the court's understanding*." Harris v. Pernsley, 820 F.2d 592, 603 (3rd Cir. 1987) (emphasis added) (cited by McDonough v. Horizon Healthcare Services, Inc., 2014 WL 3396097 (D.N.J. July 9, 2014).

Courts have often used the broad discretion afforded them in this context to expand the role of *amicus curiae* to include participation at a hearing.[4] For example, in United States v. CVS, No.

---

[4] See e.g., Angel Flight of Georgia, Inc. v. Angel Flight America, Inc., 272 F. App'x 817, 818 (11th Cir. 2008) (recognizing that the court permitted *amici curiae* to participate in injunction hearing); U.S. v. Friday, 525 F.3d 938 (10th Cir. 2008) (acknowledging the participation of *amicus curiae* in a criminal evidentiary hearing in which defendant moved to dismiss the information); Hoptowit v. Ray, 682 F.2d 1237, 1260 (9th Cir. 1982), overruled on other grounds by Sandin v. Connor, 515 U.S. 472, 115 (1995) ("We conclude that the district judge did not abuse his discretion in appointing the Department of Justice and the United States Attorney as *amicus curiae*. Although we recognize that participation of the United States in this case was somewhat more than the usual participation of *amici* [in that the *amicus* participated fully in the discovery, trial, and appeal of this case], we are unable to say that the degree of *amicus*'s participation was error or in any way prejudiced the rights of the State."); In re American Investors Life Ins. Co. Annuity Marketing and Sales Practices Litig., No. 05-md-1712, 2013 WL 3463503 (E.D. Pa. July 10, 2013) (noting two state government entities participated in the fairness hearing process, including the Pennsylvania Attorney General's Office, who submitted an *amicus* brief to the district court in advance of the fairness hearing on the proposed class settlement and appeared at the "actual hearing"); United States v. Collyard, No. 12-0058, 2013 WL 1346202, *1–3 (D. Minn. Apr. 3, 2003) ("Given the legal and factual issues regarding Defendant's ineffective assistance of counsel claim, the involvement of [the *amicus curiae*] in the upcoming hearing will assist the Court. Moreover, [the *amicus curiae*] may provide information not presented by the parties."); J.P. Rail, Inc. v. New Jersey Pinelands Com'n, 404 F. Supp. 2d 636, 646 (D.N.J. 2005) (referring to the participation of *amicus* in a preliminary injunction hearing permitted by the district

18-2340, 2019 WL 2085718 (D.D.C. May 13, 2019), the federal government and five states brought a civil antitrust suit to challenge the merger of CVS Health Corporation and Aetna Inc. Id. at *1. The parties sought to settle the suit through a consent judgment, which was subject to the court's review. Id. After reviewing submissions from parties and several *amici*, the district court decided that it would be "most helpful for . . . witnesses [for the parties and *amici*] to be called at a hearing." Id. The court reasoned that the hearing was "merely an opportunity for the parties and the *amici* to provide the Court with whatever information and analysis they believe will aid the Court in determining whether the Government's proposed final judgment is in the public interest." Id.

Here, for several reasons, I conclude that expansion of the Attorney General's *amicus* role is appropriate for the evidentiary hearing on remand. First, Wharton has agreed that I can consider certain materials produced by the Attorney General, including (1) Wharton's prison misconduct records because they relate to the prison records on which he relies, (2) Mr. Cannon's new declaration because it relates to his earlier declaration, and (3) Dr. O'Brien's report because it relates to the report of Dr. Krop. (Petitioner's Resp. to *Amicus*, ECF No. 180, at 17.) And I note that the District Attorney has raised no objection to the Attorney General's participation. In fact, the sole focus of the District Attorney's reply to the Attorney General's *amicus* submission is to rebut the District Attorney's alleged failure to honor the rights of the victims' family before conceding the death penalty.

---

court); Russell v. Bd. of Plumbing Examiners of Cnty. of Westchester, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999) (recognizing that "[a] court can allow *amici* to call their own witnesses and cross examine the witnesses of other parties" in holding that *amicus curiae* was entitled to attorney's fees as a partially prevailing party), aff'd, 1 F. App'x 38 (2d Cir. 2001); Wyatt By and Through Rawlins v. Hanan, 868 F. Supp. 1356, 1360 (M.D. Ala. 1994) (permitting the federal government as *amicus* to conduct discovery participate "fully in trial, including examining witnesses and presenting its own witnesses").

