**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT WHARTON** | : | **CIVIL ACTION** |
| | : | |
| **Petitioner** | : | **No. 2:01-cv-06049-MSG** |
| | : | |
| **v.** | : | **CAPITAL CASE** |
| | : | |
| **TAMMY FERGUSON,** | : | |
| **Superintendent,** | : | |
| | : | |
| **Respondent** | : | |

---

**PRE-HEARING MOTIONS OF *AMICUS CURIAE*
PENNSYLVANIA OFFICE OF ATTORNEY GENERAL**

---

AND NOW, comes *amicus curiae* the Pennsylvania Office of Attorney General (OAG), through its counsel, James P. Barker, Chief Deputy Attorney General, and Cari Mahler, Senior Deputy Attorney General, who file this Pre-Hearing Motions of *Amicus Curiae* Pennsylvania Office of Attorney General and, in support thereof, represent as follows:

## I. BACKGROUND

1. On the night of January 30-31, 1984, the Petitioner, Robert Wharton, along with Eric Mason, terrorized, brutalized, and murdered Bradley and Ferne Hart and left the Harts' seven-month-old daughter alone in their unheated home.

2. Police arrested Wharton on February 7, 1984, after which he confessed to the murders.

3. On July 2, 1985, a jury sitting in the Philadelphia Court of Common Pleas found Wharton guilty of murder of the first degree and related offenses and, on July 5, 1985, returned a verdict of two death sentences for the murder charges.

4. On April 28, 1992, on direct appeal, the Supreme Court of Pennsylvania affirmed the convictions but vacated the death sentences based on an erroneous jury instruction.

5. On December 23, 1992, a second jury returned a verdict of death for Wharton on each count of first-degree murder.

6. On September 29, 1995, on direct appeal, the Supreme Court of Pennsylvania affirmed the judgment of sentence.

7. Wharton sought relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§9541-9546, which the trial court denied.

8. The Supreme Court of Pennsylvania affirmed the denial of PCRA relief on November 25, 2002.

9. On October 7, 2003, Wharton filed a Petition for Writ of Habeas Corpus raising twenty-three claims under 28 U.S.C. § 2254, all of which this Court denied on August 6, 2012.

10. On appeal, the United States Court of Appeals for the Third Circuit considered three issues, affirming as to two of the issues and remanding for an evidentiary hearing on the third.

11. The sole claim remaining before the Court is whether trial counsel provided ineffective assistance for failing to investigate and present to the second sentencing jury evidence in the form of prison records supporting a claim of Wharton's alleged "positive adjustment" to prison life in the time between the two penalty phases of his capital trial. *See generally Skipper v. South Carolina*, 476 U.S. 1 (1986) (exclusion of evidence of capital defendant's good behavior during pretrial detention violated right to place before sentencing jury evidence in mitigation of punishment).

12. On February 6, 2018, the Philadelphia District Attorney's Office submitted to the Court a notice that it intended to concede relief under § 2254 and, two days later, submitted a proposed order to that effect.

13. On March 4, 2019, the Court declined to issue the proposed order and directed the parties to brief the question of whether the Court could grant relief with no review of the merits of Wharton's claim.

14. Dissatisfied with the responses to its Order of March 4, 2019, the Court requested that the Pennsylvania Office of Attorney General (OAG) participate as

*amicus curiae* to assist the Court in determining whether Wharton is entitled to relief.

15. After its own investigation, OAG submitted to the Court a brief that: 1) summarized evidence that Wharton's adjustment to prison life was not positive; 2) demonstrated that, if defense counsel had pursued this tactic during the second penalty hearing, the Commonwealth would have been able to present overwhelming rebuttal evidence; and 3) presented the conclusion that Wharton is not entitled to relief.

16. Based on OAG's *amicus* brief and submissions by counsel for Wharton and the Philadelphia District Attorney's Office, the Court concluded that an evidentiary hearing is necessary to address the merits of the remaining claim.

17. The arguments raised in the briefs of the parties and *amicus*, as well as the exhibits proffered by Wharton, reflect a number of issues for the Court's consideration prior to convening a hearing.

