**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| _____ : | |
| ROBERT WHARTON,                                : | |
|                                                              : | CIVIL ACTION |
|                    Petitioner,                       : | |
|                                                              : | |
|            v.                                             : | No. 01-6049 |
|                                                              : | |
| JAMIE SORBER, et al.,                          : | **CAPITAL CASE** |
|                                                              : | |
|                    Respondents.          : | |
| _____ | |

**PETITIONER ROBERT WHARTON'S MOTIONS IN LIMINE**

Petitioner, by and through undersigned counsel, respectfully requests that this Court grant these pre-hearing Motions in Limine.  Petitioner moves to preclude testimony from the victims' family members, exclude portions of Carlos Vega's testimony that are based on hearsay, and preclude various documents and records which contain hearsay or are irrelevant.  Petitioner also requests that this Court reconsider, on the basis of facts not previously considered, its prior order denying the proposed settlement by the parties.  Petitioner submits the following in support of his motions:

> **A.      Introduction**

Petitioner filed a Petition for Writ of Habeas Corpus and raised, _inter alia_, a claim of counsel's ineffectiveness at his capital resentencing trial for failing to introduce evidence of Petitioner's positive adjustment to incarceration, as authorized by _Skipper v. South Carolina_, 476 U.S. 1 (1986).  This Court denied relief and a certificate of appealability on that claim. The Third Circuit granted COA and, ruling on the merits, remanded this case for an evidentiary hearing on this sole issue.  Following remand, the District Attorney's Office ("DAO") filed a Notice of

1

Concession of Penalty Phase Relief, indicating that after review of this case by the Capital Case Review Committee and communication with the victim's family, it intended to concede relief and that it would not seek a new death sentence in state court.  ECF No. 155.

Following this notice of concession, this Court issued an opinion requesting further briefing from the parties on two issues: (1) whether the Court had the obligation or authority to grant the writ of habeas corpus without conducting merits review of the claim; and (2) whether the Court could make that determination on the existing record without the evidentiary hearing. ECF No. 160 at 6.  After the parties submitted briefing on this issue, this Court requested that the Office of the Attorney General ("OAG") submit an amicus brief "on the issue of whether relief should be granted on Petitioner's remaining habeas claim based on the current record or whether the record should be expanded."  Order, ECF No. 165 at 4.

In its amicus brief, the OAG stated that it would only address the "narrow factual and legal issues before [the Court]."   However, in a section entitled "Other Matters for the Court's Consideration," the OAG went beyond the Court's request and offered its opinion that the DAO had violated 18 U.S.C. § 3771, the Crime Victims Rights Act ("CVRA") by allegedly not informing and/or misleading  the victims' family about its intention to concede relief on Petitioner's remaining claim.  ECF No. 171, at 45.  In support of its argument, the OAG submitted declarations from family members discussing what, if any, contact they had with the District Attorney's Office, as well as their opinions about whether Mr. Wharton should be sentenced to life imprisonment.  The DAO disputed these allegations and provided a copy of communications between the office's victim-witness liaison and Robert Hart, the brother of victim Bradley Hart.  ECF No. 176.

Thereafter, this Court directed Petitioner to address two additional questions in response to the brief of the OAG: (1) whether the Court could admit the additional evidence referenced by the OAG in its amicus pleading, and (2) whether the OAG should be permitted to participate at the evidentiary hearing.  After further briefing by the parties, the Court issued an opinion rejecting the "sudden" concession by the DAO, ordering an evidentiary hearing on Petitioner's *Skipper* claim, and allowing the OAG to participate at the hearing.  Furthermore, the Court ordered that "the District Attorney or the Attorney General may offer the family members of the victims as witnesses at the upcoming hearing.  And, indeed under the crime victims statutes, these family members have an independent right to be heard."  ECF No. 187, at 15-16.  In the Court's view, the family members' views were "in issue" because the DAO had referred to consultations with them in the course of explaining the decision to agree to a settlement.  *Id*. at 13, 14.

