# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| ROBERT WHARTON, | : |  |
|  | : | CIVIL ACTION |
| Petitioner, | : |  |
|  | : |  |
| v. | : | No. 01-6049 |
|  | : |  |
| JAMIE SORBER, et al., | : | **CAPITAL CASE** |
|  | : |  |
| Respondents. | : |  |

_____

## PETITIONER'S RESPONSES TO
## ATTORNEY GENERAL'S PRE-HEARING MOTIONS

On November 18, 2020, this Court ordered the parties and the amicus in this matter to file simultaneous pre-hearing motions, if any, by January 18, 2021, and to file simultaneous responses by February 1, 2021. ECF 212. Petitioner Robert Wharton and amicus curiae, the Office of the Attorney General ("OAG"), filed their motions on January 18. ECF Nos. 213, 214. The OAG, while ostensibly participating in this matter only as an amicus curiae, has apparently fully embraced the role of an advocate for the prosecution. Mr. Wharton responds as follows to the OAG's motions.

## ARGUMENT

### I.     OAG's Motion To Clarify The Relevant Time Period (ECF No. 213, 4).

Mr. Wharton argues that the evidence of his attempted escape from sheriff's officers at the courthouse after his sentencing for an unrelated robbery is irrelevant to his claim that he made a "positive adjustment to prison," because it occurred before he entered the custody of the Department of Corrections as a death-sentenced inmate. Petitioner's Motion for Continuance and Reply, ECF No. 180, at 8. The OAG counters by pointing out that, over the course of litigating

this case in several courts, Mr. Wharton has framed it as a challenge trial counsel's failure to investigate and present evidence of his "positive adjustment to prison life during the seven years between his first and second penalty hearings," or in similar terms.  The OAG argues that the relevant time frame should begin with the first penalty hearing in 1985—not Mr. Wharton's arrival on death row in 1986—or perhaps even earlier, at the time of his arrest, on the theory that his conduct in pretrial and pre-sentencing detention was also relevant.  ECF No. 213, 5-9.

Mr. Wharton's argument is that trial counsel should have investigated and presented additional mitigating evidence that became available after his first penalty phase, namely evidence of his adjustment to death row.  The OAG's argument about the timeframe would more properly focus on whether evidence of the attempted escape would have been admissible rebuttal had counsel introduced evidence at the penalty trial of Mr. Wharton's death row adjustment.  The declaration of former Assistant District Attorney Carlos Vega (OAG Exhibit 30) demonstrates that at least one of the attorneys who worked on Mr. Wharton's cases knew about the escape. Nevertheless, attorneys from earlier administrations in the District Attorney's Office apparently never considered it proper rebuttal, since they never introduced any evidence about it during over twenty years of litigating Mr. Wharton's *Skipper* claim.  His pre-death row conduct is irrelevant to his adjustment there.  The Court should accordingly focus on his conduct after he arrived on death row.

Even if the Court rules that the evidence of escape is admissible rebuttal, moreover, Mr. Wharton pled guilty only to escape.  The OAG refers to unadjudicated details of the incident, many of them drawn from newspaper articles or other inadmissible hearsay contained in police reports and court paperwork. *See* ECF No. 213 at 9; *see also* Petitioner's Motion in Limine, ECF No. 214, at 9 (objecting to the newspaper articles as inadmissible hearsay). The District Attorney declined

prosecution on "M1 Implements of Escape and M2 Simple Assault," and the OAG has proffered no admissible, independent evidence to establish the factual basis for these nolle prossed charges. *See* OAG Exhibits 11 and 12.  The Court should accordingly, if it does not preclude the escape evidence altogether on relevance grounds, limit any rebuttal evidence to the escape itself.

II.     **OAG's Motion For Disclosure of Evidence and Records (ECF No. 213, 12)**

The OAG requests copies of documents provided to Harry Krop, Ph.D., in connection with his 1997 evaluation, the results of testing he performed or on which he relied, and the raw data supporting any such test results.  It also requests the identities of any persons who performed testing "on which Wharton intends to rely at the hearing," and information about the testing; the report and any notes of Dr. Krop's clinical interview in 1997; and "any record, not privileged or as to which the privilege has been waived" concerning the circumstances of his retention.  ECF No. 213, 15-16.

Mr. Wharton has not listed Dr. Krop as a witness and does not intend to rely on his opinion in support of his claim.  Dr. Blumberg reviewed Dr. Krop's 1997 declaration as part of his review of the history of Mr. Wharton's previous mental health evaluations, and may be examined at the hearing about whatever use he made of it.

