# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT WHARTON | : | CIVIL ACTION |
| | : | |
| Petitioner | : | No. 2:01-cv-06049-MSG |
| | : | |
| v. | : | CAPITAL CASE |
| | : | |
| JAMIE SORBER, Superintendent, | : | |
| Respondent | : | |

### RESPONSE OF *AMICUS CURIAE* PENNSYLVANIA OFFICE OF ATTORNEY GENERAL TO PETITIONER'S MOTIONS IN LIMINE

AND NOW, comes *Amicus Curiae*, the Pennsylvania Office of Attorney General (OAG), through its counsel, James P. Barker, Chief Deputy Attorney General, and Cari Mahler, Senior Deputy Attorney General, who file this Response of *Amicus Curiae* Pennsylvania Office of Attorney General to Petitioner's Motions in Limine and, in support thereof, represent as follows:

## I. BACKGROUND

Before the Court is a Petition for Writ of Habeas Corpus filed by Robert Wharton, an inmate at the Pennsylvania State Correctional Institution at Phoenix. Wharton was sentenced to death for murdering Bradley and Ferne Hart in 1985. After the first sentencing verdict was overturned by the state Supreme Court, a

second jury also returned a verdict of death. The state courts affirmed the judgment of sentence and this Court initially denied habeas corpus relief. However, the Court of Appeals for the Third Circuit remanded the matter for an evidentiary hearing on a single issue: whether counsel provided ineffective assistance at Wharton's second sentencing hearing by failing to investigate and present evidence of Wharton's alleged "positive adjustment" to prison life. The Pennsylvania Office of Attorney General (OAG) is participating as *amicus curiae* after the Court issued an Order, dated May 7, 2019, requesting that OAG file a brief setting forth its position on whether Wharton is entitled to relief.

On January 18, 2021, Wharton filed Motions in Limine relating to the hearing, which is scheduled for four dates in February and March 2021. OAG hereby responds to those Motions.

## II. MOTION TO EXCLUDE TESTIMONY OF VICTIMS' FAMILY MEMBERS

*(A) Relevance*

Wharton first moves to exclude testimony from the victims' family members under Rule 401 of the Federal Rules of Evidence. Actually, Rule 401 merely defines relevant evidence:

> Evidence is relevant if:
>   **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and
>   **(b)** the fact is of consequence in determining the action.

2

Rule 401. The Rule governing the admission of relevant evidence provides:

> Relevant evidence is admissible unless any of the following provides otherwise:
> - the United States Constitution;
> - a federal statute;
> - these rules; or
> - other rules prescribed by the Supreme Court.
>
> Irrelevant evidence is not admissible.

Fed. R. Evid. 402. Wharton's motion properly is brought under Rule 402.

It also should be noted that OAG proffered statements not only from family members of Bradley and Ferne Hart, but also from Lisa Hart-Newman, the daughter of Bradley and Ferne. She was present on the night of the murders and was left by Wharton and his coconspirator alone in the unheated home. Lisa Hart-Newman is a direct victim of Wharton's crimes.

Regardless, OAG's proffer of the statements of the family members related to a statement contained in the Notice of Concession filed by the Philadelphia District Attorney's Office. That Notice indicated that the District Attorney's Office had communicated with the family regarding the proposed resolution between the parties. The family members indicated that such was not the case. The only family member contacted by the District Attorney's Office, Dr. Tony Hart, indicated that he did not fully understand the circumstances surrounding the resolution. No other family member was contacted, including Lisa Hart-Newman.

OAG agrees that the statements and views of the surviving members of the Hart and Allen families are not relevant to the question of whether trial counsel was ineffective for failing to investigate and present evidence of Wharton's purported "positive adjustment." Their views became relevant when the parties sought to have the Court accept a resolution of Wharton's claim based in part on communications with the family. Their testimony relates to the proposed resolution as well as to the Court's express concern regarding whether there has been candor to the Court in this context.

It should be noted that OAG merely summarized and presented the statements of the family members but made no argument thereon. This action comported with OAG's duties as attorneys for the Commonwealth and as attorneys with a duty of candor to the Court. *See* 71 P.S. §§732-204(c) (Attorney General represents the Commonwealth in civil matters), 732-206(a) (Attorney General is the chief law enforcement officer of the Commonwealth); Pa. R. Prof. Cond. 3.3 (outlining lawyer's duty of candor toward the tribunal); Local Rule of Civil Procedure 83.6, Rule IV.B (adopting Pennsylvania Rules of Professional Conduct, with enumerated exceptions, as Rules of this Court). As outlined in OAG's original Brief as *Amicus Curiae* and in this Court's Memorandum Opinion of February 12, 2020 (at 14-15), victims (defined as including the family members of murder victims) have a right to be heard on, *inter alia*, matters related to sentencing. This

hearing plainly relates to sentencing. While the Court may not consider the family members' statements for purposes of ruling on Wharton's claim, it certainly may consider such statements for purposes of determining whether it should accept the parties' proposed resolution.

