# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT WHARTON, | : CIVIL ACTION |
| Petitioner, | : No. 01-6049 |
| v. | : **CAPITAL CASE** |
| DONALD T. VAUGHN, et al., | : |
| Respondents. | : |

## OBJECTION TO ATTORNEY GENERAL'S *DE FACTO* INTERVENTION AS A PARTY

This is a capital case based on a 1984 murder in Philadelphia that the Philadelphia District Attorney's Office (DAO) has prosecuted for over thirty-five years. After one day of evidentiary hearings in this case (February 25, 2021), one thing has become perfectly clear: what began as a request for the views of an amicus has now morphed into the Pennsylvania Attorney General (AG) becoming a full-blown party to the litigation, in fact superseding the DAO's prosecution without legal authority to do so.

The DAO did not object to the Court's request for the AG's amicus participation because the Court has the authority to seek briefing from an amicus to

assist with legal questions. What the DAO did not anticipate was the extent to which the AG ultimately would participate. The AG's role has now expanded to the point that it is impermissibly acting as the *de facto* prosecutor in this matter. Pennsylvania law does not allow the AG to supersede the county's elected district attorney in these circumstances. Although the DAO's objections to the AG's participation should already be obvious given DAO's and AG's difference on the merits of whether habeas relief is appropriate, the DAO respectfully objects here to make its position explicit as a matter of record.

**Facts and Procedural History**

In 2018, the Third Circuit ordered that this Court conduct an evidentiary hearing on a single habeas claim: that petitioner's counsel was ineffective for failing to present prison adjustment evidence at the death penalty phase of his trial. After a thorough review, the DAO determined that penalty phase relief was appropriate, and exercised its prosecutorial discretion not to continue to seek the death penalty. Thus, it filed a notice with the Court conceding that petitioner was entitled to habeas relief on his penalty phase claim, and stating that the DAO would not seek the death penalty in state court. Notice of Concession dated Feb. 6, 2019, Dkt. No. 155 at 2.

The Court declined to grant habeas relief based on the DAO's concession, stating that it would conduct an independent evaluation of the merits and permitted the parties to submit additional briefing. Order dated Mar. 4, 2019, Dkt. No. 161

at 1. After the parties submitted their briefs, the Court determined that "the presentation of an additional perspective by an amicus curiae, on whether the District Attorney's concession is proper, would be helpful," noting that the parties were not adverse as to whether habeas relief should be granted. Order Dated May 7, 2019, Dkt. No. 165 at 3. The Court appointed the AG to submit an amicus brief "on the issue of whether relief should be granted on Petitioner's remaining habeas claim based on the current record or whether the record before me should be expanded." *Id.* at 4.

In its amicus brief, the AG did not stop at evaluating the record and offering its view about whether the existing record was sufficient for the Court to determine whether habeas relief was appropriate. It instead conducted its own in-depth factual investigation into petitioner's substantive claim, attached numerous exhibits to its amicus brief, and argued the ultimate question of whether habeas relief was appropriate. Brief of Attorney General dated Jul. 22, 2019, Dkt. No. 171 at 12-21. It concluded, contrary to the considered determination of the DAO, that it was not. *Id*.

The Court then scheduled four days of evidentiary hearings as to whether habeas relief is appropriate. Order dated Nov. 18, 2020, Dkt. No. 212. The Court asked petitioner whether the Court could or should (1) incorporate the exhibits to the AG's brief into the record, and (2) allow the AG to participate in the evidentiary

hearing. Order dated July 30, 2019, Dkt. No. 174 at 1. Petitioner argued that the AG should not be allowed to participate in the hearing. Over these objections, the Court ruled that the AG could call and cross-examine witnesses at the evidentiary hearing. Memorandum Opinion dated Feb. 12, 2020, Dkt. No. 187 at 9. On November 18, 2020, the Court ordered the parties to serve witness lists by January 11, 2021. In response to that order, the AG served a list of numerous witnesses, and stated its intent to introduce additional voluminous materials into the record.

On the first day of these hearings (February 25, 2021), the AG adopted a highly aggressive, partisan stance, questioning the defense expert about such topics as defendant's elementary school truancy and seeking to exclude evidence that defendant's adjustment, over the intervening decades, has in fact been positive and aggression free. The AG's aggressive advocacy on behalf of the death penalty only increased during its tendentious, still incomplete cross-examination of trial counsel. Given the startling extent and quality of the AG's participation in these hearings, and the absence of the objectivity typically expected from a Friend of the Court, the DAO hereby objects to the AG's participation, which has now clearly been shown to be that of a *de facto* prosecutor.

## ARGUMENT

What began as an invitation to the AG to act in a limited capacity as an amicus has morphed into the AG acting as a full-fledged adversarial party in this matter in all but name. This is inappropriate because its effect is to override the prosecutorial discretion of the DAO—the elected chief law enforcement officer in Philadelphia. Despite Pennsylvania's clear statutory prohibition on the AG prosecuting cases under the DAO's jurisdiction, the Court has permitted the AG to do just that. In fact, during the first hearing day, the AG behaved in every respect as an aggressive party advocate. Based on what transpired on the first hearing day, the DAO anticipates that the AG will continue to develop a factual record and argue for a death sentence on a case that is under the DAO's exclusive jurisdiction. This is improper.

