**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


ROBERT WHARTON,                         :
       Petitioner                        :
                       :    Civil Action
       v.                               :
                       :
JAMIE SORBER, Superintendent            :    No. 01-6049
       Respondent                        :


**RESPONSE TO DISTRICT ATTORNEY'S OBJECTION**
**TO COURT-ORDERED PARTICIPATION**
**<u>OF OFFICE OF ATTORNEY GENERAL</u>**

This is the response of the Pennsylvania Office of Attorney General to the filing of the Philadelphia District Attorney's Office, which objects to this Court's order of over one year ago, on February 12, 2020, directing the Office of Attorney General to participate in the evidentiary hearing currently proceeding in this case. Because the Office of Attorney General has simply followed this Court's orders, the objection is both untimely and without merit.

1.      The record plainly establishes that the Office of Attorney General has never endeavored to enter into this case. Nor has it "advocated" for the death penalty as a matter of policy or discretion either in this case or in any other case being prosecuted by the District Attorney's Office. Instead, OAG was requested by judicial order to aid the Court in carrying out its solemn duty to determine

whether legal grounds, not policy or discretionary grounds, existed to overturn the

sentence imposed by a jury of Philadelphia citizens and upheld by Pennsylvania

courts.

2.      The history of this case spans almost two decades, but the

involvement of the Office of Attorney General began only in 2019, at the explicit

request of this Court.  At that time, the Court expressed concern that the District

Attorney's Office had suddenly switched the position it had previously maintained

on the specific legal issue now pending before this Court: whether trial counsel

provided constitutionally ineffective assistance at the sentencing phase of the

defendant's trial.  Because this Court concluded that the District Attorney's Office

had provided no legal basis for the switch, the Court was without assistance in

evaluating the relevant law or facts.

3.      Consistent with the position of the Pennsylvania Supreme Court,[1] this

Court concluded that it lacked power to overturn a judgment of sentence simply

because the parties now wished it to do so.  The Court concluded that it was

obligated to conduct its own independent review of the only question before it: a

question of law, not of policy or discretion.  ECF Doc. 160.

4.      Accordingly, on May 7, 2019, this Court issued an order to the Office

of Attorney General asking it to submit an *amicus curiae* brief "setting out its

---

[1] *Commonwealth v. Brown*, 196 A.3d 130 (Pa. 2018).

position as to whether Petitioner is entitled to relief on his remaining habeas claim." The Court further requested OAG to advise on whether the current factual record was sufficient or should be expanded.  ECF Doc. 165 at 3-4.

5.      Following submission of the brief, this Court noted that the District Attorney's Office "had failed to indicate whether it did any investigation" of the facts crucial to the resolution of the legal claim before the Court.  The Court also noted that the *amicus* brief "pointed to numerous facts, not previously provided to me by the District Attorney, that belied [the defendant's] claim that trial counsel was ineffective."  ECF Doc. 187 at 5-7.  Accordingly, the Court concluded that an evidentiary hearing was required, and that OAG's "participation at the hearing is necessary."  *Id.* at 8-9.

6.      The District Attorney's Office did not object to that directive.  The defendant did object, arguing that, because the Office of Attorney General was participating as *amicus curiae*, it could not take part in adversary proceedings such as an evidentiary hearing.  The defendant further argued that such participation would be in violation of Pennsylvania's Commonwealth Attorneys Act, which provides for the functions of the Office of Attorney General.  *Id.* at 12.

7.      In February 2020, more than one year ago, this Court issued a 17-page opinion that carefully examined and rejected the defendant's challenges.  The Court cited a plethora of authority permitting an *amicus*, at the discretion of the

court, to participate in an adversary evidentiary hearing.  *Id.* at 9-11.  The Court also dismissed the Commonwealth Attorneys Act argument.  The Court made clear that it was "not asking the Attorney General to supersede or assume the prosecutorial functions of the District Attorney."  Nor was it "seeking to have the [Office of] Attorney General substitute its judgment for that of the District Attorney."  Rather, the Court simply requested "that the Attorney General *supplement*, not substitute, the District Attorney's presentation of evidence at the hearing" (emphasis in original).  *Id.* at 12-13.  The Court thus concluded that the Office of Attorney General "will be permitted to call and cross-examine witnesses" in order "to assist the Court in reaching the right decision."  *Id.* at 9-10.

