## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT WHARTON** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| **Petitioner,** | : | **No. 01-6049** |
| | : | |
| **v.** | : | |
| | : | |
| **DONALD T. VAUGHN, et al.** | : | |
| | : | |
| **Respondents.** | : | |
| | : | |

## ORDER

**AND NOW,** this 23rd day of August, 2021, upon consideration of Petitioner Robert Wharton's "Motions *in Limine*" (ECF No. 214), the Pennsylvania Attorney General's response thereto (ECF No. 218), the Pennsylvania Attorney General's "Pre-Hearing Motions of *Amicus Curiae*" (ECF No. 213), and Wharton's response thereto (ECF No. 217), and following a hearing on these motions held on February 12, 2021 and evidentiary hearings held on February 25, 2021, March 8, 2021, March 16, 2021, May 11, 2021, and August 5, 2021, it is hereby **ORDERED** that the motions (ECF Nos. 213 and 214) are **GRANTED IN PART** and **DENIED IN PART** as follows.

This Order resolves numerous motions and objections that have been raised during the pendency of this habeas proceeding. I assess these motions in light of the primary issue before me: Whether, under Strickland v. Washington, 466 U.S. 668 (1984), Wharton has proven that his counsel acted unreasonably by failing to investigate and/or present positive prison adjustment evidence and whether there is a reasonable probability that had such evidence been

1

presented at Wharton's second penalty hearing, at least one juror would have voted against imposing the death penalty.

**A.** **The Attorney General's Motion to Clarify the Relevant Time Period to Assess Positive Prison Adjustment**

1.    The Attorney General has moved to clarify the relevant time period for purposes of assessing Wharton's remaining Sixth Amendment claim.  I note the following to provide context for this issue:

     a.   On July 5, 1985, a jury returned a verdict of death against Wharton.

     b.   This verdict was subsequently overturned by the Pennsylvania Supreme Court because of a deficient jury instruction.

     c.   A second penalty hearing was held, and, on December 23, 1992, a jury again returned a verdict of death against Wharton.

2.    Precedent generally instructs that Wharton's entire period of incarceration, from the time of his arrest in February 1984, may be examined.  But, for reasons that will be detailed infra, the relevant time period that will be considered regarding Wharton's prison adjustment is the time between the two jury verdicts sentencing him to death—July 5, 1985 to December 23, 1992.  (Mot. *In Limine* Tr., 02/12/21, 15:10–14.)

3.    Wharton disagrees and argues that the time period regarding his prison adjustment should be limited and examined starting from when he was actually placed on death row in September 1986, after the first death penalty verdict but before his second penalty hearing was held in December 1992.  (Pet'r's Resp. at 1.)

4.    If I were to limit the relevant period as Wharton suggests, evidence of his April 1986 escape would not be considered.  Wharton contends that this is the correct result because, even though he had been incarcerated since 1984, his pre-death row conduct is not relevant to the

issue of prison adjustment.[1]

5.      The Attorney General responds that the relevant period to assess Wharton's prison adjustment is more expansive and that evidence of his April 1986 escape should be considered. The Attorney General focuses on the United States Supreme Court's decision in Skipper v. South Carolina, 476 U.S. 1 (1986), which involved evidence of positive adjustment to prison during the defendant's pretrial detention and did not limit the relevant period to the defendant's designation on death row or into the state prison system.[2]

6.      In Skipper, the petitioner, who was convicted of capital murder and rape, sought to introduce testimony demonstrating his good adjustment during the approximately seven months that he had spent in jail between his arrest and trial. Skipper, 476 U.S. at 1. The trial court ruled that such evidence was inadmissible and irrelevant, and the petitioner was sentenced to death. Id. The United States Supreme Court subsequently held that the trial court's exclusion of good adjustment evidence from the petitioner's time in pre-trial detention deprived him of "his right to place before the sentencing jury all relevant evidence in mitigation of punishment." Id. The Supreme Court explained that "[c]onsideration of a defendant's past conduct as indicative of

---

[1]      Wharton also points out that "attorneys from earlier administrations in the District Attorney's Office apparently never considered [Wharton's escape conviction to be] proper rebuttal, since they never introduced any evidence about it during over twenty years of litigating Mr. Wharton's Skipper claim." (Pet'r's Resp. to Mot. *in Limine* at 2.)

[2]      The Attorney General notes that that the Pennsylvania Supreme Court and the United States Court of Appeals for the Third Circuit made clear that their understanding of Wharton's Skipper claim included the entire period between his two penalty phase hearings.

