**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| _____ : | | |
| ROBERT WHARTON, | : | |
| | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | No. 01-6049 |
| | : | |
| JAMIE SORBER, et al., | : | **CAPITAL CASE** |
| | : | |
| Respondents. | : | |
| _____ | | |

**REPLY IN SUPPORT OF
PETITIONER ROBERT WHARTON'S POST-HEARING BRIEF**

LEIGH M. SKIPPER
Chief Federal Defender, by

ELIZABETH MCHUGH
CLAUDIA VAN WYK
Assistant Federal Defenders
Federal Community Defender Office
 Eastern District of Pennsylvania
Capital Habeas Corpus Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA  19106
(215) 928-0520
elizabeth_mchugh@fd.org
claudia_vanwyk@fd.org

*Counsel for Petitioner Robert Wharton*

Dated: November 1, 2021

## TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................................i

ARGUMENT ........................................................................................................................ 1

I.    TRIAL COUNSEL'S FAILURE TO INVESTIGATE AND PRESENT EVIDENCE
      OF MR. WHARTON'S PRISON ADJUSTMENT DURING THE TIME BETWEEN
      HIS INITIAL SENTENCING AND HIS RESENTENCING DEPRIVED HIM OF
      THE EFFECTIVE ASSISTANCE OF COUNSEL............................................................ 1

      A.   Counsel Was Deficient in Failing to Investigate and Present Available Evidence
           Concerning Petitioner's Positive Adjustment to Prison.................................................. 1

      B.   The Readily Available Evidence Shows Counsel's Deficient Performance
           Prejudiced the Defense. ................................................................................................ 4

II.   THE ATTORNEY GENERAL IMPROPERLY PARTICIPATED AS AN
      ADVOCATE IN THIS PROCEEDING AND WAS IMPROPERLY ALLOWED
      TO OBJECT TO A STIPULATION BETWEEN THE PARTIES. ...................................... 7

CONCLUSION..................................................................................................................... 8

**ARGUMENT**[1]

I.    **TRIAL COUNSEL'S FAILURE TO INVESTIGATE AND PRESENT EVIDENCE OF MR. WHARTON'S PRISON ADJUSTMENT DURING THE TIME BETWEEN HIS INITIAL SENTENCING AND HIS RESENTENCING DEPRIVED HIM OF THE EFFECTIVE ASSISTANCE OF COUNSEL.**

    A.    **Counsel Was Deficient in Failing to Investigate and Present Available Evidence Concerning Petitioner's Positive Adjustment to Prison.**

The Office of the Attorney General ("OAG") appears to concede that trial counsel, William Cannon, was deficient because his ignorance of *Skipper v. South Carolina*, 476 U. S. 1 (1986), six years after the Supreme Court decided it, prevented him from investigating and presenting evidence of Mr. Wharton's good prison adjustment. The OAG does not mention Mr. Cannon's testimony that he did not know about *Skipper*, and it does not cite or respond to *Hinton v. Alabama*, 571 U. S. 263, 273 (2014), or other authorities holding that an attorney's ignorance of the law can constitute deficient performance. The OAG never even cites *Skipper* anywhere in its post-hearing submission. It responds to Mr. Cannon's testimony that he was "so regretful" that he did not develop this area of mitigation (*see* 2/25/21 Tr. 163) with the truism that *Strickland*[2] imposes an objective test of attorney performance. OAG Post-Hearing Brief, ECF No. 280, at 2 n.2. The OAG does not mention that what Mr. Cannon regretted was that he did not know about *Skipper*. *See* 2/25/21 Tr. 129, 166-67. His ignorance was objectively deficient.

The OAG relies almost exclusively on the argument that Mr. Cannon's performance was objectively reasonable because the Commonwealth could rebut the *Skipper* evidence with Mr.

---

[1] This pleading uses the following citation abbreviations:

Transcripts - cited by date and page: xx/xx/xx Tr. xxx
Petitioner's exhibits - cited by exhibit and bates number: PE x, xxx.

[2] *Strickland v. Washington*, 466 U.S. 688 (1984).

1

Wharton's escape conviction and his prison infractions for possession of contraband implements of escape. While it recounts the potential rebuttal evidence at great length, however, it relies heavily on its own speculation about the strategy of an attorney who testified that he had no strategic reason for avoiding the *Skipper* evidence. It leaves several key questions unaddressed.

