IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

**ROBERT WHARTON,**
     **Petitioner**
                                 No. 01-cv-6049

v.

**DONALD T. VAUGHN**
     **Respondent**

**AFFIDAVIT OF MAX C. KAUFMAN, ESQ.**

I, Max C. Kaufman, hereby swear and affirm as follows:

1. I am the attorney ordered to appear for a hearing in this case on June 2, 2022.

2. I no longer work at the Philadelphia District Attorney's Office (DAO). I worked as an Assistant District Attorney (ADA) at the DAO from May 2003 to February 2021, at which time I voluntarily left the office. From May 2003 to January 2013, I worked as an ADA in the Appeals Unit of the Law Division of the DAO. The remainder of my time with the DAO was spent as an ADA in the Federal Litigation Unit of the Law Division. From September 2017 until my departure from the DAO, I was the Supervisor of the Federal Litigation Unit.

3. I currently work as a law clerk for the Honorable Kevin M. Dougherty of the Pennsylvania Supreme Court.

4. Under the administration of District Attorney Lawrence Krasner, which began in January 2018, my direct supervisors were Nancy Winkelman, Supervisor of the Law Division, and Paul George, Assistant Supervisor of the Law Division.

5. Under the Krasner administration, the DAO created and utilized a Capital Case Review Committee (Committee). I was not a member of the Committee, nor was I ever aware of the membership of the Committee or of how precisely it operates. I never

1

participated in any of the Committee's deliberations, or attended any of its meetings. I never had any input in the Committee's decision-making, in this or any other case. A final decision by the Committee with respect to a case represented the final, authoritative position of the DAO as to the matter, and was not subject to reconsideration or change by me.

6. My supervisors instructed me to adhere to the following procedure with respect to capital cases pending in federal court: In any pending capital case in which there was set to be active litigation such as briefing or a hearing, I was to notify Mr. George of the case in advance so that he could bring it before the Committee for its review. I was instructed that, to the extent possible, I should not proceed with active litigation of the case until I first heard back from Mr. George regarding the decision of the Committee.

7. Pursuant to this procedure, I advised Mr. George that the Third Circuit had remanded this case to this Court for an evidentiary hearing.[1]

8. Thereafter, Mr. George advised me that the Committee had made a final decision to concede penalty phase relief in the case.

9. In addition, the Victim/Witness Coordinator for the Law Division, Heather Wames, advised me that the Committee's final decision to concede penalty phase relief had

---

[1] I do not recall exactly when I notified Mr. George of the remand. The Third Circuit issued its decision remanding the case on January 11, 2018. Thereafter, Wharton filed a petition for a writ of certiorari to the United States Supreme Court raising the single issue of whether the Third Circuit erred in rejecting his guilt-phase claim that his counsel was ineffective at the suppression hearing and at trial for not presenting evidence that his confession was involuntary. The United States Supreme Court ultimately denied certiorari on December 3, 2018. I note that Mr. George entered his notice of appearance in the case in this Court on December 4, 2018. As I am no longer employed by the DAO, I do not presently have access to any emails or other communications I may have sent or received in relation to this case, which presumably would help in recreating the precise timeline of events.

been communicated to the victims' family. I do not recall what specific information Ms. Wames relayed to me about her contacts with the family. I had no involvement in notifying the victims' family, nor did I direct Ms. Wames to do so. I did not supervise Ms. Wames.

10. After being so advised by Mr. George and Ms. Wames, I drafted the Notice of Concession of Penalty Phase Relief docketed on February 6, 2019 (Notice of Concession), consistent with the information provided to me.[2]

11. At the time I filed the Notice of Concession, I was not personally aware of Wharton's attempted escape in 1986, or of the other additional negative prison adjustment evidence noted by the Attorney General in its brief filed on July 22, 2019. Because I had no authority to unilaterally reconsider or change the decision of the Committee to concede penalty phase relief, I did not conduct any independent investigation or evaluation of the case before filing the Notice of Concession. I did not personally learn of the attempted escape and other additional negative prison adjustment evidence identified by the Attorney General until after the Attorney General filed its brief on July 22, 2019, which, as discussed below, was after I had discontinued my involvement in this matter.

12. The language of the Notice of Concession providing that the DAO was not contesting penalty phase relief "[f]ollowing . . . communication with the victims' family" does not state, and was not intended to imply, that every member of the victims' family

---

[2] Previously, I drafted the DAO's response in opposition to Wharton's 2018 certiorari petition. However, I did not work on this case when it was before this Court prior to Wharton's appeal to the Third Circuit in 2013, nor did I draft the DAO's brief for appellee in the Third Circuit.

3

had been contacted by the DAO, or that the victims' family agreed with the decision of the Committee to concede penalty phase relief. This language was merely intended to convey that the Committee's decision to concede penalty phase relief was communicated to the victims' family, information I included, along with the facts of review by the Committee and notice to counsel, to provide a brief synopsis of the process leading to the concession. Indeed, it was my understanding that while the victims' families were notified of the Committee's decisions to concede relief, their agreement was not a condition precedent to concession. In other words, while the families had a say in the Committee's process, they did not have a veto. Although it was not my intention, it is now apparent to me the admittedly vague "communication with the victims' family" language was amenable to the interpretation that the victims' family agreed with the concession of penalty phase relief. Please know this was certainly not my intention, and I apologize to the Court for the lack of clarity.

13.    My final work on this case was drafting the DAO's responsive brief to the Court's March 4, 2019 order, which requested briefing on two issues: (1) whether the Court had the authority and/or the obligation to grant habeas relief based solely on the DAO's concession of the remaining habeas claim, or whether the Court had to independently review, and determine the merits of, the conceded claim; and (2) if the Court had to make an independent determination on the merits, whether that was possible on the current record, without conducting the evidentiary hearing as directed by the Third Circuit. The brief argued the Court could, but was not bound to, accept the DAO's concession. In addition, the brief represented that if the Court remained of the view following the responsive filings of the parties and any motion to expand the record filed

4

by Wharton, that the record was insufficient to rule on the remaining claim, the DAO had no opposition to the Court holding an evidentiary hearing.

14. Thereafter, I requested permission to stop working on the case. I requested to stop working on the case because it seemed apparent the case was evolving from a perfunctory concession of relief to active litigation on Wharton's behalf. To the extent I had a choice in the matter, I did not want to spend time and effort that could otherwise be devoted to other cases in my heavy caseload actively advocating for relief for Wharton. My supervisors graciously permitted me to stop working on the case. I had no further involvement in it until my voluntary departure from the DAO in February 2021.

I hereby swear and affirm that the foregoing statements are true and correct to the best of my knowledge and belief.

_____
Max C. Kaufman

Signed and Sworn to Before Me:

_Thael M. Quran_

Date: 05/21/2022

Commonwealth of Pennsylvania - Notary Seal
Thael M. Quran, Notary Public
Philadelphia County
My commission expires May 2, 2026
Commission number 1420077
Member, Pennsylvania Association of Notaries



5