Wharton, however, does raise several arguments in opposition to the Attorney General's participation. He asserts that allowing the Attorney General to call or cross-examine witnesses, or otherwise control the issues contested or conceded, would convert the Attorney General from a friend of the court to a party to the litigation. Wharton also contends that allowing the Attorney General to participate would run afoul of the "carefully allocate[d]" authority between the Attorney General and county prosecutors in this state and that I would effectively permit the Attorney General to undertake functions that a state court would not allow. (Petitioner's Resp. to *Amicus*, ECF No. 180, at 21.)

I disagree. The District Attorney and Wharton will have the opportunity to present evidence on Wharton's remaining Strickland claim. Allowing the Attorney General to present facts and argument will not convert the Attorney General to a party. Litigation of Wharton's 23-claim federal habeas petition has been ongoing since 2001 with the District Attorney and Wharton's present counsel representing the respective parties. I have only invited the Attorney General to participate in an evidentiary hearing on a single, discrete issue.

I am also not seeking to have the Attorney General substitute its judgment for that of the District Attorney. Although both are prosecuting entities, the District Attorney and the Attorney General may have different views on this case, both of which will be considered. And it is worth pointing out that, in the traditional sense, there is no prosecution here; a federal habeas proceeding is a civil action, and the trial and appeal stages of Wharton's case have long been concluded. Simply stated, I have requested that the Attorney General *supplement*, not substitute, the District Attorney's presentation of evidence at the hearing. See Johnson v. McCaughtry, 265 F.3d 559, 564 (7th Cir. 2001) ("Regardless of which position the government chooses to advocate, we will

12

make an independent judicial assessment of whether the district court correctly dismissed Johnson's petition . . . ."); see also Every v. Blackburn, 781 F.2d 1138, 1140–41 (5th Cir. 1986).[5]

I also note that, in ordering remand, the Third Circuit anticipated the District Attorney's introduction of such counter evidence. Wharton, 722 F. App'x at 281 ("[H]ad Wharton presented the testimony of Dr. Krop (or a similar expert witness), the Commonwealth might have countered with other evidence, including an expert holding a contrary opinion. To date, though, the Commonwealth has yet to proffer such testimony."). It is only the expectation of who would present this counter evidence that has changed—the Attorney General will now do so for my consideration.

Wharton also argues that none of the permissible statutory grounds for the Attorney General to supersede the prosecutorial functions of the District Attorney apply here. He contends that my May 7, 2019 Order improperly authorized the Attorney General to act under 71 Pa. Stat. § 732-205(c), when the District Attorney had not requested the Attorney General's intervention. Section 205(c) permits the Attorney General, in its discretion and "upon the request of the district attorney," to "prosecute" an appeal in a criminal action and to intervene in "such other appeals as provided by law or rules of court."

Wharton's argument mischaracterizes my May 7, 2019 Order. As discussed above, I am not asking the Attorney General to supersede or assume the prosecutorial functions of the District Attorney. My Order merely notes, by way of reference, that the Attorney General has authority

---

[5] Moreover, my invitation to the OAG to participate in this limited role is far from the "legal mutant characterized as litigating *amicus curiae*" contemplated and condemned by United States v. Michigan, 940 143, 163–64 (6th Cir. 1991) ("[T]he *Knop* class as 'litigating *amicus curiae*' was extended full litigating rights of a named party to the action including, but not limited to, the right to file pleadings, conduct discovery, introduce evidence at proceedings, issue and enforce subpoenas, present and enforce the attendance of witnesses, initiate and pursue proceedings in contempt, and file motions to modify and amend the agreement between the United States and Michigan embodied in the July 16, 1984 consent decree and state plan.").

under § 205(c) to intervene in criminal appeals in "certain circumstances." This does not mean, however, that I have removed the District Attorney and replaced it with the Attorney General.

Finally, Wharton argues that I cannot invite the Attorney General to participate in an evidentiary hearing because doing so would create "an appearance of impropriety." (Petitioner's Resp. to *Amicus*, ECF No. 180, at 19–20.) Wharton claims that attorneys, formerly employed by the District Attorney, who are now employed by the Attorney General, may have been named on briefs filed by the District Attorney in this case. I rejected this same argument in my June 25, 2019 Order and do so again here. Wharton cites to no authority for his position. And he has not identified any person at the Attorney General who participated in the filing of the *amicus* brief and whether the District Attorney employed such person while the state case was being litigated.

### D. The Parties and the Attorney General May Introduce Evidence of the District Attorney's Communication with the Victims' Family in Connection with the Concession of Relief

One basis expressly stated by the District Attorney as a reason for its Notice of Concession was its communication with the victims' family. (Notice of Concession, ECF No. 155, ¶ 9 ("Following review of this case by the Capital Case Review Committee of the Philadelphia District Attorney, *communication with the victims' family*, and notice to petitioner's counsel, respondent hereby reports to the Court that it concedes relief on petitioner's remaining claim of ineffective assistance at the second penalty hearing, and does not contest the grant of a conditional writ of habeas corpus with respect to petitioner's death sentences.") (emphasis added).) Thus, the District Attorney's reliance on these victim communications remains at issue.