## II. MOTION TO CLARIFY RELEVANT TIME PERIOD

18. In its *amicus* brief, OAG pointed out that there was information relating to events that occurred between the two sentencing hearings that had been omitted from the information provided to the Court, most notably evidence of the events supporting Wharton's attempted escape and simple assault charges as well as the

details of Wharton's misconducts while in the custody of the Pennsylvania Department of Corrections.

19. In response, Wharton argued that the escape occurred before he entered the custody of the Pennsylvania Department of Corrections and evidence thereof is irrelevant. Unopposed Motion for Stay or Continuance and Consolidated Response to Amicus Brief and Court's Questions at 7-8.

20. According to Wharton, he did not enter prison until he entered the Eastern Diagnostic and Classification Center in September 1986.

21. Wharton originally recited his claim to the PCRA court as follows:

XIV. Trial counsel failed to obtain and introduce evidence regarding Mr. Wharton's positive adjustment to prison life during the seven years between his first and second penalty hearings. ….

Amended Petition for Habeas Corpus Relief Pursuant to Article I, Section 14 of the Pennsylvania Constitution and Statutory Post-Conviction Relief under 42 Pa.C.S. § 9542 et seq. and Consolidated Memorandum of Law at 109 (capitalization omitted).

22. Wharton added:

Between the time of his first penalty hearing in 1985 and his second in 1992, Petitioner has been held in the custody of the Pennsylvania Department of Corrections. Review of his prison files reveals that he has made a sterling adjustment to prison life, is not a future danger should he remain incarcerated for life, and has every potential for rehabilitation. …

*Id*. at 109 ¶ 249.

23. On appeal from the denial of PCRA relief, Wharton identified the issue before the Supreme Court of Pennsylvania as follows:

> II. Trial counsel failed to obtain and introduce evidence that during the seven years between his first and second penalty hearings, Appellant had made a positive adjustment to prison, was amenable to rehabilitation and did not pose a future danger, all of which are mitigating. …

Initial Brief of Appellant on appeal from denial of PCRA relief at ii, 9 (capitalization omitted).

24. Wharton added:

> Between the time of Appellant's first penalty hearing in 1985 and his second in 1992, Appellant was held in the custody of the Pennsylvania Department of Corrections. His prison file reveals that he had made a sterling adjustment to prison life; is not a future danger should he remain incarcerated for life; and is amenable to rehabilitation. …

*Id.* at 10.

25. In his Appellant's Reply Brief, Wharton recited the issue as follows:

> III. Appellant is entitled to relief because trial counsel was ineffective for failing to present substantial evidence of his positive adjustment to prison during the seven years between his initial incarceration and second penalty hearing and related evidence that Appellant was not a future danger.

Appellant's Reply Brief at iii, 11 (capitalization omitted).

26. In a Supplemental Brief of Appellant, Wharton recited the issue as follows:

6

II. Trial counsel failed to obtain and introduce evidence that during the seven years between his first and second penalty hearings, Appellant had made a positive adjustment to prison, was amenable to rehabilitation and did not pose a future danger, all of which are mitigating. …

Supplemental Brief of Appellant at ii, 3 (capitalization omitted).

27. The Supreme Court of Pennsylvania made clear its understanding of the

claim as involving the entire period between the two penalty phase hearings:

Appellant first claims that his trial counsel was ineffective for failing to obtain and introduce evidence that, during the seven years between appellant's first and second penalty hearings, he made a "sterling" adjustment to prison life and, therefore, he was not a future danger should he be sentenced to life in prison and was amenable to rehabilitation. Appellant argues that this positive adjustment to the prison environment was relevant mitigation evidence that his counsel was constitutionally obliged to produce under *Skipper v. South Carolina*…

*Commonwealth v. Wharton*, 811 A.2d 978, 988 (Pa. 2002).

28. In his pleading before this Court, Wharton recited the claim as follows:

IV. Trial counsel failed to obtain and introduce mitigating evidence that during the seven years between his first and second penalty hearings, petitioner made a positive adjustment to prison, was amenable to rehabilitation and did not pose a future danger. …

Petition for Writ of Habeas Corpus and Consolidated Memorandum of Law at 54

(capitalization omitted).

29. Wharton supported his claim in part as follows:

…Because Petitioner was given a second penalty hearing in 1992 (following the Pennsylvania Supreme Court's reversal of his first death sentences imposed in 1985), and because he was incarcerated

7

for the full seven years between the first and second penalty hearing, the Pennsylvania Department of Corrections generated a massive prison file which was largely highly mitigating.