As set forth in more detail below, this ruling rested on several clear errors of law. Petitioner accordingly seeks reconsideration of that order and requests that this Court grant Petitioner's Motion in Limine to exclude the family members' testimony.

The OAG also submitted various documents in support of its amicus brief, including court records, newspaper articles, and a court opinion from the Eastern District of Pennsylvania relating to an incident in April of 1986 at City Hall where Mr. Wharton fled from sheriff's officers and was ultimately shot and detained.  ECF No. 171-2 at 12 to 171-4 at 19 (OAG's Exhibit "B"). The OAG indicates that it seeks to introduce all these documents as exhibits at the upcoming evidentiary hearing. Many of these documents, in whole or in part, contain information irrelevant to the narrow issue before this Court and are unduly prejudicial to Petitioner.  In addition, newspaper articles, and portions of a proposed witness's testimony, are

3

inadmissible under the rule against hearsay, *see* F.R. Evid. 802, and no exception allows for their admission.

Finally, Petitioner requests that this Court reconsider its prior rejection of the DAO's settlement offer, which the Court based partly on that office's "sudden" decision to settle the case after litigating vigorously to uphold the conviction and sentence for many years. Additional evidence is now available demonstrating that the District Attorney offered to settle this case before trial.  This fact places the office's recent exercise of prosecutorial discretion to make a second settlement offer in a new light.

>    **B.     Testimony from the Victims' Family Members Should be Precluded Under F.R. Evid. 401, 18 U.S.C. § 3771 ("CVRA") and Established Law.**

Introduction of testimony from the victims' family members should be precluded under F.R. Evid. 401(b), 18 U.S.C. § 3771 ("CVRA"), and precedents of the United States Supreme Court.

>    1.     **The proposed testimony is irrelevant under F.R. Evid. 401 and established law**.

F.R. Evid. 401 provides:

Evidence is relevant if:

>    (a)     It has any tendency to make a fact more or less probable than it would be without the evidence; and

>    (b)     the fact is of consequence in determining the action.

The testimony of the victims' family members cannot satisfy the requirements of F.R. Evid. 401(b) because it is not "of consequence in determining the action."  The Third Circuit remanded this case for an evidentiary hearing on the sole claim of whether Petitioner's Sixth Amendment right to the effective assistance of counsel was violated when his counsel, William Cannon, failed to present evidence of his positive adjustment to incarceration.  Specifically, the

Third Circuit defined the issues as whether (1) Cannon acted unreasonably by failing to

investigate and/or present Wharton's prison-adjustment evidence, and (2) had Cannon presented

that evidence at the second penalty hearing, there is a reasonable probability that at least one

juror would have voted against imposing the death penalty.  772 F. App'x 268, 281 (3d. Cir.

2018).

     The substance of the proposed testimony by the victims' family is clear from the

declarations previously submitted to this Court by the OAG, ECF No. 171-5 at 15-20, which the

OAG has again identified as proposed exhibits at the hearing.   These statements do not address

the issue of Mr. Cannon's representation of Petitioner at his sentencing or the probability that the

outcome would have been different had the jury heard prison adjustment evidence, and,

therefore, are not "of consequence" to the narrow issue before this Court.  Thus, this evidence

cannot meet the test for relevance as set forth in F.R. Evid. 401(b).[1]

     Moreover, victim-impact testimony was not even admissible at Petitioner's sentencing

hearing, nor would it be admissible at any future sentencing hearing under the current law.  Prior

to the 1995 amendments to the capital sentencing statute, victim impact evidence was

categorically inadmissible in Pennsylvania capital sentencing proceedings.  *Commonwealth v.*

*McNeil*, 679 A.2d 1253, 1259 (Pa. 1996).   In the 1995 amendments allowing the admission of

some types of victim impact evidence, the legislature specifically provided that the new rule was

restricted to those cases in which the offense occurred on or after the effective date of the

amendments (December 1995).  *Id*. at 1259-60 ("We note that the recent amendment to 42 Pa.