III.    **OAG's Motion To Preclude and/or Limit Expert Testimony (ECF No. 213, 16)**

A.     **Expert Testimony Generally**

The OAG presents an extended argument that Mr. Wharton "defaulted" any claim that trial counsel was deficient for failing to investigate and present expert testimony to support the prison adjustment claim, only to reach the conclusion that the Commonwealth itself waived this default argument in state court.  ECF No. 213, 16-18.  The Court should disregard this unnecessary discussion, for two reasons besides the Commonwealth's waiver.

First, the claim received merits rulings that addressed the proffered expert testimony at every previous stage of review.  The Pennsylvania Supreme Court ruled on the merits of both prongs of the *Skipper/Strickland* claim, and acknowledged that the proffered prison adjustment evidence included a "psychological evaluation."  *See Commonwealth v. Wharton*, 811 A.2d 978, 988-89 (Pa. 2002).  This Court recognized that the state court had issued a merits ruling, and also addressed the merits, weighing Dr. Krop's declaration along with the other evidence in its opinion denying habeas relief.  *See Wharton v. Vaughn*, No 01-6049, 2012 WL 3535866, at \*56, \*58 (E.D. Pa. Aug. 16, 2012).  The Court of Appeals also treated the state court ruling as a merits determination, held that the state court unreasonably applied clearly established federal law, reviewed the claim de novo, and determined that it required an evidentiary hearing.  It addressed Dr. Krop's potential testimony in the course of its ruling.  *See Wharton v. Vaughn*, 722 F. App'x 268, 280-84 (3d Cir. 2018).  None of these courts treated the expert portion of the claim as defaulted, and all included consideration of the expert testimony proffer in their discussions.

Second, the OAG requests no relief on this ground.  It seeks several forms of specific relief for what it perceives as additional shortcomings in Mr. Wharton's proffered expert evidence, but does not seek to preclude the expert testimony wholesale.  ECF No. 213, 25, 27.

The Court should accordingly turn its attention to—and, for the reasons below, mostly deny—the OAG's requests respecting specific aspects of the proffered expert testimony.

### B.    Dr. Krop

Mr. Wharton has served two potential exhibits on the District Attorney and OAG in the form of declarations by Dr. Krop.  The first, proffered in support of his PCRA petition in 1997, recites that Dr. Krop reviewed records and test results, interviewed Mr. Wharton, and formed the opinion that he had made a positive prison adjustment.  This declaration was provided to Mr. Wharton's expert psychiatrist, Dr. Neil Blumberg, and served on the OAG and the District

Attorney on January 11, 2020.  The second, dated April 10, 2020, indicates that Dr. Krop could not locate any of his records on Mr. Wharton despite a diligent search, and that he has no independent recollection of the case or the grounds for his opinions in 1997.  *See* ECF No. 213 at 18 (quoting 2020 Krop declaration).  This declaration was served on the District Attorney and OAG on June 5, 2020.  The OAG asks the Court to preclude Mr. Wharton from presenting Dr. Krop's opinion as a basis for his claim, because of the non-preservation of his records and consequent inability, currently, to establish a foundation for his opinion.  ECF No. 213, 18-20. Mr. Wharton has not listed Dr. Krop as a witness and does not plan to rely on his opinion as an independent basis for relief.  He has been seeking a hearing on this matter since 1997, without success until the Third Circuit ordered one in 2018.  He bears no blame for Dr. Krop's inability to locate his records or remember his case after a lapse of over twenty years.

The OAG also reiterates its request for any records "relating to Dr. Krop's opinion."  ECF No. 213 at 19-20. Dr. Krop is not a witness and there is no obligation to provide the "facts or data" he considered.  F.R. Civ. P. 26(a)(2)(B)(ii).  In any event, the OAG has already received his declaration indicating that he cannot locate any records of his work on Mr. Wharton's case.

### C.    Dr. Blumberg

The OAG makes three requests respecting the testimony of psychiatrist Neil Blumberg. First, Dr. Blumberg lists Dr. Krop's 1997 declaration as one of the records he reviewed before formulating the provisional opinion set forth in his report.  He does not otherwise mention Dr. Krop or adopt Dr. Krop's opinions.[1]  The OAG argues that Dr. Krop's declaration should be

---

[1] Without citation, the OAG states that "Wharton's forensic psychiatrist, Neil Blumberg, M.D., indicated specifically that he agrees with the opinions set forth in Dr. Krop's Declaration."  ECF No. 213, 14.  Dr. Blumberg's report contains no statement specifically adopting Dr. Krop's opinion.  *See* Petitioner's Exhibit 13.

admissible only as a basis for Dr. Blumberg's opinion.  ECF No. 213, 20.  Mr. Wharton does not

offer Dr. Krop's declaration on any other ground.