Wharton himself again makes this point relevant by again requesting reconsideration of the Court's rejection of the proposed "settlement." Motions in Limine at 15-16. *See also* June 12, 2019, Wharton's Motion to Modify or Reconsider the Court's May 7, 2019, Order (filed June 12, 2019, seeking, *inter alia*, approval of settlement). Because Wharton, like the District Attorney's Office, introduces the issue of whether, based on communications with the family members, the Court should accept the proposed resolution, those communications are relevant.

With respect to this Court purportedly being prejudiced by these statements, the Supreme Court of the United States has observed:

> In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions. It is equally routine for them to instruct juries that no adverse inference may be drawn from a defendant's failure to testify; surely we must presume that they follow their own instructions when they are acting as factfinders.

*Harris v. Rivera*, 454 U.S. 339, 346 (1981). Similarly, trial judges routinely preside over hearings and bench trials involving multiple offenses, claims, and/or issues. There is no reason to believe that they are incapable of distinguishing evidence

5

relevant to separate offenses, claims, or issues and considering the evidence only as to the issue as to which it is relevant. The introduction of evidence relating to the communications between the family members and the District Attorney's Office hardly renders this Court incapable of considering that evidence separate from the evidence relevant to Wharton's ineffectiveness claim.

Wharton also equates the proffered testimony of the family members with "victim impact evidence" and contends that it is inadmissible for that reason. Actually, Wharton first was sentenced over thirty-five years ago and again over twenty-eight years ago. Plainly, the testimony is not "victim impact evidence." Rather, it constitutes the feelings of the family members about the proposed resolution and explanations as to why it was not proffered sooner. The testimony includes a discussion of the sentence *as it currently exists* simply because that is the nature of the inquiry: their feelings about changing that sentence. Wharton's discussion of the admissibility of victim impact evidence, Motions in Limine at 5-7, simply misses this fundamental point.

Finally as to this point, Wharton claims that OAG is trying to "transform this proceeding into a dispute with the [District Attorney's Office] over its victim outreach policies." Motions in Limine at 7. Again, OAG did not raise the issue of communication with the family members. The District Attorney's Office did so in its Notice of Concession, Wharton has continued to keep the issue open with his

motions for reconsideration, and the Court has indicated that it wishes to hear from the family members to address a potential issue of candor. Most importantly, as addressed further below, federal law and state law require that the views of the family members be taken into consideration by the attorneys for the Commonwealth and federal law requires their views be considered by the Court. Contrary to Wharton's assertions, OAG did not raise this issue; the parties did so, and it is relevant as a matter of law.

*(B) Crime Victims' Rights Act*

Wharton next claims that the family members' views are not admissible under the federal Crime Victims' Rights Act, 18 U.S.C. § 3771, because the hearing is not a sentencing hearing. Motions in Limine at 7-10. Actually, the plain language of the statute requires that the family members be heard.

The most pertinent provision of § 3771 reads: "A crime victim has the following rights: … The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." Sec. 3771(a)(4). The Act specifies that this provision applies to habeas corpus proceedings arising out of a state conviction. Sec. 3771(b)(2)(A).

Despite the straightforward language of a statute that specifies that a crime victim has the right to be heard at a hearing involving sentencing, Wharton resorts to statutory construction, including reading a part of the legislative history of the

7

statute. Motions in Limine at 8-9. The Supreme Court has addressed this manner of determining a statute's meaning:

> We cannot approve such a casual disregard of the rules of statutory interpretation. In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407, 131 S.Ct. 1885, 179 L.Ed.2d 825 (2011). Where, as here, that examination yields a clear answer, judges must stop. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). Even those of us who sometimes consult legislative history will never allow it to be used to "muddy" the meaning of "clear statutory language." *Milner*, 562 U.S. at 572, 131 S.Ct. 1259. …

*Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). Wharton seeks to vacate his sentence; the proceeding therefore plainly "involves … sentencing" and the Court need go no further.