Under Pennsylvania's Commonwealth Attorneys Act, each county's district attorney is the chief law enforcement officer in the county. The Attorney General may supersede the district attorney only in very limited circumstances. 71 P.S. § 732-206(a); ("The Attorney General shall be the chief law enforcement officer of the Commonwealth; the district attorney shall be the chief law enforcement officer for the county in which he is elected."); *Carter v. City of Philadelphia*, 181 F.3d 339, 353 (3d Cir. 1999) (the Commonwealth Attorneys Act created a "consciously and deliberately designed autonomous role for its district attorneys," such that "in Pennsylvania, unlike many other jurisdictions, the AG has no inherent authority to

5

supersede a district attorney's decisions generally"); *Commonwealth v. Carsia*, 517 A.2d 956, 957 (Pa. 1986) (the Pennsylvania AG does not have any inherent powers beyond those explicitly described in the Commonwealth Attorneys Act); *Commonwealth v. Mulholland*, 702 A.2d 1027, 1037 (Pa. 1997) ("[T]he attorney general may intervene in criminal prosecutions only in accordance with provisions enumerated by the legislature."). The legislature has set forth four circumstances under which the AG may supersede a county district attorney: (1) by request of the DA; (2) by request of the AG if the AG establishes by a preponderance of the evidence that the DA has failed to prosecute and that failure is an abuse of discretion; (3) by request of the president judge in the jurisdiction, or (4) in certain appeals "as provided by law or rules of court." 72 P.S. § 732-205; *Carter*, 181 F.3d at 353. None of those circumstances is present here.[1]

Both the Court and the AG have repeatedly claimed that the AG is acting only as an amicus, not as a party or a prosecutor. Brief for AG Dated Jun. 26, 2019, Dkt. No. 169 at 4, 8-10; Order dated Jun. 15, 2019, Dkt. No. 170 at 2; Order dated Feb.

---

[1] The AG has suggested (while insisting that it is *not* exercising prosecutorial functions) that the Commonwealth Attorneys Act does not govern here because a habeas petition is a civil action, not part of a criminal prosecution. AG Brief dated June 16, 2019, Dkt. No. 169 at 10. This argument ignores the clear practical import of these proceedings. A habeas petition challenges a criminal sentence—here, a death sentence that the DAO initially secured and has shepherded through all of its post-conviction proceedings. The DAO's sole authority to represent the Commonwealth in this proceeding stems from the Pennsylvania Constitution and Commonwealth Attorneys Act.

6

12, 2020, Dkt. No. 187 at 12-14.  But labelling the AG as an amicus does not make it so.  The AG, with the Court's permission, has far exceeded the role of a typical amicus and crossed the line into acting as a prosecutor.  While such advocacy by an amicus is appropriate in some circumstances, it is impermissible here because it has the effect of allowing one prosecutor's office to improperly usurp the statutorily-prescribed role of another.

Traditionally, an amicus is "'an impartial individual who suggests the interpretation and status of the law, gives information concerning it, and whose function is to advise in order that justice may be done, rather than to advocate a point of view so that a cause may be won by one party or another.'"  *Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 554 (E.D. Pa. 1999).  While courts have broad discretion to appoint amici to help them make fully informed decisions, "'an amicus who argues facts should rarely be welcomed[.]'"  *Linker v. Custom-Bilt Machinery Inc.*, 594 F. Supp. 894, 897-98 (E.D. Pa. 1984) (*quoting Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970)).

Contrary to this traditional conception of an amicus, the AG has done extensive factual investigation, has added facts to the record, has used its own investigation to argue the merits of whether petitioner is entitled to habeas relief, and after one day of hearing has confirmed that its role will be adversarial: in short, that it is the *de facto* prosecutor.  Pennsylvania law proscribes such a role for the AG in

8

Philadelphia cases. Therefore, the DAO objects to the AG calling witnesses and introducing evidence in the upcoming evidentiary hearings.

8

## CONCLUSION

For the reasons stated above, the DAO respectfully requests that the AG not be permitted to expand the record or call witnesses at the scheduled evidentiary hearings.

Respectfully submitted,

Dated:  February 26, 2021      /s/ Nancy Winkelman
PAUL M. GEORGE
Assistant Supervisor, Law Division
NANCY WINKELMAN
Supervisor, Law Division

9

# CERTIFICATE OF SERVICE

I, NANCY WINKELMAN, hereby certify that on February 26, 2021, I served a copy of the foregoing on the following persons by electronic service through ECF:

Claudia Van Wyk, Esq.
Victor J. Abreu, Esq.
Defender Association of Philadelphia, Federal Court Division
The Curtis Center, Suite 545 West
Independence Square West
Philadelphia, PA 19106
(215) 928-0520

James P. Barker, Esq.
Chief Deputy Attorney General
Office of the Attorney General
Criminal Law Division
Appeals and Legal Services Section
16th Floor, Strawberry Square
Harrisburg, PA 17120


Dated:  February 26, 2021         /s/ Nancy Winkelman
                                  Nancy Winkelman
                                  Supervisor, Law Division
                                  Philadelphia District Attorney's Office
                                  Three South Penn Square
                                  Philadelphia, PA 19107