8.     After receiving this Court's thorough opinion, neither the defendant nor the District Attorney's Office chose to seek further review.  Over the course of the next year, this Court issued a series of scheduling and pre-hearing orders making clear that the Office of Attorney General would play a central role in the hearing, presenting its own witnesses and cross-examining witnesses called by the defendant or the District Attorney's Office.  Again, after receiving all these orders, neither the defendant nor the District Attorney's Office raised any challenge to or sought any limitation on the nature of OAG's participation in the hearing.

9.     Now, in the midst of this long-scheduled hearing, the District Attorney's Office files an "Objection" raising precisely the same arguments that

this Court rejected over one year ago.  To excuse this latest switch, the filing

asserts that questioning by the Office of Attorney General has been "tendentious"

and "aggressive."  The filing provides no examples of such "tendentiousness" or

"aggressiveness," nor does it state that any party has objected to any questioning as

"tendentious" or "aggressive," or that this Court has ruled, correctly or incorrectly,

on such objections.  In fact, it is plain that OAG is performing exactly the duty

requested by this Court.

10.    At the same time, and as assured by the Court in its February opinion,

the District Attorney's Office has had full opportunity to advance its own position

in the case, which, as its attorneys have stated explicitly to the Court, is to support

the defendant's position.

11.    The District Attorney's Office wrongly charges that, by honoring this

Court's order, OAG is "advocating" for the death penalty in an effort to "overrid[e]

the prosecutorial discretion" wielded by the District Attorney.

12.    This assertion betrays a misapprehension of the nature of

prosecutorial discretion – precisely the misapprehension that both this Court and

the Pennsylvania Supreme Court have previously attempted to correct.  Contrary to

the positions taken in those courts by the District Attorney's Office, prosecutors do

not have "discretion" to set aside lawful jury verdicts.  In performing its legal duty

at the request of this Court, the Office of Attorney General has not exercised any

discretion to "advocate" for the death penalty.  It has simply provided this Court with facts and law, necessary to a proper legal determination, that the District Attorney's Office has chosen not to provide.

13.    Nor has the Office of Attorney General attempted to "intervene" in the many other capital cases litigated by the District Attorney's Office.  OAG has had no role at all in these cases unless, as in this case, the court has explicitly requested its assistance.

14.    Neither the wisdom nor the constitutionality of capital punishment is before this Court.  The only claim is the narrow legal issue of whether trial counsel provided ineffective assistance by failing to present alleged mitigating evidence. That is all that the Office of Attorney General has addressed, in accordance with this Court's order, and OAG will continue to participate in this matter only as long as the Court may desire its assistance.  The "Objection" is without basis.

## CONCLUSION

For these reasons, the Objection filed by the District Attorney's Office should be dismissed.

Respectfully submitted,

/s/ James P. Barker
JAMES P. BARKER
Chief Deputy Attorney General
Office of Attorney General
Criminal Law Division
Appeals and Legal Services Section
16th Floor—Strawberry Square
Harrisburg, PA 17120
(717) 783-6896
jbarker@attorneygeneral.gov

Dated: March 1, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused the foregoing Response of *Amicus Curiae* Pennsylvania Office of Attorney General to Petitioner's Motions in Limine to be served on the following persons via ECF or by first class mail:

Via email through ECF

Victor J. Abreu, Esquire            Nancy Winkelman, Esquire
Claudia Van Wyk, Esquire           Paul M. George, Esquire
Elizabeth McHugh, Esquire          District Attorney's Office
Federal Community Defender Office   3 South Penn Square
Capital Habeas Corpus Unit         Philadelphia, PA 19107
601 Walnut Street, Suite 545 West  (Counsel for Respondent)
Philadelphia, PA 19106
(Counsel for Petitioner)


By:  */s/ James P. Barker*            */s/ Cari Mahler*
  James P. Barker                      Cari Mahler
  Chief Deputy Attorney General        Senior Deputy Attorney General
  Office of Attorney General           Office of Attorney General
  Criminal Law Division                Criminal Law Division
  Appeals and Legal Services Section   Appeals and Legal Services Section
  16th Floor—Strawberry Square         1000 Madison Avenue, Suite 310
  Harrisburg, PA 17120                 Norristown, PA 19403
  (717) 787-6348                       (610) 631-6552
  jbarker@attorneygeneral.gov          cmahler@attorneygeneral.gov


Date:  March 1, 2021