        The Attorney General asserts that even if Skipper does not establish the relevant timeframe, evidence of his escape is "material to explain and place into context other behavior on the part of Wharton that occurred while he was in the custody of the [Department of Corrections], such as his possession of an improvised handcuff key . . . and his practicing of martial arts . . . [and] also would be necessary for purposes of the expert opinions relating to Wharton's positive adjustment to prison life . . . ." (OAG's Mot. *in Limine* at 11.)

his probable future behavior is an inevitable and not undesirable element of criminal sentencing . . . [E]vidence that a defendant would in the future pose a danger to the community if he were not executed may be treated as establishing an 'aggravating factor' for purposes of capital sentencing.  Likewise, evidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating."  Id. at 5.

7.     Here, Wharton was incarcerated for the murders of Bradley and Ferne Hart on February 7, 1984.  Under Skipper, my examination of Wharton's prison adjustment can thus start from the time Wharton was first incarcerated in 1984.  However, Wharton and the Attorney General's arguments and analysis regarding prison adjustment do not extend back that far.  (See OAG Mot. in Limine at 4–11; Wharton's Resp. at 1–2.)  And the Pennsylvania Supreme Court and the Third Circuit's assessments of Wharton's Skipper claim both focus on the seven years between Wharton's penalty hearings.[3]  Thus, I will focus on the same time period.

8.     The events of Wharton's escape, to which he pled guilty, transpired after the jury had returned its first death penalty verdict in July 1985 but before the trial court had formally sentenced him to death, which occurred on September 24, 1986.  Most importantly, Wharton's escape occurred before his second penalty hearing was held in 1992.  Wharton's trial counsel's conduct at this hearing is the focus of my Sixth Amendment analysis.  Based on Skipper, I

---

[3]     It is clear from the Pennsylvania Supreme Court and the Third Circuit's opinions on Wharton's Skipper claim that Wharton argued before those courts that his trial counsel should have introduced adjustment evidence in the seven years between his two death penalty hearings, not just from the time he entered state custody until his second penalty hearing.  See Commonwealth v. Wharton, 811 A.2d 978, 988 (Pa. 2002) ("Appellant first claims that his trial counsel was ineffective for failing to obtain and introduce evidence that, during the seven years between appellant's first and second penalty hearings, he made a 'sterling' adjustment to prison life . . . ." (emphasis added)); see also Wharton v. Vaughn, 722 F. App'x 268, 279 (3d Cir. 2018) ("At the PCRA stage, Wharton alleged that Cannon was ineffective at the second penalty hearing for failing to obtain and present evidence reflecting Wharton's positive adjustment to prison life during the seven years between his two penalty hearings." (emphasis added)).

conclude that Wharton may not limit the evidence of his positive prison adjustment to his time on death row.  Thus, at the second penalty hearing in 1992, I conclude that the Commonwealth could have appropriately rebutted positive prison adjustment evidence with evidence of Wharton's escape from April 1986.

9.      I further conclude that evidence of Wharton's escape is also relevant in considering his overall adjustment while on death row.  This conviction provides the context necessary to understand the significance of Wharton's two misconducts in 1989 for possession of contraband/implements of escape.

10.      Therefore, for all of the above reasons, I conclude that the relevant period of consideration for Wharton's remaining Sixth Amendment claim is July 5, 1985 to December 23, 1992, the period between his two death penalty jury verdicts.  The Attorney General's motion to clarify the relevant period (ECF No. 213) is thus **GRANTED**.

B. **Wharton's Motion to Exclude His Instruments of Escape and Assault Charges and the Facts Underlying His Escape Conviction**

11.      Wharton has objected to the admission of the fact that he was <u>charged</u> with instruments of escape and assault in connection with his April 1986 escape from City Hall.  As stated on the record on February 12, 2021, Wharton's objection is **SUSTAINED**.  While Wharton was convicted of escape, he was not convicted of either of those crimes and, thus, those charges will not be considered.  (Mot. *In Limine* Tr., 02/12/21, 17:20–18-3.)

12.      Wharton also seeks to exclude the facts associated with the instruments of escape and assault charges, i.e., that he possessed a handcuff key and used it to uncuff himself and that he pushed a deputy sheriff into a wall or elevator door to facilitate his escape.  Wharton contends that these facts were never proven because he was not convicted of either crime.

13.      But Wharton pled guilty to and was convicted of escape, and, in doing so, admitted

to the facts underlying that escape.  The criminal complaint regarding Wharton's escape charge set forth the following facts: "The acts committed by the accused were: While in custody after being sentenced to 12 to 25 years for robbery . . . in Room 225, City Hall . . . defendant did push Deputy Sherif[f] Casella into a wall and then did flee City Hall.  Defendant was in possession of a handcuff key used by defendant to uncuff himself . . . ."  (OAG Ex. 8.)  By signing the guilty plea for escape, Wharton acknowledged that: "The facts of the case have been read to me.  The crimes and elements of the crimes(s) have been explained to me.  I committed the crime(s), and that is why I am pleading guilty."  (OAG Ex. 12.)