The OAG quotes the familiar dictum that reviewing courts should "avoid the distorting effects of hindsight" and assess the claim from counsel's perspective at the time. ECF No. 280 at 3 (quoting *Strickland*, 466 U.S. at 689). It ignores Mr. Cannon's repeated testimony about his strategic reasoning at the time of trial. For example, the OAG argues that *Skipper* evidence would have conflicted with Mr. Cannon's strategy of showing Mr. Wharton's positive attributes. ECF No. 280 at 16. Mr. Cannon testified, though, that the evidence would have corroborated family witnesses' testimony that Mr. Wharton had many positive qualities, and more generally that the evidence would have supported his "life means life" argument. 2/25/21 Tr. 140; 3/8/21 Tr. 85. Again, the OAG argues:

> Evidence of Wharton's April 1986 escape from City Hall, not even a year after the jury sentenced him to death, when he was brought to Philadelphia for sentencing in a robbery case, and his two 1989 implements of escape misconducts **alone** would have been detrimental to the defense strategy of portraying Wharton as a kind, loving, innocent, and helpful person. It would have undermined the strategy trial counsel did use at the penalty hearing.

ECF No. 280 at 18. Mr. Cannon specifically denied this unfounded inference about his strategy. He testified that he would have met any prosecution attempt to argue "maladjustment" from the prison records as "pure speculation" and that nothing negative in the prison records would have deterred him from presenting prison adjustment evidence. 2/25/21 Tr. 148, 158. Regarding the escape, he would have moved in limine to preclude the prosecution from introducing evidence of the nolle prossed charges and would have argued to the jury in November and December 1992 that

events "all the way back in 1986" should not be "impactful" given all the factors they had to

consider. Even if all the evidence had come in:

> I absolutely would have presented these records, and I'm so regretful that I failed
> to do so. Absolutely. There's nothing -- there's nothing that I have seen in a way
> of, you know, non-mitigation evidence that would discourage me from putting
> those records before the jury.

2/25/21 Tr. 148, 158.

The OAG also argues that Mr. Cannon's strategic decision not to argue the (e)(1) "no

significant history" mitigating factor, to avoid opening the door to a prior home invasion robbery

and a separate burglary, was inconsistent with his hearing testimony that he would have presented

the *Skipper* evidence even if it opened the door to the prior escape attempt. ECF No. 280 at 20

n.13. The OAG ignores Mr. Cannon's explanation, when cross-examined on this point, that in his

view, "it would have been much worse for the jury to hear about the robbery and the burglary as

opposed to the fact that he effected an attempt to escape." 3/8/21 Tr. 44. Finally, the OAG argues

that the potential rebuttal would have impeded Mr. Cannon's summation, where he argued that if

the jury spared Mr. Wharton he would spend the rest of his life in prison. ECF No. 280 at 19. The

OAG does not describe Mr. Cannon's response when questioned about his summation on cross-

examination: he "could have done without" the rebuttal evidence of the escape and misconducts,

but "in terms of significantly weakening my argument, it did not." 3/8/21 Tr. 33.

The OAG cites two cases in which federal courts have held that counsel were not deficient

for not introducing evidence of prison adjustment, but both substantially diverge from the facts of

Mr. Wharton's case. ECF No. 280 at 19. In *Morgan v. Branker*, No. 1:09–cv–416, 2012 WL

2917841, at *20 (W.D.N.C. July 17, 2012), the petitioner sought to "impl[y]" his good adjustment

from his history of work release but failed to present an expert or former prison official. The prison

records would have shown infractions for fighting. Moreover, presenting the evidence could have

3

opened the door to an otherwise undisclosed prior murder. Mr. Wharton, in contrast, presented expert testimony, and had no history of fighting or violence of any kind in prison and no undisclosed murder. The jurors had already learned the worst about his past in the prosecution's case-in-chief. Similarly, in *Peterka v. McNeil*, 532 F.3d 1199 (11th Cir. 2008), trial counsel believed (without the benefit of records to refresh their memories) that they had in fact investigated prison adjustment, and the evidence of the petitioner's good behavior was tepid. *Id.* at 1204. A counselor testified that the petitioner was "a little better" than the average inmate, and his refusal to take part in an escape, which he never disclosed to his attorneys, post-dated the jury hearing. *Id.* at 1208. Mr. Wharton, however, relies on over 70 positive Program Review Committee ("PRC") reports from staff responsible for overseeing his day-to-day functioning, numerous other prison records, and the opinions of two experts. And his trial counsel candidly admits that, out of ignorance, he never looked into prison adjustment.