Under federal law, victims of crime or family members of homicide victims have the right to be "reasonably heard at any public proceeding," "the right to not be excluded from any public court proceeding," and "the right to be treated with fairness and with respect for the victim's

dignity and privacy." 18 U.S.C. § 3771(a)(3)–(4), (8). "In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded [these] rights . . . ." Id. at § 3771(b)(1). Importantly, these rights also apply to § 2254 habeas proceedings. See id. at § 3771(b)(2) ("In a Federal habeas proceeding arising out of a State conviction, the court shall ensure that a crime victim is afforded the rights described in [U.S.C. § 3771(a)(3)–(4), (8)].").

Pennsylvania state law recognizes analogous rights for victims and their families. 18 P.S. § 11.201(4) ("Victims of crime have the following rights . . . In cases involving a personal injury crime . . . to submit prior comment to the prosecutor's office . . . as appropriate to the circumstances of the case, on the potential reduction or dropping of any charge or changing of a plea in a criminal or delinquency proceeding, or, diversion of any case, including an informal adjustment or consent decree."); id. at § 11.201(5).

Prosecutors also have statutory duties to honor these rights. 18 P.S. § 11.213(b) ("In a personal injury crime or burglary, the prosecutor's office shall provide notice of and offer the opportunity to submit prior comment on the potential reduction or dropping of any charge or changing of a plea, a diversion of any case, including informal adjustment and consent decree, unless such notice is provided by the juvenile probation office."); 18 P.S. § 11.213(f)(3), (6) ("The prosecutor's office shall provide all of the following to the victim . . . If the prosecutor's office is prosecuting a personal injury crime, notice prior to the entry of a consent decree. . . . Upon request in a personal injury crime, notice of the filing, hearing or disposition of appeals.").

The District Attorney's communication with the victims' family serves as one of the bases for its concession on the remaining issue in this case. It appears that these communications are at issue. The Attorney General has alleged that the family members of the deceased were not contacted about this phase of the case. Attached to the Attorney General's brief is a letter from

15

Lisa Hart-Newman, the murder victims' daughter and a victim herself in this case, when as a seven-month-old she was left to freeze to death in her home by Defendant and his cohort. Other family letters were also submitted by Michael F.L. Allen, the female decedent's brother, Patricia Carr, the female decedent's sister, and Dr. Tony Hart, the male decedent's brother. In all of these letters, the victims' family members are clear that they oppose penalty phase relief, as proposed by the District Attorney.

The District Attorney disputes the Attorney General's portrayal of communications from the victims' family and has attached to its reply an affidavit from Victim Services Coordinator, Heather Wames, detailing her contact with Dr. Tony Hart, the male decedent's brother. Ms. Wames states that she contacted Dr. Hart, "explained the status of the case, informed the [Dr. Hart] that the office was reviewing the death penalty aspect of the case, provided him with her own contact information, and asked him to invite any interested family member to contact her." (Id. at ¶ 11.) The District Attorney asserts that, "despite her ongoing availability," Ms. Wames was not contacted by any family member other than Dr. Hart. (Id. at ¶ 13.) However, in his letter attached to the Attorney General's *amicus* brief, Dr. Hart states that he was *misadvised* about the posture of the case. He explains that the District Attorney told him "that Wharton had won an appeal and that in order to avoid a new trial a plea deal was offered and accepted." (*Amicus* Br., ECF No. 171, at 49.)

The stark differences in the portrayal of the victims' family's views are another reason why a full hearing on Wharton's remaining habeas claim must occur. As such, the District Attorney or the Attorney General may offer the family members of the victims as witnesses at the upcoming hearing. And, indeed, under the crime victims statutes, these family members have an independent right to be heard.

16

## IV. **CONCLUSION**

For the reasons set forth above, I find that I must independently evaluate the merits of Wharton's Remaining Sentencing Claim, notwithstanding the District Attorney's concession of relief. I cannot do so on the current record and, therefore, will hold an evidentiary hearing as directed by the Third Circuit. At this evidentiary hearing, I will permit the Attorney General as *amicus curiae* to call and cross-examine witnesses. In addition to other evidence relevant to Wharton's Remaining Sentencing Claim, the parties and the Attorney General may present evidence regarding the District Attorney's communication with the victims' family in connection with its concession of penalty phase relief.

An appropriate Order follows.