*Id.* at 55 ¶ 132.

30. This Court also expressed its understanding that Wharton's claim relates to the entirety of the seven-year period between the penalty-phase hearings:

> Petitioner asserts that his Sixth Amendment right to counsel was violated during the second penalty hearing of his trial in 1992, when his counsel failed to obtain and introduce mitigating evidence contained in his prison files from the seven years following his 1985 conviction. Specifically, he claims that these files provided counsel with a "rich vein of mitigating circumstances" to explore and present to the jury as evidence that he "made a positive adjustment to prison life; is not a future danger should he remain incarcerated for life; and is amenable to rehabilitation." (Pet. at 55.)

Memorandum Opinion filed August 16, 2012, at 104-105.

31. Before the Third Circuit, Wharton stated his claim as follows:

> B. Trial Counsel's failure to investigate or present evidence of petitioner's six years of positive prison adjustment, and supporting expert testimony, deprived him of the effective assistance of counsel at the penalty phase retrial.

Initial Brief for Appellant at 93 (capitalization omitted).

32. In support of his claim, Wharton added:

> …During the post-conviction proceedings, his counsel proffered the records that trial counsel had failed to uncover. … They demonstrated a positive adjustment during the six years between his two penalty trials. …

*Id.* at 97 (citation to Appendix omitted).

33. In its Opinion, the United States Court of Appeals for the Third Circuit summarized its understanding of the claim:

> At the PCRA stage, Wharton alleged that [trial counsel] was ineffective at the second penalty hearing for failing to obtain and present evidence reflecting Wharton's positive adjustment to prison life during the seven years between his two penalty hearings. …

Opinion filed January 4, 2018, at 22.

34. Clearly, based on the foregoing, Wharton consistently has stated that his claim involves the time between his penalty phase hearings, i.e. from July 5, 1985, through December 14, 1992, and the courts reviewing the claims have expressed an understanding of the claim as involving that time frame.

35. In his response to the Brief of *Amicus Curiae*, however, Wharton contended for the first time that his claim is based only on the time during which he was in the custody of the Pennsylvania Department of Corrections and evidence outside his newly established time frame is "irrelevant." Unopposed Motion for Stay or Continuance and Consolidated Response to Amicus Brief and Court's Questions at 7-8.

36. The import of Wharton's argument is that he wishes to exclude from the Court's consideration evidence of his escape and assault on a deputy sheriff, which occurred after his first sentencing hearing but before he entered DOC custody.

37. Wharton himself established the relevant time frame with his repeated statements that counsel was ineffective for failing to present evidence of his alleged positive adjustment while incarcerated between his penalty phase hearings.

38. In actuality, Wharton was incarcerated beginning on February 7, 1984, the date on which he was arrested for the murders, as has never left the custody of city, county, or state officials apart from his brief flight during his escape.

39. Whether he was in a holding cell at a police station, in a county jail, or in a state correctional institution, Wharton was imprisoned from the time he was arrested.

40. Wharton had the opportunity to demonstrate "positive adjustment" from the time that he was taken into custody by Philadelphia police.

41. The primary case on which Wharton relies, *Skipper v. South Carolina*, 476 U.S. 1 (1986), involved evidence of positive adjustment to prison during the defendant's pretrial detention and did not limit the time period to the defendant's entry into state prison and/or onto death row, a rationale that completely undermines Wharton's newly minted claim that only his time in DOC custody on death row is relevant.

42. Even if Wharton had not already established the relevant time frame and even if *Skipper* did not establish the relevant time frame, the evidence of Wharton's escape is material to explain and place into context other behavior on

10

the part of Wharton that occurred while he was in the custody of the DOC, such as his possession of an improvised handcuff key (Wharton used a handcuff key to free his hands during his escape) and his practicing of martial arts (which plainly would assist in carrying out another escape involving overpowering a deputy sheriff, corrections officer, or deputy U.S. marshal).

43. The evidence of the escape also would be necessary for purposes of the expert opinions relating to Wharton's supposed positive adjustment to prison life, as it must be explained by Wharton's experts as having no effect or by the expert of the *amicus* that the escape is important to the analysis, particularly with respect to Wharton's argument that he did not pose a future danger despite his history of escape, burglary, robbery, and assault.