---

[1] Moreover, even if the evidence had some limited relevance to the above questions, admission of the evidence would be precluded under the balancing test outlined in F.R. Evid. 403 because any marginal relevance it might have "is substantially outweighed" by the "unfair prejudice" of the court's consideration of these emotional statements.  F.R. Evid. 403.

C.S. § 9711[regarding admission of victim impact evidence] . . . only appl[ies] to sentences imposed for offenses which take place on or after the effective date of the Act"). Because this offense took place prior to December 1995, victim impact evidence is not admissible. If Petitioner's sentencing jury could not have considered this evidence, this Court should not take it into account when determining a constitutional claim that turns on the reasonably probable jury impact of prison adjustment evidence. Even if this Court could properly take on the role of sentencer in these proceedings—and it cannot—the victim family testimony would be inadmissible.

Furthermore, the declarations provided by the OAG contain opinions by the family which are never admissible at any capital sentencing proceeding. It is well settled law that victim impact testimony which includes "characterizations and opinions from a victim's family members about the crime, the defendant, and the appropriate sentence" during the penalty phase of a capital trial violates the Eighth Amendment and is prohibited. *Bosse v. Oklahoma,* 137 S. Ct. 1, 2 (2016) (citing *Booth v. Maryland*, 482 US 496 (1987)). In *Bosse*, the Court held that testimony of three of the victims' relatives that the defendant should be sentenced to death violated the Eighth Amendment. Id. at 1. In *Booth*, it held that the testimony from family that the victims were "butchered like animals" and that they did not think "people who did this could ever be rehabilitated," violated the Eighth Amendment and served only to inflame the passions of the jury. 482 U.S. at 508. *Payne v. Tennessee*, 501 U.S. 808, 829 n.2 (1991), which limited the holding in *Booth*, upheld this aspect of *Booth*'s constitutional prohibition.

Here, the statements at issue are replete with similar comments. A statement by Lisa Hart-Newman, daughter of Fern and Bradley Hart, emotionally details the effect these murders have had throughout her life and concludes with a request that "Wharton's death penalty should be

6

carried out." ECF No. 171-5 at 16.  Michael Allen, brother of Fern Hart, gives an emotional

description of the last time he saw his sister, states that he "oppose[s] the vacating of Robert

Wharton's death sentence," and refers to Petitioner as "diabolical."  *Id*. at 17.  Patrice Carr, sister

of Bradley Hart, states that even the idea that Petitioner would receive a life sentence is

"unbearably painful and shocking" and that the death is an appropriate sentence because "justice

was served in 1985, and in 1992, it was confirmed."  *Id*. at 19-20.  These statements are identical

in kind to those found to violate the Eighth Amendment in *Bosse* and *Booth*, and still forbidden

under *Payne*, and should not be considered by this Court.

    Finally, the question whether the DAO sufficiently consulted with the victims' family

members, a subject addressed in several of their proffered declarations, can have no conceivable

relevance to the quality of the assistance provided to Petitioner at his sentencing retrial in 1992.

Therefore, at a minimum, the Court should preclude any testimony or documentary submissions

on that subject.  The Court should not allow the OAG to transform this proceeding into a dispute

with the DAO over its victim outreach practices.

### 2.    18 U.S.C.A. § 3771 Does Not Provide a Basis to Introduce the Evidence.

    Title 18 U.S.C. § 3771 (the Crime Victims' Rights Act or "CVRA") provides various

protections for the victims of crime, and its reach includes victims of state crimes in federal

habeas corpus proceedings in certain circumstances.[2]  Specifically, § 3771 (b)(2)(A) provides:

> In a Federal habeas corpus proceeding arising out of a State conviction, the court
> shall ensure that a crime victim is afforded the rights described in paragraphs (3),
> (4), (7), and (8) of subsection (a).