The OAG also asks the Court to preclude Dr. Blumberg from offering any opinion

regarding records he reviewed that post-date the penalty trial.  ECF No. 213, 23.  Mr. Wharton has

no objection, but asks the Court to foreclose any argument by the OAG that Dr. Blumberg bases

his other opinions on incomplete information respecting Mr. Wharton's prison conduct.

Finally, the OAG asks the Court to preclude Dr. Blumberg from testifying about any

evaluation or test results generated from his planned evaluation sessions on February 1 and 5.  ECF

No. 213, 24.  On January 22, 2021, this Court granted Mr. Wharton's motion for an extension of

time to submit Dr. Blumberg's supplemental report following those evaluations.  ECF No. 216.

The Court should accordingly deny this request as moot.

### D.     Ms. Link

In its requests regarding prison expert Cynthia Link, the OAG takes an approach similar to

its approach to experts in general: it makes a series of broad attacks on the admissibility of her

testimony, but then does not request relevant relief.  The OAG argues that Mr. Wharton failed to

argue in state court or this Court that counsel was ineffective for failing to call an expert on

"corrections and reading prison records," that the Third Circuit in remanding allowed Mr. Wharton

to call a witness "similar to" Dr. Krop but not a "dissimilar" witness, and that the Third Circuit did

not give him leave to amend.  It argues that Ms. Link's testimony is "outside the scope of, and

therefore not relevant to, the claim presented[.]" ECF No. 213, 21-22.

The OAG misstates the claim before this Court, as Mr. Wharton originally framed it and

the Third Circuit described it in remanding the case: whether trial counsel unreasonably failed to

investigate and present evidence of his *prison adjustment*.  *See* ECF 213, 5 (quoting PCRA claim

focused on "positive adjustment to prison life"), 7 (quoting federal habeas claim focused on

"positive adjustment to prison"), 9 (quoting Third Circuit opinion remanding for determination on "positive adjustment to prison life").  It is hard to imagine witnesses more qualified to assist the Court in assessing that evidence than former wardens—like Ms. Link and also like the OAG's proffered expert, Mr. Beard—who have decades of experience in assessing prisoners' adjustment in the very prison system where Mr. Wharton has served his time, in order to make classification, disciplinary, and other administrative decisions about their conditions of confinement.  Ms. Link's expertise relates directly to the issues before the Court.

In any event, the OAG does not request that the Court preclude Ms. Link's testimony, but asks for narrow relief related to other perceived weaknesses.  ECF No. 213, 22-23, ¶¶ 89, 90, ECF No. 213, 25, ¶ (b).  The Court should therefore ignore the OAG's unnecessarily broad discussion of Ms. Link and instead address its requests for specific limitations on her testimony.

First, the OAG maintains that Ms. Link is "not qualified to offer testimony that is the province of a psychologist or psychiatrist" (ECF No. 213, 22), but does not point to any specific statements in Ms. Link's declaration that suggest that she will.  Ms. Link does not offer diagnoses or purport to detect psychiatric symptoms.  She offers her opinions about Mr. Wharton's conduct, based on her years of experience assessing the conduct of inmates under her supervision.  The Court should reject this objection.

The OAG also objects to what it views as Ms. Link's "speculation" about the "thought processes of other corrections officials" contained in her assessments of two close-in-time infractions for possession of contraband, both involving pieces of radio antenna.  ECF No. 213, 22.  Ms. Link notes that she is "struck by what appears to be a lack of alarm on the part of senior reviewing staff," gives her opinion that their responses to his infractions indicate that they did not see his possession of the contraband "as a serious threat to the security of the institution," and

notes that they "did not perceive an imminent danger of escape." Petitioner's Exhibit 11 (Link declaration) at 3-4. She cites specific evidence in the record that leads her to draw these conclusions, based on her experience. Her statements constitute qualified expert opinion testimony under F.R. Evid. 703, because she bases them on "facts or data in the case that the expert has been made aware of or personally observed." The OAG can test the strength of Ms. Link's conclusions on cross-examination. This Court should decline to conduct the requested preemptive surgery on her report. See *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 807 (3d Cir. 1997), as amended (Dec. 12, 1997) ("The analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination.").