Even if, for some reason, an ambiguity existed in this language, Wharton's argument leads to an absurd reading of the statute. He contends that only actual sentencing proceedings are encompassed within § 3771(a)(4). As noted, however, § 3771(b)(2)(A) provides that § 3771(a)(4) applies to habeas corpus proceedings. If it were correct that § 3771(a)(4) only applied to actual sentencing proceedings, that is, proceedings to determine the sentence, then § 3771(a)(4) could *never* apply to habeas corpus proceedings arising from a state conviction because federal courts *never* sentence state prisoners in habeas corpus proceedings. The same is true of plea proceedings and parole proceedings, also specified in § 3771(b)(2)(A). The

only proceeding to which § 3771(b)(2)(A) might apply is a bail hearing after the conditional grant of habeas corpus relief. Wharton's reading makes no sense.

Simply put, the language of the statute indicates that a victim has the right to be heard at a proceeding involving sentencing, and this proceeding involves sentencing. There is no ambiguity and no other reasonable way to read the statute.

*(C) "Radical Transformation" of the Claim*

Wharton next objects to the family members testifying because OAG purportedly is attempting a "radical transformation" of the case, citing *United States v. Sineng-Smith*, 140 S. Ct. 1575 (2020). This case is nothing like *Sineng-Smith* and OAG has not "radically transformed" the case.

*Sineng-Smith* involved a defendant convicted of encouraging or inducing aliens to come to, enter, or reside in the United States, knowingly or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law under 8 U.S.C. § 1324(a)(1)(A)(iv), with an enhanced penalty because the crimes were committed for the purpose of commercial advantage or private financial gain under § 1324(a)(1)(B)(i). *Sineng-Smith* at 1577. The defendant argued before both the district court and the Ninth Circuit, both in her brief and at oral argument, that (1) the statute did not cover her conduct and (2) the statutes violated the Petition and Free Speech Clauses of the First Amendment. *Id.* at 1578. *See also United States v. Sineng-Smith*, 910 F.3d 461, 469 (9th Cir. 2018)

(reversed). The Ninth Circuit then issued an order inviting named *amici curiae* to file briefs on three new issues framed by the Court: whether the statute is overbroad; whether the statute is void for vagueness; and whether there is an implicit *mens rea* element of the statute. 140 S. Ct. at 1578, 1580-1581; 910 F.3d at 469. While the parties were permitted to file supplemental briefs, at oral argument, *amici* were allocated twice the time permitted to counsel for the defendant. 140 S. Ct. at 1581. The Ninth Circuit panel later ruled in favor of the defendant based on an issue briefed by the *amici*, the overbreadth issue. *Id*. at 1578, 1581.

The Supreme Court reversed, finding that the Ninth Circuit panel's actions violated the party presentation principle, which allows the parties to shape their case before a court that is presumed to be passive. *Id*. at 1579. The Court reasoned:

> No extraordinary circumstances justified the panel's takeover of the appeal. Sineng-Smith herself had raised a vagueness argument and First Amendment arguments homing in on her own conduct, not that of others. Electing not to address the party-presented controversy, the panel projected that § 1324(a)(1)(A)(iv) might cover a wide swath of protected speech, including political advocacy, legal advice, even a grandmother's plea to her alien grandchild to remain in the United States. 910 F.3d at 483–484. Nevermind that Sineng-Smith's counsel had presented a contrary theory of the case in the District Court, and that this Court has repeatedly warned that "invalidation for [First Amendment] overbreadth is 'strong medicine' that is not to be 'casually employed.'" *United States v. Williams*, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (quoting *Los Angeles Police*

> *Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32, 39, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999)).
>
> As earlier observed, see *supra,* at 1579, a court is not hidebound by the precise arguments of counsel, but the Ninth Circuit's radical transformation of this case goes well beyond the pale.

*Id.* at 1581-1582.

Unlike *Sineng-Smith*, the primary issue before this Court remains the same that was presented to the Court in Wharton's petition for writ of habeas corpus: whether trial counsel was ineffective for failing to investigate and present to the second sentencing jury evidence of Wharton's purported "positive adjustment" to prison life as a mitigating circumstance. That issue remains before the Court and is the focus of the scheduled hearing. Nothing that the family members say will change the nature of that issue as it is considered by the Court.

Apart from the primary legal and factual issues to be resolved, the Court has been presented with a separate, albeit related, issue. In seeking to resolve the case rather than participate in the hearing directed by the Third Circuit, the District Attorney's Office, as attorneys for the Commonwealth, made a representation to the Court about communications with the victims' family members. Wharton has twice asked this Court to reconsider its decision to reject the proposed resolution, relying mostly on the District Attorney's willingness to do so. Thus, it is the *parties* that have framed this issue for the Court, not OAG. The issue existed

11

before OAG ever entered the case as *amicus curiae* and even before the Court invited OAG to do so.