14.     Thus, because I find that the Commonwealth could have sought to introduce this evidence as a result of Wharton's adoptive admission, the facts underlying his escape conviction may be considered.  Wharton's objection is **OVERRULED**.

## C. <u>Documents Supporting Dr. Krop's Opinion</u>

15.     The Attorney General has moved for disclosure of all information and documents underlying Dr. Harry Krop's opinion and analysis.  As stated on the record on February 12, 2021, Dr. Krop has verified that he no longer possesses the information and documents requested by the Attorney General, and Wharton's counsel have confirmed the same.  (Mot. *In Limine* Tr., 02/12/21, 23:7–31:23.)  Thus, this motion (ECF No. 213) is **DENIED**.

## D. <u>The Attorney General's Motion to Exclude Certain Expert Testimony</u>

16.     The Attorney General has moved to exclude certain expert testimony offered by Wharton.  I advised the Attorney General on February 12, 2021 that the admissibility of expert testimony offered by Wharton would be determined based on objections made in the courtroom as the testimony was received.  Because the evidentiary hearings in this matter have since occurred, the Attorney General's motion (ECF No. 213) is **DENIED as moot**.  To the extent that

any of the Attorney General's objections to expert testimony were raised at the hearings, held under advisement, and not addressed by this Order, the Attorney General may address those objections in their post-hearing briefing.

17.     The Attorney General has also moved to exclude Dr. Neil Blumberg's supplemental expert report due to its late production.  As stated on the record on February 12, 2021, I informed the Attorney General that it may request to cross examine Dr. Blumberg further after it had the opportunity to consult with its psychiatric expert, Dr. John O'Brien.  (Mot. *In Limine* Tr., 02/12/21, 36:19–38:14.)  The Attorney General did not request further examination of Dr. Blumberg, and, therefore, the motion (ECF No. 213) is **DENIED as moot**.

### E.   <u>Wharton's Motion to Exclude Victim Testimony</u>

18.     Wharton has moved to exclude testimony from the victims' family members and the only surviving victim of Wharton's crimes, Lisa Hart-Newman.  As stated on the record on February 12, 2021 and in my February 12, 2020 Memorandum Opinion (ECF No. 187), the Philadelphia District Attorney's communication with the victims' family served as one of the bases for its concession of death penalty relief.  (Mot. *In Limine* Tr., 02/12/21, 32:24–36:15; <u>see also</u> Notice of Concession, ECF No. 155, ¶ 9 (conceding death penalty relief "[f]ollowing review of this case by the Capital Case Review Committee of the Philadelphia District Attorney's Office, communication with the victims' family, and notice to [Wharton's] counsel.").)  The District Attorney has thus placed these communications at issue.  Moreover, the federal Crime Victims' Rights Act affords crimes victims the right to be heard at any public proceeding in a federal habeas case arising from a state conviction.  18 U.S.C. § 3771(b)(2)(A).  Thus, Wharton's motion (ECF No. 214) is **DENIED**.  The extent to which the views of Lisa Hart-Newman and her family members factor into my decision on Wharton's remaining Sixth Amendment claim, if at all, will

be addressed in my Opinion on that claim.

**F. Motion to Exclude Specific Exhibits Proffered by Wharton and the Attorney General**

19.     Both Wharton and the Attorney General have objected to the admission of numerous exhibits proffered by the other.  I advised the Attorney General and Wharton on February 12, 2021 that the admissibility of any exhibits would be determined during testimony and as the exhibits were offered into evidence at the hearing.  Because the evidentiary hearings in this matter have concluded and I have ruled on those objections during the hearings, Wharton and the Attorney General's motions (ECF Nos. 213 and 214) to exclude those exhibits are **DENIED as moot.**

20.     I also conclude that any objections to the admissibility of newspaper articles written about Wharton's escape conviction are **OVERRULED.**  However, as the Attorney General acknowledges, these newspaper articles may not be considered for the truth of the matters asserted therein, but rather will be considered only to show that these articles may have been available to the prosecution at the time of the second penalty hearing and may have served as notice of Wharton's escape had Wharton presented evidence of his positive prison adjustment at his second penalty hearing.

21.     To the extent that any objections to exhibits were raised at the hearings, held under advisement, and not addressed by this Order, the parties and the Attorney General may address those objections in their post-hearing briefing.

**G. Wharton's Motion to Reconsider Rejection of the Proposed Settlement**

22.     Wharton has moved for reconsideration of my decision not to accept the District Attorney's concession of death penalty relief.  For the reasons set forth in my February 12, 2020 Memorandum Opinion and my March 11, 2021 Order on this exact issue, Wharton's motion

8

(ECF No. 214) is **DENIED**.

**BY THE COURT:**


*/s/ Mitchell S. Goldberg*
**MITCHELL S. GOLDBERG, J.**