> **B.** **The Readily Available Evidence Shows Counsel's Deficient Performance Prejudiced the Defense.**

Mr. Wharton argues that *Strickland* review does not require this Court to decide whether the experts for either side offered correct opinions; rather, it should decide whether there is a reasonable probability that at least one juror who had heard the expert testimony would have reached a different decision. Petitioner's Post-Hearing Brief, ECF No. 279, at 5-6. The OAG does not respond to this argument. It summarizes the testimony of its own experts at length (ECF No. 280 at 9-11, 14-15), but does not dispute that this Court should only consider whether a life verdict would have been reasonably probable even if the jurors had heard that expert rebuttal along with the undiscovered *Skipper* evidence.

Mr. Wharton's prison adjustment expert, Maureen Baird, stressed the value of the 70 monthly PRC reports reflecting Mr. Wharton's good adjustment. PE 41, 5728. The OAG

disparages these as "boilerplate," and criticizes Ms. Baird because, in the OAG's view, she "chose to rely more on" "commonplace" factors including the PRC reviews. ECF No. 280 at 13, 23. While Ms. Baird did give important weight to the "commonplace" factors, she stressed the necessity of weighing all the evidence, including the negative evidence, to arrive at a fair assessment. 8/5/21 Tr. 76-77.

Among the materials Ms. Baird reviewed was the report of Cynthia Link, the former warden of SCI Graterford, who was originally one of Mr. Wharton's witnesses for this hearing but could not testify because of illness. 2/25/21 Tr. 205; 3/15/21 Tr. 231. Ms. Baird agreed with Ms. Link's major conclusions. 8/5/21 Tr. 73. The OAG vigorously criticizes Ms. Baird (ECF No. 280 at 13) because she gained her professional experience in the federal Bureau of Prisons and not the Pennsylvania Department of Corrections. It does not mention, however, the testimony of its own expert, former Pennsylvania DOC Secretary Jeffrey Beard, that he could qualify as an expert in other states, without specific experience in those states, because of his general expertise in prison security and management. 5/11/21 Tr. 77. Nor does the OAG mention the concurrence of opinions between Ms. Baird and Ms. Link, who spent her career in Pennsylvania. *See* PE 11, 4446.

Ms. Link's report is admissible at this *Strickland* hearing in support of the purpose for which Mr. Wharton cited it in his post-hearing brief: to show what evidence was reasonably available to counsel in 1992. ECF No. 279 at 15. Because it is relevant on that basis, the Court can also consider it because it is one of the materials on which Ms. Baird relied (8/5/21 Tr. 73), and because the rules governing habeas cases give district courts broad discretion to consider affidavits and other documents in addition to formal testimony. *See* Rule 7(b), Rules Governing Section 2254 Cases in the Federal District Courts.

Mr. Wharton and the District Attorney offered to stipulate that, if Ms. Link had been called as a witness, she would have testified consistently with her report. 8/5/21 Tr. 128. The OAG objects because (a) it says that Mr. Wharton's counsel acquiesced in the Court's characterization of Ms. Baird as a "replacement" for Ms. Link and (b) Ms. Link was not cross-examined. ECF No. 280 at 14 n.1. The OAG does not explain why, as an amicus, it has the power to object to a stipulation between the parties. In any case, both of its objections are unsound. The Court characterized Ms. Baird as a replacement *witness*, and she performed that role; she testified, and Ms. Link did not. *See* 3/16/21 Tr. 231, line 11; *id.* at 232, lines 6-7, 10. Counsel's acquiescence in that characterization did not negate the relevance of her report for this Court's review. As for cross-examination, the Court has already heard the OAG's extensive cross-examination of Ms. Baird. Given the concurrence between her opinions and Ms. Link's, Ms. Link's cross-examination would likely have covered the same topics, and the absence of cross-examination should not preclude the Court from accepting the parties' stipulation.