44. In sum, the relevant time period for purposes of Wharton's claim of positive adjustment to prison life is *at least* the time between his penalty phase hearings and, more appropriately, the time of his arrest through the second penalty phase.

WHEREFORE, OAG respectfully requests that the Court enter an Order establishing the relevant time period as the entire time between Wharton's arrest and his second penalty phase hearing or, in the alternative, the entire time between Wharton's penalty phase hearings.

### III. MOTION FOR DISCLOSURE OF EVIDENCE AND RECORDS

45. After the PCRA court issued a notice of its intent to dismiss the petition, Wharton filed a response to the notice that included a "declaration" of Harry Krop, Ph.D., a forensic psychologist.

46. In his Petition for Writ of Habeas Corpus, Wharton relied in substantial part on the opinion of "Dr. Harry Krop, an experienced forensic psychologist." Petition at 61 ¶ 139. *See also id.* at 62-63  (quoting Dr. Krop's "Declaration").

47. In reaching his conclusions, Dr. Krop stated[1] that he "reviewed psychological tests that were administered to Mr. Wharton" and "conducted a clinical interview; reviewed [Wharton's] history while incarcerated by the Pennsylvania Department of Corrections and reviewed other documents related to the facts of his capital case." *Id.* at 62 (Declaration at 1 ¶ 2).

48. Dr. Krop never identified the psychological tests administered to Wharton to which he referred in ¶ 2 of his Declaration, who provided the test results, nor who administered the tests; Dr. Krop also never stated when the tests were administered.

---

[1] The Declaration does not indicate its author, that is, the person who actually drafted the Declaration, but it is clear Dr. Krop adopted the statements of the author by signing the Declaration.

49. Wharton has never submitted any notes taken during a clinical interview by Dr. Krop, and Dr. Krop does not indicate in his "Declaration" whether he took notes.

50. Dr. Krop never identified the specific documents he reviewed to reach his conclusions regarding Wharton's alleged positive adjustment to prison life.

51. Dr. Krop never identified what "history" he reviewed for purposes of his opinion.

52. Dr. Krop never identified the "other documents related to the facts of [Wharton's] capital case."

53. Later in his Declaration, Dr. Krop indicated that his "opinions are based upon all of the above described factors, my clinical evaluation, review of materials, Mr. Wharton's history and *my testing*." *Id.* at 63 (Declaration at 3 ¶ 7) (emphasis added).

54. Dr. Krop did not indicate whether "my testing" referred to the same tests to which he referred in ¶ 2 of his Declaration.

55. Absent from Dr. Krop's recitation is any reference to Wharton's convictions for escape, burglary and related offenses, and a home-invasion robbery, despite Dr. Krop's conclusion that Wharton "does not have a significant criminal history prior to the offenses related to his capital case" and "the charges

13

for which he was sentenced to death are anomalous and out-of-character for Mr. Wharton." *Id.* at 62 (Declaration at 1 ¶ 3).

56. Both of Wharton's proffered, current experts have indicated in their reports that they reviewed and relied on Dr. Krop's Declaration in reaching their own conclusions; indeed, Wharton's forensic psychiatrist, Neil Blumberg, M.D., indicated specifically that he agrees with the opinions set forth in Dr. Krop's Declaration.

57. In order for OAG's expert, John S. O'Brien, II, M.D., J.D., to provide a complete, thorough, and accurate review of the basis for Dr. Blumberg's opinion, which relies on Dr. Krop's analysis, the materials omitted from the record are necessary.

58. OAG either cannot identify or does not have access to the records and information supporting Dr. Krop's opinion.

59. The Declaration is undated and Dr. Krop's name appears nowhere of record until Wharton's response to the notice of the intention to dismiss the PCRA petition was filed ten days after the notice issued.

60. Neither the original (*pro se*) nor the amended PCRA petition indicates any intent to rely on Dr. Krop, suggesting that Dr. Krop was retained as a result of the notice of intention to dismiss issued by the PCRA court.