---

[2] 18 U.S.C. § 3771(b)(2)(D) defines "crime victim" in federal habeas corpus proceedings as
"the person against whom the State offense is committed or, if that person is killed or
incapacitated, that person's family member or lawful representative."

Those relevant subsections provide as follows:

(3)    The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.

(4)    The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

(7)    The right to proceedings free from unreasonable delay.

(8)    The right to be treated with fairness and with respect for the victim's dignity and privacy.

Subsections (3), (7), (8) do not provide for the testimony of victims and therefore are not applicable.  Section (4) grants victims the right to be heard at a public proceeding but limits that right to matters that involve a "release, plea, sentencing, or any parole proceeding."  There is no question that the upcoming evidentiary hearing will not address Petitioner's release, plea, or parole.

Nor does the term "sentencing" apply to the proceedings currently before this Court. While the legislative history and law concerning this provision do not explicitly define "sentencing," it is implied that this provision applies to proceedings to *determine* a sentence. The legislative history for 18 U.S.C. § 3771 provides: "When a victim invokes this right during plea and sentencing proceedings, it is intended that the [sic] he or she be allowed to provide all three types of victim impact: the character of the victim, the impact of the crime on the victim, the victims' family and the community, and *sentencing recommendations*."  150 CONG. REC. S10910-01 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl) (emphasis added).

Prior to the passage of the CVRA, Congress considered a constitutional amendment aimed at protecting victims' rights. The amendment ultimately failed to garner the necessary support and the § 3771 Crime Victims' Rights Act was passed as a compromise measure the

following year. The proposed constitutional amendment used language almost identical to that

ultimately enacted in the CVRA, guaranteeing victims the right "reasonably to be heard";

therefore, review of the legislative history for the constitutional amendment is informative.  The

legislative history for the constitutional amendment provided in part:

> [C]rime victims have the right to be heard at any proceeding to determine a
> "sentence." This provision guarantees that victims will have the right to "allocute"
> at sentencing. Defendants have a constitutionally protected interest in personally
> addressing the court. *See Green v. United States*, 365 U.S. 301 (1961). This
> provision would give the same rights to victims, for two independent reasons. First,
> such a right guarantees that the sentencing court or jury will have full information
> about the impact of a crime, along with other information, in crafting an appropriate
> sentence. The victim would be able to provide information about the nature of the
> offense, the harm inflicted, and the attitude of the offender, among other things.
> Second, the opportunity for victims to speak at sentencing can sometimes provide
> a powerful catharsis. *See United States v. Smith*, 893 F. Supp. 187, 188 (E.D.N.Y.
> 1995), *United States v. Hollman Cheung*, 952 F. Supp. 148, 151 (E.D.N.Y. 1997).
> Because the right to speak is based on both of these grounds, a victim will have the
> right to be heard even when the judge has no discretion in imposing a mandatory
> prison sentence.

S. REP. NO. 108-191, at 37 (2003) (Conf. Rep.).

The hearing at hand is not aimed at determining an appropriate sentence or entertaining

sentencing recommendations. Rather, at issue is whether Mr. Wharton's Sixth Amendment rights

were violated by counsel's ineffectiveness at the 1992 sentencing hearing. The purpose behind

the CVRA provision—ensuring that a sentencer has full information about the impact of a crime

before determining sentence—is not implicated in the upcoming evidentiary hearing because this

Court will not be determining what Mr. Wharton's sentence should be or whether or not Mr.

Wharton's initial sentence was appropriate.

Moreover, any issue involving compliance with the CVRA is now moot.  The OAG filed

its amicus brief with statements from the family members regarding their feelings on the

proposed settlement, and this Court presumably took that evidence into consideration when

rejecting this resolution and ordering the evidentiary hearing on the ineffective assistance claim. Compliance with the statute is no longer at issue, and is certainly not relevant to the narrow constitutional issue before this Court.