Finally, the OAG objects to Ms. Link's proffered opinion questioning whether the pieces of antenna found in Mr. Wharton's cell "were in fact intended to be used as handcuff keys." ECF No. 213, 22-23. The OAG argues that the disciplinary hearing officer determined that one piece was a handcuff key, and that this determination of fact should bind this Court. ECF No. 213, 23. The decision cited in support of its position, *Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986), cannot carry the weight the OAG places on it. The Supreme Court recognized in *Elliott* that res judicata principles such as issue preclusion apply to administrative rulings, but only if "an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." 478 U.S. at 798. Issue preclusion does not apply to an issue that is not essential to the judgment or one that a party does not have an incentive to litigate. For example, in *Bobby v. Bies*, 556 U.S. 825, 836 (2009), a penalty phase jury found as a mitigating factor that the petitioner was intellectually disabled. Almost a decade later, Bies sought federal habeas relief in reliance on *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that the intellectually disabled were categorically ineligible for the death penalty. Bies argued

8

that the penalty phase jury's finding had an issue-preclusive effect, but the Court held that "determinations of [Bies's] mental capacity" "were not necessary to the ultimate imposition of the death penalty." *Id*. at 835-36.  "A determination ranks as necessary or essential only when the final outcome hinges on it."  *Id*. at 835 (citing Restatement (Second) of Judgments § 27, comment (h) (1980)); *see also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.5 (1979) (issue must be "necessary to the outcome of the first action"); 18 Wright, Miller, & Cooper, Federal Practice and Procedure § 4421, at 543 (2d ed. 2002).

Petitioner's research has not disclosed any precedent of the Supreme Court, the Third Circuit, or the Pennsylvania state courts determining whether *University of Tennessee* applies to prison disciplinary hearings.  Courts of Appeals that have considered the issue have reached diverging conclusions.  *See Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) (holding plaintiff not bound by resolution of factual issues against him at prison disciplinary hearing and questioning whether such hearings can ever have preclusive effect, given their "procedural laxity"); *see also Gwinn v. Awmiller*, 354 F.3d 1211, 1219 n.3 (10th Cir. 2004) (citing *Colon* and holding that hearing panel's conclusion would have no preclusive effect outside prison context "involving different procedural and evidentiary standards"); *cf. Johnson v. Finnan*, 467 F.3d 693, 694 (7th Cir. 2006) (facts found or assumed by prison disciplinary board not entitled to presumption of correctness under 28 U.S.C. § 2254(e); "Indiana does not offer judicial review of disciplinary decisions in prison, so the initial review comes in federal court—and, given the limits on § 2254(e), without deference to the disciplinary board's findings."); *but see Peterson v. Johnson*, 714 F.3d 905, 915-916 (6th Cir. 2013) (factual findings in prison disciplinary hearing had preclusive effect because, among other indicia of "full and fair" opportunity to litigate, inmates could appeal adverse determinations to state court).

Here, Mr. Wharton had no incentive to litigate whether the shorter piece of metal found in his cell was or was not a handcuff key because both pieces of antenna were contraband in any event.  Although the hearing officer found that it was, that finding was not necessary to the determination, and the outcome did not "hinge" on it.  OAG Exhibit 17 at 2, 3 (Disciplinary Hearing Report, May 17, 1989).  Pennsylvania, like Indiana, does not allow judicial review of prison disciplinary decisions. *See Dunbar v. Wetzel*, No. 75 M.D. 2019, 2020 WL 283899, at *3 (Pa. Commw. Ct. January 21, 2020); *Brady v. Moslak*, No. 482 M.D. 2019, 2020 WL 4361235, at *4 (Pa. Commw. Ct. July 30, 2020).  The hearing officer's determination should have no preclusive effect.

Ms. Link describes specific evidence in the record and her experience with similar contraband in support of her proffered opinion.  Petitioner's Exhibit 11 (Link declaration) at 3-4.  The Court should allow Ms. Link to offer, and explain the grounds for, her opinion that the officials who handled Mr. Wharton's disciplinary infraction did not display the alarm she would have expected if they thought he presented a serious escape risk.

In the alternative, the Court should defer ruling on any of the OAG's objections respecting Ms. Link until she testifies, when it can assess whether she has exceeded the proper bounds of opinion testimony or has engaged in unqualified speculation, instead of offering opinions grounded in the evidence and her experience.