Simply stated, *Sineng-Smith* is inapposite because there has been no change in the primary issue before the Court, because the *amicus curiae* did not radically alter anything that was not already before the Court, and because, to the extent that there has been any change (actually, there has been an addition, not a change) in the nature of the case, it was the parties who framed the case.

### *(D) Motion for Reconsideration*

Wharton moves for reconsideration of the Court's decision to allow the family members to testify based on "several errors of law." Motions in Limine at 11. He first relies on the purported errors he raised previously, *id.* at 11-12, which are not errors, as discussed above. He also claims that the District Attorney's concession[1] is no longer "at issue." Motions in Limine at 12. Again, not only is the Court concerned with the accuracy of what was presented, but Wharton has again moved for reconsideration of the proposed "settlement," *id.* at 15, and so the matter is still "at issue."

### III. MOTION TO EXCLUDE EXHIBITS PROFFERED BY OAG

### *(A) Newspaper Articles*

---

[1] Despite the title of its filing, the District Attorney's Office did not actually concede the issue. It simply stated that Wharton's claim was "not without merit" and so it chose to resolve the claim by allowing the Court to issue a conditional writ, allowing a state court to enter a new sentence.

12

Wharton moves to exclude specified exhibits proffered by OAG, beginning with newspaper articles relating the events of Wharton's escape from the custody of deputy sheriffs at City Hall following his sentencing in another case. According to Wharton, the newspaper articles are "double hearsay" inadmissible under Rule 402. Motions in Limine at 13.

To begin, the Federal Rule of Evidence governing the exclusion of hearsay evidence is Rule 802, not Rule 402. The Rule provides:

> Hearsay is not admissible unless any of the following provides otherwise:
> - a federal statute;
> - these rules; or
> - other rules prescribed by the Supreme Court.

Fed. R. Evid. 802. Hearsay is defined in Rule 801:

> **(c) Hearsay.** "Hearsay" means a statement that:
>   **(1)** the declarant does not make while testifying at the current trial or hearing; and
>   **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement.

Fed. R. Evid. 801(c).

There are two problems with Wharton's argument. First, the newspaper articles are not offered for the truth of the matters asserted therein. They are offered to show the evidence that was available to the prosecution if Wharton had tried to present evidence of his purported "positive adjustment" to the second jury. Any reasonable prosecutor would have responded by showing that Wharton did not

in fact make such an adjustment, including presenting the testimony of the witnesses identified in the stories. Thus, the statements are not hearsay.

Moreover, the articles qualify as "ancient documents," as the newspaper articles were written and published before January 1, 1998. *See* Fed. R. Evid. 803(16); Rule 803, Note to Paragraph 16 (noting that 58-year-old newspaper story had been properly admitted, citing *Dallas County v. Commercial Union Assurance Co.*, 286 F.2d 388 (5th Cir. 1961)); *Langbord v. U.S. Dept. of Treasury*, 2011 WL 2623315, *16-*17 (E.D. Pa. July 5, 2011) (newspaper articles more than 20 years old are admissible, including over hearsay-within-hearsay objection). Thus, even if the Court finds that the articles are hearsay, they are admissible under an exception to the hearsay rule.

*(B) Civil Litigation*

Wharton objects to the evidence of Wharton's civil litigation proffered by OAG. He claims that this evidence is not relevant.

Wharton misapprehends the basis for OAG offering the civil complaint filed by Wharton and the order dismissing it. In his complaint, Wharton lies about the events of his escape, as he did earlier when interviewed upon entering the Department of Corrections. Wharton claimed in his civil complaint and during his interview that the deputy sheriffs had left him unattended and he simply started walking away. In his interview, he claimed never to have gotten out of the

building. The police reports and criminal complaint, along with Wharton's guilty plea based on facts recited in the criminal complaint, indicate that Wharton assaulted a deputy sheriff and ran to a stairwell. Despite being shot twice, in a buttock and a thigh, Wharton continued to run and made it out to the street before collapsing and being recaptured. These documents show that Wharton continued to misrepresent those events well into the time of incarceration and demonstrate his unwillingness to cooperate with authority. Moreover, despite his complaint having been dismissed in part because shooting an escaping capital prisoner is not excessive force, Wharton made the same claim in an amended complaint, again demonstrating his unwillingness to submit to authority, this time a court. This evidence is directly relevant.