Adopting an approach similar to the one it took with Ms. Baird, the OAG accuses psychiatrist Neil Blumberg of discounting Mr. Wharton's 1986 attempt to escape City Hall. ECF No. 280 at 14-15. Describing Dr. Blumberg's testimony that he formed an opinion on Mr. Wharton's adjustment to prison beginning with his arrival at SCI Huntingdon in September 1986, the OAG leaps to the conclusion that Dr. Blumberg did not take prior conduct, including the escape attempt earlier in 1986, into account in assessing that adjustment. "To Dr. Blumberg, it was as if Wharton's escape from City Hall did not exist." ECF No. 280 at 15. The OAG ignores Dr. Blumberg's testimony that he weighed all the historical data and believed the violent and otherwise criminal conduct between 1983 and 1986, including the escape, increased the risk of violence. 2/25/21 Tr. 42-44, 54, 87. Nevertheless:

> [Y]ou have to take into account a whole variety of other historical risk factors along with their current clinical condition and whether to more adequately determine what their future risk may be.

*Id*. at 94. In this case, his overall assessment was positive.

The OAG cites three federal cases in which courts found no *Strickland* prejudice, but none can control this Court's fact-sensitive prejudice determination. ECF No. 280 at 24. The opinion in *Bryan v. Bobby*, 843 F.3d 1099, 1115-16 (6th Cir. 2016), does not describe the omitted evidence except to characterize the petitioner's prison record as "mixed." The opinion in *Trice v. Ward*, 196 F.3d 1151, 1162-63 (10th Cir. 1999), says only that the prison records show that the petitioner "did not have behavior problems in prison." According to the opinion in *Spreitzer v. Peters*, No. 92 C 2182, 1999 WL 688757, at *8 (N.D. Ill. Apr. 16, 1999), *aff'd sub nom, Spreitzer v. Schomig*, 219 F.3d 639 (7th Cir. 2000), the petitioner asserted that he had behaved well and worked as a plumber and repairman in prison, and complained only that his trial counsel failed to seek favorable testimony from prison staff. The opinion does not indicate that the petitioner showed any staff were available. Mr. Wharton has presented extensive mitigating evidence in the form of voluminous records and readily available expert testimony.

The OAG does not respond to Mr. Wharton's argument that the Court should give substantial weight to the District Attorney's confession of error. ECF No. 279 at 24. For the reasons in Mr. Wharton's initial post-hearing brief, the Court should give it that weight and either accept the parties' settlement or grant relief on this claim.

## II. THE ATTORNEY GENERAL IMPROPERLY PARTICIPATED AS AN ADVOCATE IN THIS PROCEEDING AND WAS IMPROPERLY ALLOWED TO OBJECT TO A STIPULATION BETWEEN THE PARTIES.

The OAG does not respond to Mr. Wharton's argument that, as an amicus curiae, it was not entitled to object to a stipulation between the parties. For the reasons explained in previous submissions, the Court should disallow the OAG's objection and accept the stipulation.

**CONCLUSION**

For these reasons and those in Mr. Wharton's initial post-hearing brief and all prior submissions, the Court should grant Mr. Wharton habeas relief.

Respectfully submitted,

LEIGH M. SKIPPER
Chief Federal Defender, by

/s/ Claudia Van Wyk
ELIZABETH MCHUGH
CLAUDIA VAN WYK
Assistant Federal Defenders
Federal Community Defender Office
 Eastern District of Pennsylvania
Capital Habeas Corpus Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA  19106
(215) 928-0520
elizabeth_mchugh@fd.org
claudia_vanwyk@fd.org

*Counsel for Petitioner Robert Wharton*

Dated:   November 1, 2021

8

## CERTIFICATE OF SERVICE

I, CLAUDIA VAN WYK, hereby certify that on this date I served a copy of the foregoing

on the following persons in the manner indicated below:

BY ELECTRONIC SERVICE THROUGH ECF

PAUL M. GEORGE
Assistant Supervisor, Law Division
NANCY WINKELMAN
Supervisor, Law Division
Office of the Philadelphia District Attorney
3 South Penn Square
Philadelphia, PA 19107

JAMES P. BARKER
Chief Deputy Attorney General
CARI L. MAHLER
Senior Deputy Attorney General
Office of Attorney General
Criminal Law Division
Appeals and Legal Services Section
16th Floor, Strawberry Square
Harrisburg, PA 17120

/s/ Claudia VanWyk
Claudia VanWyk

Dated:   November 1, 2021