WHEREFORE, OAG respectfully requests that the Court direct counsel for Wharton to provide copies of the following:

(a) any and all documents provided to Dr. Krop for purposes of his opinion and analysis, including but not limited to: the specific records of the Department of Corrections; police reports relating to any crime committed or alleged to have been committed by Wharton; court records relating to any crime committed or alleged to have been committed by Wharton; the results of psychological testing performed on Wharton on which Dr. Krop relied; and the raw data supporting the results of psychological testing performed on Wharton;

(b) the identity of any and all persons who performed a psychological evaluation of Wharton on which Wharton intends to rely at the hearing; the names of the specific tests administered to Wharton; records reflecting the dates on which the tests were administered;

(c) the report of Dr. Krop's clinical interview of Wharton; any notes taken by Dr. Krop during or related to his clinical interview of Wharton; and any document or record reflecting the date of the clinical interview;

(d) any record, not privileged or as to which the privilege has been waived, indicating the date on which Dr. Krop was retained, the date on which he received documents for review, the date on which he performed

15

psychological tests on Wharton; and the date on which he provided his Declaration.

## IV. MOTION TO PRECLUDE AND/OR LIMIT EXPERT TESTIMONY

61. As noted, *see* ¶ 21, above, Wharton presented his claim to the PCRA court as involving the alleged failure of defense counsel to investigate and present to the penalty phase jury Wharton's prison history, including obtaining and reviewing prison records, and introducing those records at the second penalty hearing in support of his claim of "positive adjustment."

62. In his PCRA petition, Wharton did not proffer, or even mention, expert testimony to support the claim.

63. After the PCRA court issued a notice of its intent to dismiss the petition, Wharton filed a response to the notice that included a "declaration" of Harry Krop, Ph.D., a forensic psychologist.

64. Wharton never moved to amend his PCRA petition to include a claim that trial counsel was ineffective for failing to retain an expert in support of his "positive adjustment" claim, such that Wharton was proceeding on the claim as originally filed.[2]

---

[2] Wharton purported to be "supplementing" his PCRA petition, an action never permitted under the PCRA or the associated Pennsylvania Rules of Criminal Procedure, and did not request leave to amend as required by the Rules.

65. On appeal from the denial of PCRA relief, the Supreme Court of Pennsylvania noted that Wharton had proffered the report of a psychological evaluation when he "belatedly" proffered his prison records. *Wharton*, 811 A.2d at 988.

66. The Supreme Court of Pennsylvania analyzed the claim as the failure to locate and present to the jury the evidence of Wharton's prison records and did not consider the late-proffered evidence of a psychological evaluation in its analysis.

67. Simply stated, the claim as presented to the state courts was that trial counsel should have obtained Wharton's prison records and presented them to the second sentencing jury because the records allegedly would have supported a mitigating factor.

68. Wharton's proffer of Dr. Krop's opinion in his response to the PCRA court's notice of intent to dismiss did not act as amendment of his claim or petition under Pennsylvania law, and no state court treated it as such.[3]

---

[3] In its opinion, the Third Circuit noted, "Although Wharton did not submit his documentary evidence on this claim until after the PCRA court issued its notice of intent to dismiss his PCRA petition, '[t]he state courts allowed this revision, and the Commonwealth has not challenged it.' (Commonwealth's Br. 150.)" Slip. op. at 32 n.23. Actually, there was nothing to challenge, as there was no motion to amend the PCRA petition, which is required. Pa.R.Crim.P. 905(A) (former Rule 1505). Importantly, no state court, including the Supreme Court of Pennsylvania, ever addressed the claim on the merits as if it had been properly amended to include expert testimony. It is not entirely clear what impact a clear misstatement by counsel for the Commonwealth, adopted by the Third Circuit, has on the instant proceeding.

69. It was not until Wharton filed his petition for writ of habeas corpus in this Court that he included in a pleading any allegations that trial counsel was ineffective for failing to obtain a psychological evaluation of Wharton for these purposes. *See esp.* Petition at 55 ¶ 132.

70. Because Wharton failed to present the issue to the state courts as a claim of ineffective assistance of counsel for not presenting expert testimony in the form of a psychological or psychiatric opinion relating to his adjustment to prison life, Wharton procedurally defaulted the claim, but the Commonwealth waived the procedural default.[4]

71. The Court should preclude any opinion of Dr. Krop based on Wharton's failure to preserve critical evidence supporting Dr. Krop's opinions.