> **3.      Allowing the OAG to Inject the Extraneous Issue of Victim Consultation Into the Hearing on Petitioner's Ineffective Assistance Claim Would Violate the Bedrock Principle of Party Presentation.**

The Supreme Court recently issued a unanimous opinion reversing the decision of a federal court for going "beyond the pale" of the issues delineated by the parties.  In *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (May 7, 2020), the Ninth Circuit panel, *sua sponte*, appointed amici and ordered briefing on a ground different from any the appellant had raised.  The panel ultimately struck down Sineneng-Smith's conviction on that ground.  140 S. Ct. at 1578.

Justice Ginsburg, for a unanimous Supreme Court, explained that our system relies on the principle of party presentation. In general, courts should be "passive."  She cited a number of cases in which the Supreme Court itself has ordered supplemental briefing or appointed amici, but none of them had borne any resemblance to the "redirection" the Ninth Circuit panel engaged in.  *Id.* at 1579 & n.4.

Justice Ginsburg described the panel's interventionist actions.  After the parties' briefing on the reach of the statute and its constitutionality under the petition and free-speech clauses of the First Amendment was complete, the panel ordered further briefing, but not from the parties. Instead, it appointed three organizational amici and ordered them to address a First Amendment overbreadth issue that the parties had never addressed.  The court allowed the parties to submit supplemental briefs, but limited them to responding to the amici's arguments.  At oral argument, the amici received twice as much argument time as counsel for Sineneng-Smith.  And,

ultimately, the panel ruled on the overbreadth claim the petitioner had never raised. *Id*. at 1580-81.

Justice Ginsburg rejected the panel's "takeover of the appeal" and "radical transformation of this case." The Court remanded "for reconsideration shorn of the overbreadth inquiry interjected by the appellate panel and bearing a fair resemblance to the case shaped by the parties." *Id*. at 1581-82.

In the same way, in this case, the OAG has attempted a "radical transformation" of Mr. Wharton's claim—which challenges his counsel's constitutionally ineffective trial preparation and presentation—into a fight with the DAO about its practice of victim outreach. This issue is "beyond the pale" of the sole issue framed by the parties. This Court should not allow the OAG's attempted transformation to proceed.

**4.    The Court Should Reconsider Its Previous Ruling Because It Relied on Several Errors of Law.**

The Court's order indicating that the views of the victims' family were "in issue" at the upcoming hearing involved several clear errors of law. Therefore, Petitioner respectfully requests that the Court reconsider its ruling. As the Court has previously observed, a motion for reconsideration must rely on one of three grounds, which include "the need to correct a clear error of law or fact or to prevent manifest injustice." Memorandum Opinion, ECF No. 170, at 2 (quoting *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). The court's earlier ruling accepting the proposed testimony of the victims' family members implicates the errors of law described above.

First, the Court conflated matters that would have been "in issue" in  connection with settlement or a sentencing proceeding with those that will be "in issue" at the upcoming hearing on the ineffective assistance of Mr. Wharton's resentencing counsel in 1992. As discussed

above, testimony from the victims' family at this hearing would be irrelevant and unduly prejudicial.  F.R. Evid. 401 & 403.  The issue at the evidentiary hearing is narrow and limited to whether Petitioner was denied his Sixth Amendment right to the effective assistance of counsel at his capital sentencing.  Testimony from the victims' family regarding their feelings about Mr. Wharton and whether he should be executed or allowed to serve a life sentence has no bearing on the issue to be decided by this Court, and will result in prejudice to Petitioner.

Moreover, this testimony is not sanctioned by the CVRA.  While the CVRA does apply to proceedings in habeas corpus, both the plain language of the statute and the legislative history state that such testimony is only contemplated when a court is determining *sentence* or *release* of a defendant – neither of which are at issue at this evidentiary hearing.  Even if this Court awarded Petitioner relief on this constitutional claim, it would only result in a grant for a new sentencing hearing, not an automatic life sentence or opportunity for release.