## IV.    OAG's Objections To Mr. Wharton's Proffered Exhibits (ECF 213, 25).

The OAG objects to the introduction of any records post-dating the second penalty trial in 1997.  ECF No. 213, 25, ¶¶ 102-103, 106-107.  As stated above, Mr. Wharton has agreed not to present any opinion by Dr. Blumberg based on post-1997 records.  Because Dr. Blumberg reviewed them, however, Mr. Wharton submits that the post-1997 records should not be redacted

from the exhibits.  Dr. Blumberg can be examined at the hearing about whether the post-1997 records affected any of his opinions.

The OAG objects to the introduction of Mr. Wharton's Exhibit 5, which consists of discovery received from the Commonwealth on the eve of the hearing before this Court in February 2012.  ECF No. 213, 25-26, ¶¶ 104, 105.  Although the OAG concedes that the individual documents may be relevant, it objects that the date received is irrelevant.  The Court should disregard this objection to the identifying label placed on the documents.

The OAG objects to the use of Exhibit 10 (Dr. Krop's 1997 declaration) "apart from reliance thereon by other expert witnesses."  ECF No. 2013, 26.  Mr. Wharton does not intend to call Dr. Krop as a witness or introduce his declaration as an independent ground for relief.

The OAG objects to the introduction of Exhibits 23-30, which are court opinions, pleadings, and transcripts.  Mr. Wharton's counsel supplied them to Dr. Blumberg as background about the case, and identified them as exhibits because he reviewed them before forming his opinion.  In a similar manner, the OAG's psychiatrist, Dr. O'Brien, has reviewed transcripts, appellate opinions, a court opinion, and a brief filed by the OAG.  *See* Report of John O'Brien, OAG Exhibit 1, at 5; Report of John O'Brien, OAG Exhibit 3, at 1-2.  If either party offers any of the exhibits during the hearing, the Court can address any relevance or admissibility issues then. The Court should not sustain the OAG's objection at this time.

## CONCLUSION

### A.     OAG's Requests For Relief

For the reasons above, the Court should issue the following rulings on the OAG's requests for relief (ECF No. 213, 25):

1.     The Court should consider the declarations executed by Harry Krop, Ph.D., to the extent that another expert relied on them.

2.     The Court should deny the proposed limitations on the opinions of expert Cynthia Link or, alternatively, defer ruling on the OAG's requests until she testifies.

3.     It should enter an order precluding any argument that Dr. Blumberg's review of Mr. Wharton's prison records is incomplete because it stops in 1992, the date of the penalty retrial.

4.     The Court, having granted Mr. Wharton's motion for an extension of time to produce Dr. Blumberg's supplemental report (ECF No. 216), should deny as moot the OAG's motion to preclude him from testifying based on testing conducted or a report issued after January 18, 2021.

### B.     OAG's Objections To Petitioner's Exhibits

For the reasons above, the Court should issue the following rulings on the OAG's objections to petitioner's exhibits (ECF 213, 27):

1.     The Court should deny the objection to the portions of Mr. Wharton's exhibits referring to post-1997 conduct, subject to cross-examination at the hearing.

2.     The Court should deny the objection to the identifying label placed on Mr. Wharton's Exhibit 5, the discovery received in February 2012.

3.     Mr. Wharton has disclaimed any substantive use of Dr. Krop's 1997 declaration. The OAG's request therefore should be denied as moot.

4.      The Court should reject the OAG's objection to opinions and pleadings supplied to

Dr. Blumberg.

Respectfully submitted,

/s/ Elizabeth McHugh
ELIZABETH MCHUGH
Pa. Bar No. 70130
CLAUDIA VAN WYK
Pa. Bar No. 95130
Federal Community Defender Office
Eastern District of Pennsylvania
Capital Habeas Unit
The Curtis – Suite 545 West
601 Walnut Street
Philadelphia, PA 19106
(215) 928–0520

Counsel for Petitioner

Dated:       February 1, 2021
             Philadelphia, Pennsylvania

# CERTIFICATE OF SERVICE

I certify that on this date I caused a copy of the foregoing to be filed and served upon the

following persons by ECF:

MAX C. KAUFMAN
Supervisor Federal Litigation Unit
PAUL M. GEORGE
Assistant Supervisor, Law Division
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107-2499

JAMES P. BARKER
Chief Deputy Attorney General
CARI L. MAHLER
Office of the Attorney General
Criminal Law Division
Appeals and Legal Services Section
16th Floor, Strawberry Square
Harrisburg, PA 17120

/s/ Claudia Van Wyk
Claudia Van Wyk

DATE:  February 1, 2021