*(C) Testimony of Carlos Vega*

Wharton objects to the proffered testimony of Carlos Vega as set forth in the statement he provided to OAG. OAG agrees that Vega cannot testify to events that he did not witness himself.

### IV. MOTION TO RECONSIDER

As noted above, Wharton again moves for reconsideration of the proposed settlement, claiming to have "new information." The information is not new and is not a proper basis for reconsideration in any event.

According to Wharton, his counsel conducted a review of the "homicide file" of the District Attorney's Office in early 2020. In that file, counsel found a letter from a former chief of the District Attorney's Homicide Unit offering life sentences to Wharton and his codefendant if they both agreed to plead guilty to murder of the first degree before trial. Wharton does not explain why he waited a year to bring this "new information" to the Court's attention.

First, it is unclear why defense counsel would be permitted to "review" a file of the District Attorney's Office as, apart from pretrial discovery and without a court order, such an action is illegal. *See* Pennsylvania Criminal History Record Information Act, 18 Pa.C.S. §§8101-9183 (governing, *inter alia*, disclosure of criminal history record information, including prohibition of disclosure to any person not a member of a criminal justice agency under § 9106). While the letter does not constitute criminal history record information, the District Attorney's file would be replete with such documentation and no non-law enforcement entity should be permitted to examine its contents.

More importantly for present purposes, Wharton indicates that the letter was from the former Chief of Homicide to counsel for Wharton and codefendant Eric Mason. The information is not new and certainly was available to Wharton decades ago. Moreover, Wharton and Mason plainly rejected the offer, since both went to trial. The reason such an offer is made to capital defendants is to spare the family

members of victims the decades of litigation that ensue after a death sentence and the resulting trauma of reliving the loss of their loved ones every time a new petition or appeal is filed, or another hearing is conducted. Wharton's cynical misuse of an offer he rejected exemplifies what the survivors of murder victims experience endlessly.

The letter is not new information and is not a basis for reconsidering the Court's prior Order.

WHEREFORE, *Amicus Curiae* the Pennsylvania Office of Attorney General respectfully requests that the Court enter an Order granting Wharton's Motions in Limine in part and directing that the testimony of Carlos Vega be limited to those events he personally witnessed, and otherwise denying the Motions in Limine.

By:  */s/ James P. Barker*          */s/ Cari Mahler*
  James P. Barker                    Cari Mahler
  Chief Deputy Attorney General      Senior Deputy Attorney General
  Office of Attorney General         Office of Attorney General
  Criminal Law Division              Criminal Law Division
  Appeals and Legal Services Section Appeals and Legal Services Section
  16th Floor—Strawberry Square       1000 Madison Avenue, Suite 310
  Harrisburg, PA 17120               Norristown, PA 19403
  (717) 787-6348                     (610) 631-6552
  jbarker@attorneygeneral.gov        cmahler@attorneygeneral.gov

Date:  February 1, 2021

# CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused the foregoing Response of *Amicus Curiae* Pennsylvania Office of Attorney General to Petitioner's Motions in Limine to be served on the following persons via ECF or by first class mail:

<u>Via ECF and/or First Class Mail</u>

| | |
|---|---|
| Victor J. Abreu, Esquire | Nancy Winkelman, Esquire |
| Claudia Van Wyk, Esquire | Paul M. George, Esquire |
| Elizabeth McHugh, Esquire | District Attorney's Office |
| Federal Community Defender Office | 3 South Penn Square |
| Capital Habeas Corpus Unit | Philadelphia, PA 19107 |
| 601 Walnut Street, Suite 545 West | (Counsel for Respondent) |
| Philadelphia, PA 19106 | |
| (Counsel for Petitioner) | |

By: */s/ James P. Barker*         */s/ Cari Mahler*

| | |
|---|---|
| James P. Barker | Cari Mahler |
| Chief Deputy Attorney General | Senior Deputy Attorney General |
| Office of Attorney General | Office of Attorney General |
| Criminal Law Division | Criminal Law Division |
| Appeals and Legal Services Section | Appeals and Legal Services Section |
| 16th Floor—Strawberry Square | 1000 Madison Avenue, Suite 310 |
| Harrisburg, PA 17120 | Norristown, PA 19403 |
| (717) 787-6348 | (610) 631-6552 |
| jbarker@attorneygeneral.gov | cmahler@attorneygeneral.gov |

Date: February 1, 2021