72. Specifically, in a second Declaration dated April 10, 2020, Dr. Krop indicated as follows:

> In 2019, attorneys Elizabeth McHugh (Hadayia) and Claudia Van Wyk, Mr. Wharton's current counsel at the Federal Community Defender Office in Philadelphia, contacted me and asked me to retrieve any records I had retained pertaining to Mr. Wharton. After a diligent search, I found that I no longer possess any materials related to this case.
>
> Ms. McHugh and Ms. Van Wyk sent me a copy of the declaration I signed in 1997…. Although I have reviewed the declaration, I have no independent recollection of the case. I cannot recall what materials I

---

[4] Ordinarily, a state waives a claim of procedural default by failing to raise the default in its response to the petition for writ of habeas corpus. *Szuchon v. Lehman*, 273 F.3d 299, 321 (3d Cir. 2001).

received or reviewed in 1997, what tests I administered, what I discussed with Mr. Wharton during the evaluation, or what consultations I may have held with Mr. Nolas in 1997. Any declaration I signed, from 1997 to the present, would have been supported by the information available to me at the time.

Declaration of Harry Krop, Ph.D., Pursuant to 28 U.S.C. § 1746.

73. Based on the foregoing, it is clear that there is no foundation for evidence of any opinion to be offered by Dr. Krop: he has no recollection of any basis for an opinion, or even the opinion itself; he has no record of how he formed any opinion; and he has no record, information, data, etc., that would form the basis for any opinion.

74. The governing Rule of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. *See also* Fed. R. Evid. 703 (expert's opinion must be based on facts or data that the expert has been made aware of or has personally observed); Fed. R. Evid. 705 (on cross-examination, expert may be required to disclose facts or data on which opinion is based); *Whole Woman's Health v. Hellerstedt*, 136 S.

Ct. 2292, 2316 (2016) ("The Federal Rules of Evidence state that an expert may testify in the 'form of an opinion' as long as that opinion rests upon 'sufficient facts or data' and 'reliable principles and methods.'").

75. The OAG has otherwise moved for disclosure of any records relating to Dr. Krop's opinion, *see* Motion II, ¶¶ 46-59, above, under the presumption that Wharton's counsel may possess copies of such documents based on a recognition of the obvious importance of the records to Wharton's claim for relief, or that the wayward records might be located after Dr. Krop signed his second Declaration.

76. Given Dr. Krop's admission that he has no independent recollection of any facts relating to this case and no documentation relating to this case, Wharton plainly cannot establish the foundation for Dr. Krop's opinion through Dr. Krop's testimony. *See generally In re TMI Litigation Cases Consolidated II*, 911 F. Supp. 775, 826 (M.D. Pa. 1996) ("[A]n expert's opinion that is without foundation is worth nothing as evidence, and [so is] irrelevant for purposes of Rule 402 and not reliable for purposes of Rule 702 as construed by *Daubert*. In the instances in which the record provides no such foundation, ... [the expert's] opinion adds nothing to the question …") (citation omitted).

77. Wharton has indicated that he intends to call as an expert Neil Blumberg, M.D., a forensic psychiatrist who relied in part on the opinion of Dr. Krop.

78. While an expert may rely on evidence that is otherwise inadmissible, the use of such evidence would be limited to that basis and the evidence would not be admissible independent of the expert's opinion; that is, if Dr. Blumberg reasonably relied on Dr. Krop's opinion (and, given the absence of his own testing and/or interview of Wharton prior to his first report, such reliance is a necessity), Dr. Krop's opinion is limited in use only to providing a basis for Dr. Blumberg's opinion.

79. Wharton also has indicated an intention to call Cynthia Link, formerly the Superintendent of the State Correctional Institution at Graterford, as an expert on reading prison records in terms of adjustment to prison life.

80. In state court, Wharton did not raise a claim of ineffective assistance of trial counsel for failure to call an expert on corrections and reading prison records.

81. Wharton's petition for writ of habeas corpus filed with this Court sets forth no claim of ineffective assistance of trial counsel for failure to call an expert on corrections and reading prison records.

82. In remanding the case, the Third Circuit implied that Wharton is not restricted to calling Dr. Krop as an expert but indicated that Wharton might call "a similar expert witness" at a hearing on his claim. Slip op. at 30.