In addition, the protections afforded by the CVRA have already been complied with and this issue is now moot since this Court presumably considered the opinions of the family regarding a settlement of the case, rejected the DAO's concession, and ordered an evidentiary hearing.  ECF No. 187, at 1-8, 17. Thus, this is no longer "at issue" at the upcoming evidentiary hearing on ineffective assistance of counsel.

For these reasons, Petitioner requests that the Court reconsider its order allowing the OAG—a non-party—to present testimony from the victims' family members detailing their views on settlement and sentencing and their interactions with the DAO.

**D.      Some Exhibits Proposed by the OAG Are Inadmissible Under the Rules of Evidence.**

On December 2, 1986, Petitioner pled guilty to the third-degree felony of escape and no other charges.  The OAG wishes to introduce evidence of the events underlying this conviction as proof that trial counsel would not have introduced evidence of good prison adjustment at Petitioner's 1992 resentencing trial.  However, the OAG has given notice of its intent to rely in part on evidence that is either irrelevant or hearsay.  While this Court has discretion, under the rules governing habeas cases, to expand the record with affidavits and other documentary evidence, if the "'issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive.'"  Advisory Committee Notes to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts.  At an evidentiary hearing on a habeas petition, the Federal Rules of Evidence apply.  *See* F.R. Evid. 1101(b); Brian R. Means, Federal Habeas Manual § 4.30 (May 2020 update); R. Hertz & J. Liebman, Federal Habeas Practice and Procedure § 21.2 (2014).  The Court should exclude some of the OAG's proffered evidence on evidentiary grounds.

### 1.      Newspaper articles

The OAG has served a collection of newspaper articles regarding the escape incident upon petitioner's counsel as a potential exhibit, and previously introduced the same collection of articles in support of its amicus brief.  ECF 171-3 at 12 to 171-4 at 3. The articles include double hearsay accounts of the events of the day from persons who are not witnesses at the hearing. Those accounts are unreliable and are inadmissible hearsay under F.R. Evid. 402.  *See, e.g.*, *Schudchardt v. President of the United States*, 802 F. App'x 69, 75 (3d Cir.), *cert. denied sub nom. Schuchardt v. Trump*, 141 S. Ct. 367 (2020) (newspaper articles proffered in support of standing to sue were inadmissible hearsay); *Whitley v. Allegheny Cty.* 2010 WL 892207, at *30

(W.D. Pa. Mar. 9, 2010), *aff'd*, 402 F. App'x 713 (3d Cir. 2010) (newspaper articles were

inadmissible hearsay on motion for summary judgment on prisoner's § 1983 claim).

### 2.      Evidence of Civil Litigation

The OAG intends to introduce Mr. Wharton's pro se § 1983 complaint alleging a

violation of his constitutional rights by officers for shooting him during the escape and beating

him after his capture, along with an opinion by the district court that dismissed the complaint.

The OAG attached the same documents to its amicus brief.  In the brief, it mentions the lawsuit

at the end of a footnote listing some of Mr. Wharton's prison grievances, without explaining how

the lawsuit is relevant to his prison conduct.  ECF 171 at 37 n.23; ECF 171-4, 129-131.  The

officers' actions following the escape have nothing to do with whether or how the escape

happened, and would not have been admissible at Petitioner's sentencing hearing to rebut any

evidence of prison adjustment. The sole purpose for the exhibits, apparently, is to paint Mr.

Wharton broadly as a complainer.  The evidence cannot satisfy the requirements of F.R. Evid.

401 (b) because it is not "of consequence in determining the action."  The Court should therefore

exclude it as irrelevant.

### 3.      Testimony of Carlos Vega

The OAG intends to offer the testimony of former Assistant District Attorney Carlos

Vega, who was present at the sentencing on robbery charges that preceded the 1986 attempted

escape.  The OAG has served a statement by Mr. Vega as a potential exhibit, and included that

same statement in in support of its amicus motion. ECF 171-3 at 10-11.   A portion of the

proposed testimony is inadmissible hearsay unsupported by any exception. Mr. Vega indicates

that he heard a commotion and gunshots after Petitioner had left the courtroom where he had

been sentenced for the robbery.  He then states that he "found out the defendant escaped and was

shot by the sheriff.  I believe he received at least one gunshot wound from the sheriff."  The

Court should limit Mr. Vega's testimony to what he personally observed, and not allow him to

describe what others told him for its truth.   F.R. Evid. 802.