83. The Third Circuit did not hold that Wharton was entitled to amend his Petition at this late date or that he could call a dissimilar expert witness at a hearing.

84. Ms. Link does not appear qualified to offer testimony that is the province of a psychiatrist or psychologist.

85. An expert on corrections practices and reading prison records is not "similar" to a psychological or psychiatric expert.

86. Ms. Link's proffered testimony is outside the scope of, and therefore not relevant to, the claim presented to the state courts and to this Court in the Petition.

87. Ms. Link's proffered testimony also is based on speculation, as she opines that the corrections officials who wrote reports did not consider his violations and misconducts to be serious despite stating as much in their reports. *See* Link Declaration at 3-4.

88. Ms. Link's qualifications do not extend to expertise in the thought processes of other corrections officials.

89. Ms. Link should not be permitted to testify in the manner described on the fourth page of her Declaration relating to how prison officials perceived Wharton's misconducts relating to the possession of the implements of escape.

90. Moreover, Ms. Link should not be permitted to offer her opinion as to whether the radio antennae in fact were intended to be used as handcuff keys as

that fact was determined by the hearing officer and reviewer, *see generally Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798-799 (1986) (giving preclusive effect to state agency determination when parties have adequate opportunity to litigate), and because Ms. Link admittedly has never seen the antennae, rendering her incompetent to offer such an opinion. *See generally* Fed. R. Evid. 602 (non-expert witness not competent without personal knowledge of subject of testimony), 702(b) (expert opinion must be based on sufficient facts or data).

91. In addition to relying on the unsubstantiated opinion of Dr. Krop, Dr. Blumberg indicates in his initial "Declaration" that records post-dating Wharton's second sentencing hearing support his conclusion. Blumberg Declaration at 5.

92. Because records created after the relevant time period were not available to trial counsel in 1992, Dr. Blumberg's reliance thereon is unreasonable and his related opinion is irrelevant.

93. On January 11, 2021, counsel for Wharton notified counsel for the District Attorney's Office and OAG that Dr. Blumberg will be evaluating Wharton on February 1 and 5, 2021, and that a supplemental report will follow.

94. The order of witnesses for Wharton appears to be Cynthia Link, Dr. Blumberg, and William Cannon.

95. The Court has established the hearing dates as February 18 and 25, 2021, and March 8 and 16, 2021.

96. The most likely date for Dr. Blumberg to testify is February 25, 2021, less than three weeks after Dr. Blumberg examines Wharton.

97. It is unknown what type of examination is being conducted on Wharton.

98. Counsel for Wharton first entered an appearance on January 20, 1997, some twenty-four years ago, and has been demanding an evidentiary hearing on the instant claim since that time.

99. The Third Circuit issued its Opinion on January 11, 2018, directing a hearing on the claim.

100. When OAG learned that its corrections expert would be unavailable to testify due to health issues, it attempted to retain a new expert and learned that a second expert would be unavailable also due to health issues; a third expert had too full a schedule to act quickly and participate in this case; OAG then retained a fourth expert and worked diligently to provide a report in the time permitted in the Court's Order of November 17, 2020, to be ready for the hearing and to allow notice to the parties.

101. Even assuming Dr. Blumberg were to provide a supplemental report on the day that he finished examining Wharton, there would be insufficient time to prepare for proper cross-examination of an expert witness.

WHEREFORE, OAG respectfully requests that the Court enter an Order:

(a) excluding from evidence both Declarations executed by Harry Krop, Ph.D., except to the extent an expert has relied on one or both of those Declarations;

(b) precluding Cynthia Link from offering an opinion regarding the thought processes of corrections officials as to the significance of Wharton's misconducts or an opinion on the nature of the contraband found in Wharton's cell;

(c) precluding any expert from relying on events that occurred after Wharton's second penalty phase hearing; and

(d) precluding Dr. Blumberg from testifying based on testing done after January 18, 2021, or based on a report issued after that date.

## IV. OBJECTIONS TO EXHIBITS PROFFERED BY WHARTON

102. In the exhibits provided to OAG by counsel for Wharton, the first four are designated, "Dept of Corrections Records 1986-1997."

103. Trial counsel would not have records available for use at the second penalty hearing unless they existed before the hearing, such that any record post-dating the second hearing in 1992 is irrelevant.