Mr. Vega's written statement itself, of course, is inadmissible hearsay, and the Court

should not receive it in evidence if the OAG offers it.

**E.    This Court Should Reconsider Its Rejection of the Proposed Settlement.**

Finally, Petitioner respectfully requests that this Court reconsider its prior order rejecting

the DAO's proposed concession and settlement, which relied in part on a factual assumption that

has proven to be untrue.  As described above and in this Court's earlier opinion, a court may

grant reconsideration to correct a clear error of fact.  *See* Memorandum Opinion, ECF No. 170,

at 2 (quoting *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir.

1999)).

In its ruling rejecting the proposed settlement, the Court described the DAO's decision

to concede sentencing relief as both inexplicable and sudden, and inconsistent with that office's

actions to "oppose Wharton's death sentence since it was imposed decades ago."  ECF No. 187

at 1-2.  However, new information from the DAO's files shows that the DAO found a life

sentence to be an acceptable punishment for Mr. Wharton early in the litigation.

A letter found in the DAO's homicide file from Arnold Gordon, the former chief of the

homicide unit of the DAO, to trial counsel, William Cannon, shows that the DAO offered both

Petitioner and his co-defendant, Eric Mason, life sentences before trial if they both agreed to

plead guilty to first-degree murder.[3]  Presumably the offer took into account the nature of the crime, Petitioner's background, and the position of the victim's family.

Petitioner requests that the Court reconsider its rejection of the proposed settlement in light of this information that the DAO reached the conclusion before trial, as it did again in 2019, that life imprisonment would adequately serve the public interest.

---

[3] Petitioner's counsel viewed a copy of this letter in a review of the District Attorney's homicide file in early 2020, before the office closures necessitated by the current health crisis. Counsel are waiting for a copy of the letter to be produced.  The DAO, after allowing the file review, has experienced a delay in providing copies of documents requested by counsel because of a backlog created by the office closure. Counsel will supplement this pleading with that document when it becomes available.  Petitioner opted to proceed with a trial rather than accept a life sentence.

**CONCLUSION**

For the reasons above, Petitioner respectfully requests that the Court grant the

following relief:

1.  Reconsider its earlier order allowing the proposed testimony of the victims' family members;

2.  Preclude the introduction of the proffered newspaper articles;

3.  Preclude the introduction of the evidence of Petitioner's pro se civil litigation;

4.  Preclude the hearsay portions of the proposed testimony of Carlos Vega; and

5.  Reconsider its order rejecting the proposed settlement between the District Attorney and Petitioner, on the basis of new information.

Respectfully submitted,

 /s/ Elizabeth McHugh
ELIZABETH MCHUGH
Pa. Bar No. 70130
CLAUDIA VAN WYK
Pa. Bar No. 95130
Federal Community Defender Office
Eastern District of Pennsylvania
Capital Habeas Unit
The Curtis Center – Suite 545 West
601 Walnut Street
Philadelphia, PA 19106
(215) 928–0520

Counsel for Petitioner

Dated:      January 19, 2021
            Philadelphia, Pennsylvania

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing to be filed and served upon the following person by ECF:

MAX C. KAUFMAN
Supervisor Federal Litigation Unit
PAUL M. GEORGE
Assistant Supervisor, Law Division
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107-2499

JAMES P. BARKER
Chief Deputy Attorney General
Cari L. Maheler
Office of the Attorney General
Criminal Law Division
Appeals and Legal Services Section
16th Floor, Strawberry Square
Harrisburg, PA 17120

  /s/ Claudia Van Wyk
Claudia Van Wyk

DATE:  January 19, 2021

18