104. Exhibit 5 of Wharton's proffered hearing exhibits is designated, "Discovery, Rec'd Feb. 6, 2012."

105. There is no relevance to the fact that Wharton received discovery in February 2012, although there may be relevance to individual documents contained in Exhibit 5.

106. Exhibit 6 contains Wharton's institutional medical records that post-date the second penalty phase hearing and therefore are irrelevant.

107. Exhibit 7 and 8 contain additional institutional records that post-date the second penalty phase hearing and therefore are irrelevant.

108. OAG objects to the use of Exhibit 10 apart from reliance thereon by other expert witnesses as the Declaration of Dr. Krop lacks foundation and constitutes hearsay.

109. Exhibits 23, 24, 25, 26, 27, and 28 are all court opinions that are not relevant to an evidentiary hearing.

110. Exhibit 29 is Wharton's "Unopposed Motion for Stay or Continuance and Consolidated Response to Amicus Brief and Court's Questions" that has no relevance to an evidentiary hearing.

111. Exhibit 30 is a transcript relating to post-verdict motions in the trial court specifically relating to an attempt by Wharton to replace his counsel and is irrelevant to the issue before the Court.

WHEREFORE, OAG respectfully requests that the Court enter an Order:

(a) excluding from evidence any record in Exhibits 1 through 4, inclusive, that is dated after December 23, 1992;

(b) excluding from evidence Exhibit 5 unless Wharton proffers the relevance and admissibility of individual records contained therein;

(c) excluding from evidence any record or document contained in Exhibits 6, 7, and 8 that is dated after December 23, 1992;

(d) limiting the use of Exhibit 10 to a record on which Wharton's experts have relied in formulating their opinions;

(e) excluding from evidence Exhibits 23 through 28, inclusive, as judicial opinions that are not relevant in an evidentiary hearing;

(f) excluding from evidence Exhibit 29 as a motion that is not relevant in an evidentiary hearing; and

(g) excluding from evidence Exhibit 30 as a transcript relating to a motion that is not relevant in an evidentiary hearing.

WHEREFORE, the Pennsylvania Office of Attorney General respectfully requests that this Honorable Court enter an Order consistent with the foregoing requests for relief.

By: _/s/ James P. Barker_             _/s/ Cari Mahler_

James P. Barker                          Cari Mahler
Chief Deputy Attorney General        Senior Deputy Attorney General
Office of Attorney General               Office of Attorney General
Criminal Law Division                  Criminal Law Division
Appeals and Legal Services Section    Appeals and Legal Services Section
16th Floor—Strawberry Square         1000 Madison Avenue, Suite 310
Harrisburg, PA 17120                 Norristown, PA 19403
(717) 787-6348                       (610) 631-6552
jbarker@attorneygeneral.gov          cmahler@attorneygeneral.gov

Date:  January 18, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I caused the foregoing Pre-Hearing Motions of *Amicus Curiae* Pennsylvania Office of Attorney General to be served on the following persons via ECF or by first class mail:

<u>Via ECF and/or First Class Mail</u>

| | |
|---|---|
| Victor J. Abreu, Esquire | Nancy Winkelman, Esquire |
| Claudia Van Wyk, Esquire | Paul M. George, Esquire |
| Elizabeth McHugh, Esquire | District Attorney's Office |
| Federal Community Defender Office | 3 South Penn Square |
| Capital Habeas Corpus Unit | Philadelphia, PA 19107 |
| 601 Walnut Street, Suite 545 West | (Counsel for Respondent) |
| Philadelphia, PA 19106 | |
| (Counsel for Petitioner) | |

By: */s/ James P. Barker*            */s/ Cari Mahler*

     James P. Barker            Cari Mahler
     Chief Deputy Attorney General    Senior Deputy Attorney General
     Office of Attorney General       Office of Attorney General
     Criminal Law Division          Criminal Law Division
     Appeals and Legal Services Section  Appeals and Legal Services Section
     16th Floor—Strawberry Square    1000 Madison Avenue, Suite 310
     Harrisburg, PA 17120         Norristown, PA 19403
     (717) 787-6348              (610) 631-6552
     jbarker@attorneygeneral.gov     cmahler@attorneygeneral.gov

Date:  January 18, 2021