## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT WHARTON,

               Petitioner,

      v.

DONALD T. VAUGHN,

               Respondent.

CIVIL ACTION

No. 2:01-cv-06049-MSG

CAPITAL CASE

### [PROPOSED] ORDER

Upon consideration of the Memorandum of Law in Support of the Motion to Cancel the Scheduled Evidentiary Hearing and Dismiss All Allegations of Sanctionable Conduct of the District Attorney's Office or, in the Alternative, to Transfer the Investigation of Possible Professional Conduct Violations to the Chief Judge of the Eastern District, the Expert Report of Professor Bruce A. Green, and any response thereto, it is hereby **ORDERED** that:

1.     The Court finds that the District Attorney's Office, including its attorneys, did not violate any ethical duty or engage in any sanctionable conduct with respect to the matters raised in the Court's Memorandum Opinion dated May 11, 2022 (ECF 284) and Order dated May 13, 2022 (ECF 286).

2.     The Court vacates pages 30-40 of its May 11, 2021 Memorandum Opinion (ECF 284) and May 13, 2022 Order (ECF 286).

3.     The hearing scheduled for June 23, 2023 (ECF 296) is cancelled.

### BY THE COURT:

Dated: June ____, 2022

_____
Mitchell S. Goldberg, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT WHARTON,

                Petitioner,

    v.

DONALD T. VAUGHN,

                Respondent.

CIVIL ACTION

No. 2:01-cv-06049-MSG

CAPITAL CASE

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO CANCEL THE SCHEDULED EVIDENTIARY HEARING AND DISMISS ALL ALLEGATIONS OF SANCTIONABLE CONDUCT OR, IN THE ALTERNATIVE, TO TRANSFER THE INVESTIGATION OF POSSIBLE PROFESSIONAL CONDUCT VIOLATIONS TO THE CHIEF JUDGE OF THE EASTERN DISTRICT**

David Rudovsky (No. 15168)

KAIRYS, RUDOVSKY, MESSING, FEINBERG & LIN
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400
drudovsky@krlawphila.com

John S. Summers (No. 41854)
Andrew M. Erdlen (No. 320260)
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
(215) 568-6200
jsummers@hangley.com
aerdlen@hangley.com

*Counsel for the Philadelphia District Attorney's Office*

# TABLE OF CONTENTS

I.    Introduction ........................................................................................... 1

II.    Procedural and Factual Background ...................................................... 3

    A.    The DAO Notice .......................................................................... 3

    B.    The Court's March 4, 2019 Memorandum Opinion and Order .................. 4

    C.    The DAO's April 3, 2019 Brief ...................................................... 5

    D.    The Court's May 11, 2022 Memorandum Opinion ...................... 6

    E.    The DAO's Motion and Max Kaufman Affidavit ......................... 9

III.    Argument ............................................................................................. 11

    A.    As a Matter of Law, the Opinion Errs in Holding the DAO to a "Heightened" Duty of Candor Rather than the Obligations to be Candid Required by the Pennsylvania Rules of Professional Conduct and Other Law ........................................................................ 12

        1.    Rule 3.3(a) does not create any duty on prosecutors to provide evidence that either supports or could be considered contrary to a notice reporting on its decision to concede a habeas corpus petition. ............................................................ 12

        2.    That the DAO lawyers are prosecutors does not support the Opinion's heightened duty rule. ................................... 14

        3.    That the Notice and Proposed Order concede Wharton's habeas penalty phase relief does not render the proceedings *ex parte* and trigger additional candor obligations. ......................... 17

        4.    The Court's Supervisory Powers. ................................... 20

        5.    That this is a federal habeas challenge to a state court judgment does not create a "heightened duty" enhancing the DAO's Rule 3.3 obligations. ........................................... 22

    B.    The DAO Did Not Violate any Ethical Duty and There Is No Basis for Sanctions under the Rules of Professional Conduct or Otherwise ........... 24

        2.    The Non-Disclosure of the Escape Attempt Did Not Violate an Ethical Duty .......................................................... 24

            a)    The Notice does not contain any false or misleading statement about Mr. Wharton's escape attempt and the Opinion provides no basis for concluding otherwise. ........... 25

3. The Notice's Statement Concerning Communication with the Victims' Family Did Not Violate Any Ethical Duty. ........................ 29

C. The Opinion's "Preliminary Conclusion" of Breach of an Ethical Duty May Trigger Mandatory Transfer to the Chief Judge Pursuant to Local Civil Rule 83.6, Rule V(A) .................................................................. 32

IV. Conclusion ........................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 15375 Mem'l Corp.*,
430 B.R. 142 (Bankr. D. Del. 2010) ..................................................29

*Adams v. Ford Motor Co.*,
653 F.3d 299 (3d Cir. 2011)........................................................32, 33

*Ali v. Wetzel*,
No. 11-cv-1812 (ER) (E.D. Pa. Sept. 17, 2019) .........................4

*Arkansas Tchr. Ret. Sys. v. State St. Corp.*,
25 F.4th 55 (1st Cir. 2022)...........................................................20

*Birdsong v. Wetzel*,
No. 11-cv-4249 (JLS) (E.D. Pa. Aug. 12, 2019) .....................4

*Brady v. Maryland*,
373 U.S. 83 (1963)........................................................................16

*Brewer v. District of Columbia*,
891 F. Supp. 2d 128 (D.D.C. 2012) .......................................17, 21

*Brown v. Beard*,
No. 05-cv-4125 (E.D. Pa. June 20, 2018)..........................4, 23, 24

*Carter-Herman v. City of Philadelphia*,
897 F. Supp. 899 (E.D. Pa. 1995) .............................................15

*Commonwealth v. Brown*,
196 A.3d 130 (Pa. 2018) ..........................................................22, 23

*Commonwealth v. Carpenter*,
725 A.2d 154 (Pa. 1999) ...........................................................18

*Commonwealth v. Wharton*,
665 A.2d 458 (Pa. 1995) ...........................................................27

*Commonwealth v. Wharton*,
811 A.2d 978 (Pa. 2002) ...........................................................27

*Crawley v. Horn*,
No. 99-cv-5919 (TJS) (E.D. Pa. Feb. 2, 2015) .........................4

*Douglas v. Donovan*,
704 F.2d 1276 (D.C. Cir. 1983) ..............................................15, 16

*Eagan by Keith v. Jackson*,
   855 F. Supp. 765 (E.D. Pa. 1994) ........................................................................19

*Fletcher v. Horn*,
   No. 10-cv-3188 (RBS) (E.D. Pa. Dec. 10, 2020) ......................................................4

*Fusari v. Steinberg*,
   419 U.S. 379 (1975).............................................................................................17, 21

*Griffin-El v. Beard*,
   No. CIV. A. 06-2719, 2009 WL 2929802 (E.D. Pa. Sept. 8, 2009) .......................15

*Gwynn v. Beard*,
   No. 08-cv-5061 (PD) (E.D. Pa. Dec. 18, 2020) .........................................................4

*Hannibal v. Wetzel*,
   No. 13-cv-619 (GAM) (E.D. Pa. Feb. 4, 2020) ........................................................4

*Hunter v. Earthgrains Co. Bakery*,
   281 F.3d 144 (4th Cir. 2002) .................................................................................28

*Lambert v. Folino*,
   No. 10-cv-1339 (JCJ) (E.D. Pa. Apr. 10, 2018).......................................................4

*Marshall v. Wetzel*,
   No. 03-cv-3308 (JFL) (E.D. Pa. June 6, 2019) .........................................................4

*Martinez v. DelBalso*,
   No. 19-cv-5606, 2021 WL 510276 (E.D. Pa. Feb. 11, 2021) .......................... *passim*

*Mason v. Wetzel*,
   No. 17-cv-3759 (WB) (E.D. Pa. Aug. 7, 2018) ........................................................4

*McCarthy v. Se. Pennsylvania Transp. Auth.*,
   772 A.2d 987 (Pa. Super. Ct. 2001).........................................................15, 16, 19

*Mercy v. Department of Health*,
   645 A.2d 924 (Pa. Commw. 1994) .........................................................................18

*Moran v. Moran*,
   612 A.2d 1075 (Pa. Commw. 1992) ...............................................................17, 18

*Murphy v. Wetzel*,
   No. 99-cv-6362 (RBS) (E.D. Pa. Apr. 7, 2021) ........................................................4

*Office of Disciplinary Counsel v. Price*,
   732 A.2d 599 (Pa. 1999)..........................................................................12, 13, 25

*Pa. Env't Def. Found. v. U.S. Dep't of Navy*,
   No. 94-cv-1486, 1995 WL 56602 (E.D. Pa. Feb. 3, 1995) ....................................19

*Rhedrick v. Option One Morg. Corp.*,
  2015 WL 3871593 (E.D. Pa. June 22, 2015) ..........................................................33

*Sibron v. New York*,
  392 U.S. 40 (1968)..................................................................................................22

*United Nat. Ins. Co. v. R&D Latex Corp.*,
  242 F.3d 1102 (9th Cir. 2001) ..........................................................................28, 29

*United States v. Nixon*,
  418 U.S. 683 (1974)................................................................................................20

*United States v. Tocur Int'l, Inc.*,
  35 F. Supp. 2d 1172 (N.D. Cal. 1998) .............................................................16, 21

*Wharton v. Vaughn*,
  722 F. App'x 268 (3d Cir. 2018) ............................................................................27

*Wharton v. Vaughn*,
  722 Fed. App'x 268 (3d Cir. 2018)..........................................................................23

*Wharton v. Vaughn*,
  No. 13-9002 (3d Cir. May 13, 2016) .......................................................................27

*Whitaker v. Mooney*,
  No. 14-cv-2321 (EGS) (E.D. Pa. June 27, 2018).....................................................4

*Woosley v. U.S. District Court, Dist. of Conn.*,
  2016 WL 4247561 (E.D. Pa. Aug. 10, 2016) .........................................................32

*Young v. United States*,
  315 U.S. 257 (1942)................................................................................................22

**Statutes**

18 U.S.C. § 3771 ...........................................................................................................30

18 U.S.C. § 3771(a) .......................................................................................................31

28 U.S.C. § 2254(a) .................................................................................................22, 23

**Other Authorities**

28 Pa. Code § 401.5 .......................................................................................................18

Black's Law Dictionary (11th ed. 2019).........................................................................18

Federal Rule of Civil Procedure Rule 11 .................................................................28, 29

L. Civ. R. 83.6................................................................................................... *passim*

L. Civ. R. 83.6(IV) ............................................................................................1, 12

L. Civ. R. 83.6(V) ............................................................................................32, 33

Michael L. Temin & Thomas G. Wilkinson, Jr., eds., PENNSYLVANIA ETHICS
    HANDBOOK (5th ed. 2017) ..........................................................................12

Pa. Bar. Ass'n Comm. Leg. Eth. Prof. Resp., Op. 2005-10 (2005), at 2005 WL
    1047078.......................................................................................................17

Phila Bar Ass'n Eth. Op. No. 98-15.......................................................................18

Pa. R.P.C. 3.3 ............................................................................................ *passim*

Pa. R.P.C. 3.3(a)(1) ................................................................................... *passim*

Pa. R.P.C. 3.3(d) ....................................................................................... *passim*

Pa. R.P.C. 3.8 ............................................................................................ *passim*

Pa. R.P.C. 3.8(d) ............................................................................................14, 18

Pa. R.P.C. 8.2(b) ...............................................................................................13

# I.   INTRODUCTION

The Office of District Attorney ("DAO"), and Paul George, Assistant Supervisor, Law Division, Nancy Winkelman, Supervisor, Law Division, and Max Kaufman, former Supervisor of the Federal Litigation Unit (collectively, "Respondents") respectfully submit this Memorandum of Law in Support of the Motion to Cancel the Scheduled Evidentiary Hearing and Dismiss All Allegations of Sanctionable Conduct, or in the Alternative to Transfer the Investigation of Possible Professional Conduct Violations to the Chief Judge of the Eastern District.  This Memorandum addresses the issues raised in the Court's May 11, 2022 Memorandum Opinion (Ex. 1 hereto, ECF 284, the "Opinion") and its May 13 (Ex. 2 hereto, ECF 286) and May 26 (Ex. 3 hereto, ECF 288), 2022 Orders, which are scheduled for a hearing on June 23, 2022 (Ex. 4 hereto, ECF 296).

This Memorandum makes three fundamental points.  First, there is no basis for a determination that the DAO or its lawyers have violated the Rules of Professional Conduct or engaged in any conduct for which they can be sanctioned.  As will be demonstrated below, the Opinion misapprehends applicable law and there is no basis for criticizing Respondents for a breach of their duty of candor with respect to the two issues the Opinion identifies.  Respondents therefore request that the Court's "preliminary conclusion that there has been a breach of [DAO's] breach of their duty of candor" (Op. at 40) be vacated and the proceeding terminated.

Second, if the Court maintains its preliminary conclusions, this Court lacks the power and jurisdiction to proceed and this matter should be referred to the Chief Judge. Local Rule of Civil Procedure 83.6, Rule IV (Standards for Professional Conduct) and Rule V (Disciplinary or Other Proceedings against Attorneys) require that alleged misconduct under the Rules of Professional Conduct raised by a District Judge "shall [be

referred] to the Chief Judge who shall issue an order to show cause." Rule V(A). Thereafter, Rule V requires, the Chief Judge "shall set the matter for prompt hearing before . . . three other judges of this court appointed by the Chief Judge." Rule V(B). The Court's preliminary conclusions, if not vacated, require an immediate referral to the Chief Judge, and this Court does not have the power or jurisdiction to hold the scheduled hearing. (Op. at 40.)

Third, a prospective rule could be adopted that, in a matter where the DAO concedes relief on a petitioner's habeas corpus petition, this Court will expect an explanation of the DAO's reasons for the concession, as well as a statement of the evidence supporting and not supporting the DAO's decision. Such a prospective rule is within the supervisory powers of this Court. However, as explained below, it has not been the custom, practice, or rule of this Court (or any other judge in this District) to require those disclosures with a Notice of Concession, there is no basis to sanction Respondents for not having made such disclosures.

The Opinion, though couched as "preliminary conclusion[s]", sharply accuses the DAO with serious violations of the Rules of Professional Conduct, yet Respondents worked fully within and fully complied with the strictures of federal and state law, as well as their ethical responsibilities. Viewed through the lens of applicable federal and state law, as well as the Pennsylvania Rules of Professional Conduct, the Opinion wrongly criticizes Respondents for not providing information that no controlling court decision says they should have provided, and that this Court had never requested.[1]

---

[1] This is the second time that this Court has issued a public opinion accusing the DAO of a potential breach of the duty of candor. (Op. at 34, n. 14.) In *Martinez v. DelBalso*, No. 19-cv-5606, 2021 WL 510276 (E.D. Pa. Feb. 11, 2021), the Court concluded that there was no basis for sanctioning the DAO. Instead, it announced a

Respectfully, the Court's public airing of its preliminary conclusions not only conflicts with Local Rule 83.6, which provides basic fairness and confidentiality to lawyers accused of misconduct, but it is fundamentally wrong on the merits.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

The Court addressed its professional conduct concerns in its Opinion, which denied petitioner Robert Wharton's habeas claim of ineffective assistance of counsel. The Opinion focuses on statements made and information not disclosed in the DAO's Notice of Concession of Penalty Phase Relief filed on February 6, 2019 ("Notice") and Brief dated April 3, 2019, filed in response to this Court's Memorandum Opinion and Order dated March 4, 2019. *See* Exhibit 5 hereto, ECF 155 (Notice); Exhibit 6 hereto, ECF 162 (DAO April 3, 2019 brief).

The Opinion's preliminary conclusions regarding the DAO's professional conduct are discussed in Part IV, entitled "The District Attorney's Possible Breach of the Duty of Candor." (Op. at 30-40.)  Because the procedural background of Mr. Wharton's habeas corpus petition is known to the Court, this Memorandum highlights only the pleadings and statements germane to the issues raised in Part IV.

### A.   The DAO Notice

The Notice states in relevant part:

> 9.  Following review of this case by the Capital Case Review Committee of the Philadelphia District Attorney's Office, communication with the victims' family, and notice to petitioner's counsel, respondent hereby reports to the Court that it concedes relief on petitioner's remaining claim of ineffective assistance at the second penalty hearing, and does

---

prospective rule, pursuant to its supervisory powers, to address the Court's concerns that the DAO should provide the Court with information regarding parallel state proceedings in habeas corpus petitions.

not contest the grant of a conditional writ of habeas corpus with respect
to petitioner's death sentences.

*See* Ex. 5 (ECF 155).

This Notice was consistent with filings apprising the Court of joint agreement on relief that the DAO has filed in other cases in the Eastern District of Pennsylvania. *See* Ex. 7.[2] By and large, those documents were in the form of joint motions or stipulations that, like the Notice, did not purport to describe in detail the information favoring and disfavoring the reports of the DAO's decision to concede.

### B. The Court's March 4, 2019 Memorandum Opinion and Order

Following the Notice, the Court filed a Memorandum Opinion on March 4, 2019. *See* Exhibit 8 hereto (ECF 160). The Opinion characterized the DAO's position as a "complete reversal of course" in conceding Mr. Wharton's ineffective assistance claim. *Id.* at 2. The Memorandum Opinion did not request an explanation for the concession; it only directed the parties to brief two specific issues: "(A) May a Court Grant Habeas Relief Based Only on the District Attorney's Concession, or Must it Independently Evaluate the Merits of the Conceded Claim?" and "(B) Can an Independent Evaluation

---

[2] Examples filed in other cases include: *Ali v. Wetzel*, No. 11-cv-1812 (ER) (E.D. Pa. Sept. 17, 2019) (ECF 96); *Birdsong v. Wetzel*, No. 11-cv-4249 (JLS) (E.D. Pa. Aug. 12, 2019) (ECF 99); *Brown v. Beard*, No. 05-cv-4125 (GEKP) (E.D. Pa. June 20, 2018) (ECF 69); *Crawley v. Horn*, No. 99-cv-5919 (TJS) (E.D. Pa. Feb. 2, 2015) (ECF 45); *Fletcher v. Horn*, No. 10-cv-3188 (RBS) (E.D. Pa. Dec. 10, 2020) (ECF 97); *Gwynn v. Beard*, No. 08-cv-5061 (PD) (E.D. Pa. Dec. 18, 2020) (ECF 106); *Hannibal v. Wetzel*, No. 13-cv-619 (GAM) (E.D. Pa. Feb. 4, 2020) (ECF 40); *Lambert v. Folino*, No. 10-cv-1339 (JCJ) (E.D. Pa. Apr. 10, 2018) (ECF 91); *Marshall v. Wetzel*, No. 03-cv-3308 (JFL) (E.D. Pa. June 6, 2019) (ECF 171); *Mason v. Wetzel*, No. 17-cv-3759 (WB) (E.D. Pa. Aug. 7, 2018) (ECF 31); *Murphy v. Wetzel*, No. 99-cv-6362 (RBS) (E.D. Pa. Apr. 7, 2021) (ECF 32); *Whitaker v. Mooney*, No. 14-cv-2321 (EGS) (E.D. Pa. June 27, 2018) (ECF 68).

of the Merits of the Remaining Sentencing Claim Be Made on the Current Record?" *Id.* at 7, 12.

Importantly, neither the Memorandum Opinion nor the accompanying Order requested the DAO to explain why it had decided to concede the claim or to provide evidence supporting or not supporting the concession. The Court confirmed this narrow focus in its accompanying Order. *See* Exhibit 9 hereto (ECF 161).[3]

In criticizing the DAO, however, the Opinion stated, "I ordered the parties to provide a *fulsome* explanation justifying the relief requested. (March 4, 2019 Order, ECF No. 160.)" (Op. at 7 (emphasis added).) Respectfully, that is not correct. To the contrary, the March 4, 2019 Order and Memorandum Opinion instructed the parties to address the two discrete issues.

### C. The DAO's April 3, 2019 Brief

On April 3, 2019, the DAO filed a Brief in response to the March 4 Memorandum Opinion and Order. Ex. 6 (ECF 162). It directly addressed the two issues on which the Court had requested briefing. As to the first, the brief stated that "a court may, but is not bound, to accept [the DAO's] concession." *Id.* at 1, 5. As to the second, the brief

---

[3] That Order states:

> [E]ach party may file . . . a brief addressing the issues raised in the accompanying Memorandum Opinion, specifically: (1) whether I have the authority and/or the obligation to grant habeas relief to Petitioner based solely on the District Attorney's concession of the remaining habeas claim, or whether I must independently review, and determine the merits of, that now-conceded claim; and (2) if I must make an independent determination on the merits, whether that is possible on the current record, without conducting the evidentiary hearing as directed by the United States Court of Appeals for the Third Circuit.

stated that "if the record is insufficient to rule on the remaining [ineffectiveness] claim, the Court can conduct an evidentiary hearing." *Id.* at 5.

In criticizing the DAO, the Opinion states, "[t]he District Attorney thus continued to decline or refused to provide me with any evidence of Wharton's positive prison adjustment, the crux of the matter before me, nor did it advise that there was any evidence to the contrary I should consider—e.g., negative prison adjustment." (Op. at 7.) Respectfully, that is not correct. To the contrary, the DAO neither "decline[d]" nor "refused" to provide what the Court requested; the DAO did precisely what was asked of it by directly addressing the two issues posed by the Court.

### D.    The Court's May 11, 2022 Memorandum Opinion

The bulk of the Opinion addresses the merits of Mr. Wharton's habeas corpus claim of ineffective assistance of counsel. (Op. at 1-30.) Part IV begins with the Court's description of the law governing the DAO's duty of candor under Rule 3.3(a)(1) of the Pennsylvania Rules of Professional Conduct. It emphasizes that the DAO's candor obligations were "heightened," as informed by other Rules and law. (Op. at 32.) Specifically, the Opinion finds this heightened duty in Rule of Professional Conduct 3.8 (Special Responsibilities of a Prosecutor), Rule 3.3(d) (governing candor obligations in an ex parte proceeding), the law governing attorneys' obligations to apprise the Court of "significant events that may bear directly on the outcome of litigation" and that this matter concerned "constitutional matters of federalism and Article III jurisdiction, given that these proceedings involve a federal court being asked to interfere with a state criminal prosecution." (Op. at 31-33.)

The Opinion also identifies support for its "heightened" duty in academic literature. In quoting from an article written by Fordham Law Professor Bruce A.

Green, the Opinion says that Prof. Green "aptly stated, 'prosecutors are expected to volunteer relevant factual and legal information in various situations where other lawyers ... might legitimately remain reticent.'" (Op. at 35 (quoting Bruce A. Green, *Candor in Criminal Advocacy*, 44 HOFSTRA L. REV. 1105, 1116 (2016).)[4]

The Opinion states its "preliminar[]y conclu[sion] that on two critical issues in this case, it appears that the District Attorney was less than candid with this Court" and its "preliminary conclusion that there has been a breach of their duty of candor." (Op. at 31, 40.) The first allegation is that the DAO did not inform the Court in the Notice or Brief in response to the Court's March 4, 2019 Memorandum Opinion and Order of facts regarding petitioner's "premeditated escape" from a Philadelphia courtroom after the first penalty hearing that resulted in a sentence of death. In the Court's view, this evidence was relevant to whether counsel was ineffective for not introducing positive prison adjustment evidence at the second penalty hearing and that it should have been disclosed as the DAO "requested that I blindly vacate Wharton's death sentence on the ground that his trial counsel [was ineffective.]" *Id*. at 31.

The second instance of alleged lack of candor was the DAO's "representation to [the Court] that in reaching its decision to concede the death penalty, and asking that [the Court] vacate Wharton's death sentence, the District Attorney had consulted with the victims' family." *Id*. According to the Opinion, the record shows that no contact was

---

[4] Prof. Green submits an Expert Opinion in this case, attached as Exhibit 10. As will be discussed in greater detail below, Prof. Green disagrees with the Opinion's statements about a "heightened" candor duty and concludes "that the Office's lawyers did not violate any ethical duty or engage in sanctionable misconduct . . . ." Ex. 10, at 1.

made with the surviving victim and that "minimal and woefully deficient communication took place with the siblings of the deceased, Bradley and Ferne Hart." *Id*.

The Court raised these professional conduct issues *sua sponte* and did not advise counsel of its ethics concerns in advance of the Opinion. Nor did the Court request briefing on whether there was any basis for even "preliminary" conclusions. Instead, the Court issued its public Opinion, stating in accusatory terms preliminary conclusions that the DAO had violated its duty of candor.

The Opinion recognizes that the DAO should be heard on these issues: "The District Attorney's Office should be given an opportunity to explain or challenge my preliminary conclusion that there has been a breach of their duty of candor. And facts may need to be developed as to who made decisions regarding communications with this Court." (Op. at 40.)

The Court, however, did not follow the mandated process for addressing issues of professional conduct under Local Rule 83.6, which requires referral of alleged violations of the Rules of Professional Conduct to the Chief Judge. Instead, the Court issued its May 13 Order to show cause requiring "that the Supervisor of the District Attorney's Office's Federal Litigation Unit, who signed the February 6, 2019 concession and thereafter submitted, along with Petitioner's counsel, the proposed order suggesting that I grant the petition for habeas corpus vacating the jury's verdict, **shall appear for a hearing on June 2, 2022, at 9:30 a.m. in Courtroom 17-A** to address the concerns raised in my Opinion." Ex. 2 (ECF 286).

We address below the mandates under Rule 83.6 and request immediate referral of this matter to the Chief Judge if the Court continues to believe that the conduct of the DAO merits a hearing or further investigation.

### E. The DAO's Motion and Max Kaufman Affidavit

On May 24, 2022, the DAO filed a motion to excuse Max Kaufman, the Supervisor of DAO's Federal Litigation Unit who signed the Notice, and to continue the hearing. *See* Exhibit 11 hereto, ECF 287 (Motion); Exhibit 12 hereto, ECF 287-1 (Affidavit of Max C. Kaufman, Esq.). The Motion explained that Mr. Kaufman was no longer employed by the DAO. *See* Ex. 11, ¶ 2. It further advised that the persons with relevant knowledge – DAO Law Division Assistant Supervisor Paul George and Law Division Supervisor Nancy Winkelman – would appear at the hearing. *Id*. ¶ 4.

Mr. Kaufman submitted an Affidavit accompanying the motion. *See* Ex. 12. It explained that he was the Supervisor of the DAO's Federal Litigation Unit from September 2017 until February 2021, when he voluntarily left the office. *See id*. ¶ 2. Mr. Kaufman stated his understanding that under the Krasner administration, the DAO created and utilized a Capital Case Review Committee ("Committee"). *Id*. ¶ 5. The Committee's decisions represented the final, authoritative position of the DAO as to the matter, and were not subject to reconsideration by Mr. Kaufman. *Id*. Mr. Kaufman was instructed to advise Mr. George of any pending capital case in which there was set to be active litigation and, to the extent possible, to not proceed with such litigation until Mr. George advised him of the Committee's decision on the matter. *Id*. ¶ 6. With respect to this case, upon remand from the Third Circuit for a hearing, Mr. Kaufman was advised by Mr. George that the Committee decided to concede penalty phase relief. *Id*. ¶¶ 7- 8. He was also advised by the Victim/Witness Coordinator for the Law Division that the Committee's final decision to concede penalty phase relief had been communicated to the victims' family. *Id*. ¶ 9.

Mr. Kaufman, upon being informed of the Committee's decision, drafted and filed the Notice. *Id.* ¶¶ 10, 11. At the time, Mr. Kaufman was "not personally aware of Wharton's attempted escape in 1986, or of the other additional negative prison adjustment evidence," and did not learn of it until after the Attorney General's Office filed an amicus brief in this matter. *Id.* ¶ 11. He did not conduct an independent investigation of the case before filing the Notice because he lacked authority to change the Committee's determination. *Id.* ¶ 11.

Mr. Kaufman confirmed that the reference to communication with the victims' family in the Notice did not state, and was not intended to imply, that every member of the victims' family had been contacted by DAO or that the victims' family agreed with the Committee's decision to concede penalty phase relief. *Id.* ¶ 12. Instead, the reference to communication with the victims' family was meant to "convey that the Committee's decision to concede penalty phase relief was communicated to the victims' family" and to summarize the procedural steps taken by DAO leading to the concession. *See id.*

Mr. Kaufman apologized for the "lack of clarity" of the Notice as it relates to communication with the victims' family. *Id.* Mr. Kaufman also stated that he worked on the DAO's Brief in response to the Court's March 4, 2019 order, which stated that the Court could, but was not required to, accept the DAO's concession of penalty phase relief, and that the DAO had no opposition to the Court holding an evidentiary hearing if it believed the record was insufficient. *Id.* at ¶ 13. Thereafter, Mr. Kaufman stopped working on this matter. *Id.* ¶ 14.

By Order dated May 26 (Ex. 3, ECF 288), the Court granted the DAO's request for a continuance of the hearing, but it denied the DAO's request to excuse Mr. Kaufman,

observing that "[b]ecause Mr. Kaufman submitted and signed the [Notice], Notice of Proposed Order, and a Brief purporting to explain the basis for his concession, and did so acting as a Supervisor for the [DAO], he shall be present to the hearing." Ex. 3, ECF 288 (citing Fed. R. Civ. P. 11(b)(2)-(4)). The Order further directed the DAO to forward a copy of the Order to Mr. Kaufman. *Id.*

The Court has scheduled a telephone conference for June 21, 2022 and a hearing for June 23, 2022. Respondents submit this Memorandum in advance of the June 21 telephone conference.

## III.   ARGUMENT

This Argument proceeds in three parts. Part A summarizes a lawyers' duties of candor under Rule 3.3(a), other Rules of Professional Conduct, and the law addressed by the Court in its Opinion. It demonstrates that the Opinion's finding that the DAO had a "heightened duty" of candor misapprehends the controlling Rules and law.

Part B addresses the two areas in which the Opinion preliminarily concluded that the DAO breached its duty of candor. It demonstrates that neither is a ground to sanction Respondents.

Part C requests, in the alternative, that should the Court maintain its preliminary conclusion, the Court lacks the power and jurisdiction to proceed and should refer this matter to the Chief Judge pursuant to the governing Local Rule.

**A.** **As a Matter of Law, the Opinion Errs in Holding the DAO to a "Heightened" Duty of Candor Rather than the Obligations to be Candid Required by the Pennsylvania Rules of Professional Conduct and Other Law**

      **1.** **Rule 3.3(a) does not create any duty on prosecutors to provide evidence that either supports or could be considered contrary to a notice reporting on its decision to concede a habeas corpus petition.**

The Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania govern in this District. *See* L. Civ. R. 83.6, at Rule IV(B). Rule 3.3(a)(1) states that a "lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made . . ." Rule 3.3(a)(1) has two components: a lawyer's obligation to be truthful (*i.e.*, not make a knowingly false statement of material fact or law) and the obligation to be candid (*i.e.*, knowingly fail to correct a false statement of material fact or law previously made."). *See also* Ex. 10, Green Expert Report, at 4.

A lawyer violates Rule 3.3(a)(1) only if it is demonstrated that the lawyer "knowingly" made a false statement or failed to correct a knowingly false statement. The Rules define "knowingly" to "denote[] actual knowledge of the fact in question. A person's knowledge may be inferred from the circumstances." *See* Pa. R.P.C. 1.0(f); *see also Office of Disciplinary Counsel v. Price*, 732 A.2d 599, 604 (Pa. 1999) (Rule 3.3(a)(1) violation must be "based upon [the attorney's] own knowledge"); *accord* Michael L. Temin & Thomas G. Wilkinson, Jr., eds., PENNSYLVANIA ETHICS HANDBOOK § 7.3d, at 240 (5th ed. 2017) ("RPC 3.3(a)(1) requires that the false statement be 'knowingly' made.").

Rule 3.3(a)(1)'s knowledge requirement also "applies to misleading nondisclosures covered by the rule no less than to affirmative misrepresentations." Ex.

10, Green Expert Report, at 4 (quoting and citing Bruce A. Green, *Candor in Criminal Advocacy,* 44 HOFSTRA L. REV. 1105, 1109-1110 (2016)).[5]

There is no basis for concluding that the DAO violated Rule 3.3(a)(1). Under this Rule, the relevant inquiry is whether the DAO's notice-type pleading (a) knowingly included a false statement of material fact or law in connection with its statement that the DAO decided to concede (Ex. 5, ECF 155, ¶ 9); (b) whether additional information was required to correct in the Notice a previously made knowingly false statement; and (c) whether additional information was later required to correct a knowingly false statement made in the Notice. *See* Pa. R.P.C. 3.3 (a)(1).

Nevertheless, the preliminary conclusions are based on a different set of standards. The Court erred in relying upon a "heightened" DAO candor obligation to preliminarily conclude that DAO violated its duty of candor. And, fundamentally, there is no basis for finding a breach of Rule 3.3(a)(1) because Respondents' ethical

---

[5] The Supreme Court of Pennsylvania has explained, in the disciplinary context, the burden on an entity charging a lawyer with a violation of Rule 3.3(a)(1).

> [T]o establish a prima facie case of making false statements or accusations as set forth in Rules 3.3(a)(1) and 8.2(b), the Office of Disciplinary Counsel bears the initial burden of establishing that an attorney, based upon his own knowledge, made false allegations in a court pleading. This can be accomplished by presenting documentary evidence or testimony from the victims of the allegations stating that the allegations are false. The burden then shifts to the respondent to establish that the allegations are true or that he had an objective reasonable belief that the allegations were true, based upon a reasonably diligent inquiry.

*Price*, 732 A.2d at 604; *id*. at 604-06 (finding Rule 3.3 violation based on, *inter alia*, attorney's false allegations where there was "no evidence establishing a factual basis to support [lawyer's] allegations" and where attorney "deliberately stated as fact things of which he was ignorant").

obligations under that Rule did not require a statement of the evidence that supported or did not support the DAO decision to concede.

### 2. That the DAO lawyers are prosecutors does not support the Opinion's heightened duty rule.

The Opinion found a "heightened" duty in part by drawing upon the duties imposed on prosecutors by Rule 3.8, titled "Special Responsibilities of a Prosecutor." That Rule provides that a prosecutor in a criminal case has a set of specified obligations, including without limitation: refraining from prosecuting a charge the prosecutor knows is not supported by probable cause, R. 3.8(a); making reasonable efforts to assure that an accused is apprised of the right to obtain counsel, R. 3.8(b); not seeking waivers of important pretrial rights from an unrepresented accused, R. 3.8(c); disclosing known exculpatory evidence and mitigating evidence at sentencing, R. 3.8(d); and not making certain extrajudicial communications, R. 3.8(e).[6]

The Opinion refers to Comment 1 of Rule 3.8, which states, "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate." (Op. at 32.) We agree, but the Opinion omits the next sentence of that comment, which places the first sentence in a far different context than a habeas corpus proceeding: "This

---

[6] The closest obligation in this Rule is 3.8(d), relating to the duty to disclose evidence, which requires that a prosecutor in a criminal case shall:

> make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal[.]

responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." Pa. R.P.C. 3.8, cmt. 1.

Nor does the Opinion recognize that "[c]omments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules." Pa. R.P.C., Preamble & Scope, cmt. 14, 21; *see McCarthy v. Se. Pennsylvania Transp. Auth.*, 772 A.2d 987, 992–93 (Pa. Super. Ct. 2001). Instead, comments are "intended as guides to interpretation, but the text of each Rule is authoritative." *Id.* cmt. 21; *Carter-Herman v. City of Philadelphia*, 897 F. Supp. 899, 901 n.2 (E.D. Pa. 1995) (Bartle, J.) (quoting comment); *Griffin-El v. Beard*, No. CIV. A. 06-2719, 2009 WL 2929802, at *5 n.3 (E.D. Pa. Sept. 8, 2009) (Restrepo, J.).

The Opinion also roots its heightened duty for prosecutors in case law, citing *Douglas v. Donovan*, 704 F.2d 1276, 1279 (D.C. Cir. 1983), for the proposition that the DAO has "'special responsibilities to both [the] court and the public at large' and a concomitant obligation to 'ensure that the tribunal is aware of . . . significant events that may bear directly on the outcome of litigation.'" (Op. at 32.) However, in *Douglas* and most other cases where parties were sanctioned for failing to discharge this "special responsibility," there was a failure to disclose facts that could have a material consequence on federal jurisdiction or justiciability. *See Martinez*, 2021 WL 510276, at *12 ("But most candor to the court cases, in which sanctions have been issued, involved lapses pertaining to jurisdiction."). *Douglas* involved the parties' failure to apprise the court of a settlement agreement with "preemptive effect" on the litigation; it had nothing to do with a duty of prosecutors to present evidence to the court. *See Douglas*, 704 F.2d at 1279-80 (citing *Fusari v. Steinberg*, 419 U.S. 379, 390-91 (1975) (Burger,

C.J., concurring)).  We know of no case predicating a prosecutor's heightened duty to require disclosure of evidence in a pleading that supports or does not support the legal position taken by the prosecutor.  The Opinion also cites none.

To be sure, prosecutors must seek justice and not merely convictions.  They have special responsibilities, for example, to disclose all exculpatory information to defendants.  *See, e.g.*, *Brady v. Maryland*, 373 U.S. 83 (1963); Pa. R.P.C. 3.8.  Its obligation to pursue justice is what motivated the DAO's decision to concede the death penalty in this case.  *See generally* Ex. 6, at 1-4.

Thus, the Opinion errs in conflating the prosecutor's special obligation to an *accused* with their heightened candor obligation to the *Court*.  As discussed, Rule 3.8 prescribes the former, not the latter.  Applying this false premise, the Court erred in finding any basis for a heightened duty of candor.

The Opinion further errs as a matter of law in finding a "heightened" obligation from Comment 1 to Rule 3.8.  As noted, a Comment cannot add an obligation, *see* Pa. R.P.C., Preamble & Scope, cmt. 14, 21; *McCarthy*, 772 A.2d at 992-93, and the Opinion selectively quotes only the first sentence of the Comment.

Finally, the Opinion's reference to case law regarding a lawyer's obligation to apprise the Court of "significant events that may bear directly on the outcome of litigation" offers no support for the conclusion that the DAO had here a "heightened duty."[7]  None stand for the proposition that a prosecutor's duty of candor includes an obligation to explain its reasons for a concession or evidence, pro or con, to its position.

---

[7] Op. at 32 (citing *United States v. Nixon*, 418 U.S. 683, 709 (1974); *Douglas*, 704 F.2d at 1279; *United States v. Tocur Int'l, Inc.*, 35 F. Supp. 2d 1172, 1188 (N.D. Cal. 1998);

In sum, the Opinion references no decision interpreting Rules 3.8 or 3.3(a) or (d) holding what the Opinion preliminarily concludes – that there is a candor duty that obligated the DAO to include in its Notice the reasons for its decision to concede and the evidence regarding that concession.

### 3. That the Notice and Proposed Order concede Wharton's habeas penalty phase relief does not render the proceedings *ex parte* and trigger additional candor obligations.

The Opinion also locates a heightened DAO duty of candor in Rule 3.3(d): "In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." (Op. at 32.) Like Rule 3.3(a), Rule 3.3(d) is limited to disclosure of all material facts "known" to the lawyer. *See* Pa. R.P.C. 3.3(d).

By its terms, a lawyer's duties under Rule 3.3(d) are triggered only in an "ex parte" proceeding. Pennsylvania ethics opinions and case law have ruled that a proceeding is not "ex parte" if all parties have been given notice and an opportunity to be heard. *See* Pa. Bar. Ass'n Comm. Leg. Eth. Prof. Resp., Op. 2005-10 (2005), at 2005 WL 1047078 (informal opinion) (Rule 3.3(d) "does not apply" because a "hearing will not be ex parte, even if there is no opponent present, because all parties in interest have been given notice (on three occasions) and all parties are therefore being offered an opportunity to be heard"). *Cf. Moran v. Moran*, 612 A.2d 1075, 1077 (Pa. Commw. 1992) ("The communications were not *ex parte* because all relevant parties were notified of the communications.").

---

*Brewer v. District of Columbia*, 891 F. Supp. 2d 128, 133 n.7 (D.D.C. 2012); *Fusari*, 419 U.S. at 391 (Burger, C.J., concurring).

The Opinion errs as a matter of law in finding support for its "heightened" duty of candor in Rule 3.3(d).  (Op. at 32.)  <u>First</u>, the DAO's concession did not make the habeas corpus proceeding an ex parte proceeding.  Relevant Bar Association ethics opinions hold that whether a proceeding is ex parte turns on whether the opposing party is served and on notice of the proceeding.  *See, e.g.*, Pa. Bar. Ass'n Comm. Leg. Eth. Prof. Resp., Op. 2005-10 (2005), at 2005 WL 1047078 (Rule 3.8(d) does not apply to proceeding where opponent was given notice but did not appear); Phila Bar Ass'n Eth. Op. No. 98-15 (interpreting Pa. R.P.C. 3.5(b) and citing Black's Law Dictionary definition of ex parte, finding that "a communication is *ex parte* if it is made by one party outside of the record without providing notice or opportunity to the other side to contest").

Black's Law Dictionary defines ex parte as "[d]one or made at the instance and for the benefit of one party only, and without notice to, or argument by, anyone having an adverse interest; of, relating to, or involving court action taken or received by one party without notice to the other, usu. for temporary or emergency relief."  *Ex Parte*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Thus, an *ex parte* proceeding is defined as one "in which not all parties are present or given the opportunity to be heard."  *Proceeding, Ex Parte Proceeding*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Pennsylvania courts routinely cite Black's Law Dictionary in interpreting "ex parte" conduct.  *See Commonwealth v. Carpenter*, 725 A.2d 154, 168-69 (Pa. 1999); *Moran*, 612 A.2d at 1077; *Mercy v. Department of Health*, 645 A.2d 924, 928-29 (Pa. Commw. 1994) ("The common and approved usage of '*ex parte*' is communications between the decision-maker and one party outside of the record and where the other party does not have notice or the opportunity to contest.") (interpreting "ex parte" as used in 28 Pa. Code § 401.5).

Accordingly, as a matter of law, this habeas corpus proceeding was not, and did not, become an ex parte proceeding as all parties were present, notified of the Notice and the proceedings, and given an opportunity to be heard. The Notice was served on the petitioner and the Court thereafter appointed the AG's Office as amicus and held adversarial hearings on the petition.

Second, the Opinion's reliance on Comment 14 to Rule 3.3, referencing only the "balance of presentation by opposing advocates" is unavailing. Significantly, that cite omits the part of the comment referring to TRO proceedings, in which the opposing counsel and parties have not received notice and are not present. And even the full text of a comment cannot be a basis for sanctioning a lawyer because it cannot create an obligation. Pa. R.P.C., Preamble & Scope, cmt. 14, 21; *McCarthy*, 772 A.2d at 992-93.

Third, the Opinion's reference to two District Court decisions suggesting that Rule 3.3(d) applies when adverse parties agree on a matter are not controlling or even instructive. These opinions do not reflect the prevailing view of what is an "ex parte proceeding" under Pennsylvania law and are distinguishable.

In *Eagan by Keith v. Jackson*, 855 F. Supp. 765, 790 (E.D. Pa. 1994) (Robreno, J.), the Court found that plaintiff's counsel's fee application was ex parte under the rule because the defendants had no adversarial interest in opposing it. Here, while the decision might support imposing a disclosure obligation on petitioner when the prosecution does not oppose the petition, it does not support imposing an obligation on the DAO, which was in the position analogous to that of adversarially indifferent defendants. *See* Ex. 10, Green Expert Report, at 5 n.8.

In *Pa. Env't Def. Found. v. U.S. Dep't of Navy*, No. 94-cv-1486, 1995 WL 56602 (E.D. Pa. Feb. 3, 1995), Judge Robreno relied on his decision in *Eagan by Keith* in

sanctioning a lawyer for inducing opposing counsel to make a false statement in a joint application for a continuance, which was unwittingly false on the part of opposing counsel, who was deceived along with the court.  The Court took the view that this was an ex parte proceeding because there was a joint application and therefore no adversariness, but the truly sanctionable conduct and justification for discipline was that the lawyer induced another to make a false statement to the court in violation of Rule 3.3(a).  *See also* Pa. R.P.C. 8.4(a) (prohibiting attorney from knowingly inducing another attorney to violate the Rules).[8]

Professor Green agrees.  He recognizes that there "may be room for disagreement" about the scope of Rule 3.3(d), citing Judge Robreno's decisions, but reasons that Rule 3.3(d) does not apply to "a habeas proceeding in which the State decides not to contest the petition," citing to NYC Bar Ass'n Comm. on Prof'l Ethics, Op. 2019-1 (2019).  *See* Ex. 10, Green Expert Report, at 5.

### 4. The Court's Supervisory Powers.

The Opinion also finds a "heightened" candor duty in the "'special responsibilities to both [the] court and the public at large' and a concomitant obligation to 'ensure that the tribunal is aware of . . . significant events that may bear directly on the outcome of the litigation."  (Op. at 32, citing *Douglas*, 704 F.2d at 1279 (nondisclosure of settlement agreement that had "preemptive effect" on litigation); *Nixon*, 418 U.S. at 709 (in

---

[8]  We note that certain jurisdictions more broadly interpret Rule 3.3(d), including in the context of a fee application following a class action settlement.  In *Arkansas Tchr. Ret. Sys. v. State St. Corp.*, 25 F.4th 55, 65–66 (1st Cir. 2022) the court applied Massachusetts Rule of Professional Conduct 3.3(d) which, unlike Pennsylvania Rule 3.3(d), in its comments, specifically notes that the Rule applies to joint petitions.  *See id.* (citing Mass. S.J.C. Rule 3:07, RPC 3.3, cmt. 14A).

connection with claim of executive privilege, generalized discussion of the "need to develop all relevant facts in the adversary system [which] is both fundamental and comprehensive"); *Fusari*, 419 U.S. at 391 (failure of all parties to disclose intervening statutory amendments) (Burger, C.J., concurring); *Brewer*, 891 F. Supp. 2d at 133 n.7 (nondisclosure of dismissal of parallel litigation that impacted res judicata and parallel litigation arguments in motion to dismiss); *Tocur Int'l*, 35 F. Supp. 2d at 1188 (failure to disclose potentially applicable statutory immunity prior to plea agreement); Standards for the Prosecution Function § 3-1.4, "The Prosecutor's Heightened Duty of Candor" (identifying generalized "heightened duty of candor" of prosecutors without reference to any affirmative obligation to disclose facts supporting a concession of habeas relief)).)

As the explanatory parentheticals in the preceding paragraph make clear, those decisions involve very different contexts, including those in which a prosecutor had a duty to disclose to an accused. Significantly, none addressed whether a notice of concession on a legal issue in a habeas (or other) proceeding required the prosecutor to provide reasons that supported or did not support that concession. As this Court has ruled, "most candor to the court cases, in which sanctions have been issued, involved lapses pertaining to jurisdiction." *Martinez*, 2021 WL 510276, at *12. [9]

---

[9] Had the Court issued an order in this case or previously issued a standing order requiring that a notice of concession explain its reasoning in conceding a claim or state supporting and contrary evidence, the DAO would have been obligated to provide that evidence. *See* Ex. 10, Green Expert Report, at 6-7.

The DAO, however, had no such obligation here. No judge in this district had such a standing order and, critically, this Court did not request this information before the Notice was filed, or for that matter, after the filing of the Notice. *See, e.g.*, Exs. 8, 9. To the contrary, the Court's March 4 Memorandum Opinion and Order requested briefing only on two discrete issues involving the scope of its authority and whether to hold a hearing. *See* Ex. 8, at 6; Ex. 9.

**5.** **That this is a federal habeas challenge to a state court judgment does not create a "heightened duty" enhancing the DAO's Rule 3.3 obligations.**

Title 28 U.S.C. § 2254(a) confers jurisdiction on this Court to review the convictions of prisoners convicted of state crimes for violations of federal constitutional law. Section 2254 incorporates principles of comity, including that "state courts should be given the first opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights." *Martinez*, 2021 WL 510276, at *2. While the DAO recognizes that a writ of habeas corpus involves an inquiry of whether the state court conviction complies with the United States Constitution, it does not seek to "evade the strictures of the state judicial system." (Op. at 34, n. 14.) Rather, the DAO views its duty as one not simply to prevail as a litigant, but to abide by and enforce the rights guaranteed by the United States Constitution, and to pursue justice. *See* Ex. 6, ECF 162, at 1-4.

The concession by the DAO that Wharton was entitled to penalty phase relief based on his claim of ineffective assistance of counsel is entitled to this Court's deference, *Young v. United States*, 315 U.S. 257, 258-59 (1942). As the DAO has consistently stated in this proceeding, however, the Court is not required to accept the concession and may independently evaluate the claim. *See, e.g.*, *id.*; *Sibron v. New York*, 392 U.S. 40, 58-59 (1968); *see also* Ex. 6, at 5 (ECF 162).

In *Commonwealth v. Brown*, 196 A.3d 130, 144 (Pa. 2018), the Supreme Court of Pennsylvania also concluded that unless there was a finding of legal error, "neither the parties, by agreement, nor this Court . . . have the power or ability to order that the jury's verdict be commuted to a life sentence without parole." *See also id.* at 194 (observing that, absent legal error, "the result we reach in this particular capital case would be precisely the same if, for example, a district attorney 'stipulated' or 'confessed'

that a life sentence was no longer appropriate for a defendant previously convicted of second-degree murder because the district attorney no longer believed that punishment fit that crime") (Dougherty, J., concurring).

Importantly, *Commonwealth v. Brown* does not support the preliminary conclusions that the DAO had a duty of candor requiring it to provide the reasons for its concession in the Notice. (Op. at 33-34.) The Notice did not assert that the Commonwealth's stipulation as to the ineffective assistance of counsel was controlling on this Court. Rather, it reported the DAO's position on the constitutional question and, as DAO expressly stated in briefing on the issue, Ex. 6, ECF 162, at 5, the Notice left to the Court the ultimate decision on the proffered relief following a hearing that was anticipated by the Third Circuit in its remand of this case, see *Wharton v. Vaughn*, 722 Fed. App'x 268 (3d Cir. 2018).

Further, *Brown* does not preclude a prosecutor from changing position on a legal issue in post-conviction or habeas proceedings. That is a practice engaged in by prosecutors and other governmental officials on a regular basis. And there is no mandate in *Brown* affirmatively requiring disclosure of evidence relevant to a prosecutor's decision to concede.

Finally, the Opinion errs in asserting that the DAO is "attempt[ing] to use this Court to evade the strictures of the state judicial system, while providing incomplete information and asking that I grant relief before hearing evidence, based on its concession alone." (Op. at 34, n.14.) The DAO did not request this Court "to evade" anything; rather, the DAO expected that the Court apply federal habeas corpus law to review Mr. Wharton's state court proceedings pursuant to 28 U.S.C. § 2254(a). *See generally* Ex. 6.

To the degree that the Opinion concludes that *Brown* or any federalism principles create an enhanced duty of candor where the federal court is asked to review a state criminal conviction, it errs as a matter of law. Neither those decisions nor the strictures of Rule 3.3 so provide; nor are we aware of any law, rule, or decision so holding.

**B.** **The DAO Did Not Violate any Ethical Duty and There Is No Basis for Sanctions under the Rules of Professional Conduct or Otherwise**

The Opinion preliminarily concludes that DAO "was less than candid" in two areas, charging:

> (1) The Notice did not cite evidence that petitioner made an escape attempt that could have been introduced at the second penalty hearing; and

> (2) The Notice states that the DAO was not contesting the grant of a conditional writ of habeas corpus following its "communication with the victims' family."

(Op. at 31.)

Neither charge has any merit.

**2.** **The Non-Disclosure of the Escape Attempt Did Not Violate an Ethical Duty.**

The starting (and ending) point for evaluating the DAO's candor is what the Notice (Ex. 5, ECF 155) states. Specifically, paragraph 9 reports the DAO's legal conclusion to concede relief on petitioner's remaining *Strickland* claim as follows:

> Following review of this case by the Capital Case Review Committee of the Philadelphia District Attorney's Office, communication with the victims' family, and notice to petitioner's counsel, respondent hereby reports to the Court that it concedes relief on petitioner's remaining claim of ineffective assistance at the second penalty hearing, and does not contest the grant of a conditional writ of habeas corpus with respect to petitioner's death sentences.

This paragraph summarizes certain steps the DAO took prior to filing the concession and reported, in notice-pleading fashion, the conclusion that DAO would concede relief. There is nothing remotely sanctionable about the Notice.

### a) The Notice does not contain any false or misleading statement about Mr. Wharton's escape attempt and the Opinion provides no basis for concluding otherwise.

The Notice was simply that – a notice setting forth the legal position of the DAO and stating certain steps it took in reaching that position. The Notice says nothing about any evidence concerning the reasons for the DAO's decision and, therefore, it cannot be criticized for making a false statement of fact. Although the Opinion does not specifically level that criticism, it faults that the Notice did not volunteer evidence about petitioner's escape attempt. (Op. at 31.) Regardless, there is sanctionable misconduct only if it was deliberately misleading for the DAO to have not referenced such information in the Notice. That cannot be the case here, as the Notice included no evidence at all. It would have been different if the Notice had been selective – and thereby misleading – in including only some evidence. But the Notice did not.

These facts should end the inquiry on this issue.

Any violation of Rule 3.3 must be predicated on a finding that the DAO "knowingly" *i.e.,* "based upon [the attorney's] own knowledge," made a false statement or failed to correct a false statement. *See* Pa. R.P.C. 1.0(f), 3.3(a)(1), 3.3(d); *see also Price*, 732 A.2d at 604. There is no basis for concluding such a knowing violation.

<u>First</u>, as Max Kaufman, the DAO lawyer who signed the Notice, explained in his Affidavit, he did not intend to deceive the Court in omitting reference to Wharton's escape attempt from the Notice. Mr. Kaufman, who drafted and signed the Notice, was

not aware of the escape attempt at the time he filed it.  *See* Ex. 12, ECF 287-1, at ¶¶ 10-11.  He did not learn of it until it was called to the Court's attention by the Attorney General several months later.  *Id.* at ¶ 11.

Second, neither Mr. Kaufman nor the other Respondents (including Mr. George, who acknowledged at the evidentiary hearing that the *DAO* was aware of petitioner's escape attempt at the time it filed the Notice) would reasonably have known that the Court expected the Notice to include factual information contrary to petitioner's *Strickland* claim.  *See* Ex. 10, Green Expert Report, at 3.  That is, they had no reason to think the Court would require them to include record or extra-record evidence relating to the escape attempt.  *See id.*

The DAO has submitted similar filings to other courts in this District noticing or moving on a joint agreement on relief.  *See generally* Ex. 7.  No judge had previously expressed an expectation that a notice of concession should include the information that the Opinion criticizes the DAO for not disclosing, *i.e.*, evidence supporting and not supporting a finding of ineffective assistance of counsel or other constitutional violation. Further, the DAO is unaware of any decisions issued by courts outside the jurisdiction that announced this sort of expectation.  *See* Ex. 10, Green Expert Report, at 3; *see also* Exhibit 13 hereto, ECF 278, DAO Post Hearing Br. at 22 & App. D thereto (citing other decisions in which concessions were accepted by courts without full explanations of the facts supporting/weighing against the concession); Ex. 6, ECF 162, at 4-5.

Third, that the DAO had no basis for knowing that this Court expected more in the Notice is confirmed by the Court's March 4, 2019 Order and its accompanying Memorandum Opinion.  Critically, upon receiving the Notice, the Court did not request any of the evidence that the Court now faults – in the form of an allegation of serious

ethical violations – the DAO for not having provided.  Nor could the DAO have reasonably anticipated that the Court would expect such information, much less that not doing so would be considered a sanctionable offense.

Fourth, it is telling that the information relating to the escape attempt was not cited or used by the DAO prosecutors who had previously sought to secure and maintain the death penalty.  To be clear, if it was not considered relevant or persuasive by the prosecutors who this Court has described as "zealous[]" in their pursuit and defense of the death penalty in this case (Op. at 2, 34), it is hard to see why it is relevant now, and even more difficult, if not impossible, to assert that the DAO knowingly violated Rule 3.3(a) in not disclosing this evidence in its Notice.  *See Commonwealth v. Wharton*, 811 A.2d 978, 988-89 (Pa. 2002) (referencing petitioner's in-prison discipline issues but not the escape attempt); *Commonwealth v. Wharton*, 665 A.2d 458, 461 (Pa. 1995) (noting petitioner's other convictions without specific reference to the escape attempt); *Wharton v. Vaughn*, 722 F. App'x 268, 283-84 (3d Cir. 2018) (remanding for further proceedings relating to the prison adjustment issue with no mention of escape attempt).[10]

---

[10] None of the DAO's submissions in this matter opposing petitioner's habeas claims before the Notice of Concession, or in its 2016 brief for the Court of Appeals, mention the escape attempt.  *See, e.g.*, ECF 36, at 56-62 (Sept. 8, 2004) (addressing petitioner's prison records claim without mentioning the escape attempt); ECF 62, at 20-27 (Jan. 12, 2016) (addressing petitioner's prison records claim without mentioning the escape attempt); ECF 88 (Mar. 12, 2009) (addressing petitioner's *Batson* claim); ECF 94 (July 14, 2009) (same); ECF 125 (May 11, 2012) (no mention of escape attempt or claim that counsel was ineffective for failure to introduce prison adjustment records); *see also* Brief for Appellee, *Wharton v. Vaughn*, No. 13-9002, at 127-47 (3d Cir. May 13, 2016) (analyzing prison adjustment evidence without citing escape attempt).

Professor Green's Report provides a concise summary of the correct standard: "lawyers should not be subject to sanction for failing to disclose facts to a court where, as here, the lawyers did not intend to mislead the court and were unaware that the court expected disclosure in the situation or that the court would be misled by the lawyers' silence." *See* Ex. 10, Green Expert Report, at 4. The Notice's non-disclosure of extra-record evidence concerning the escape attempt is not a violation of Rule 3.3 or otherwise sanctionable. *See id.* at 2-4 (there was no violation of Rule 3.3(a)); *id.* at 5-6 (no Rule 3.3(d) violation).

As a final point, we address the Court's Order of May 26 (ECF 288), which referenced Rule 11, Federal Rules of Civil Procedure, with respect to the Notice signed by Mr. Kaufman. As with Rule 3.3(a), there is nothing false or misleading about the statements in the Notice and there was no violation of any Pennsylvania Rule of Professional Conduct or other ethical duty. Mr. Kaufman was not a part of the decision-making process that led to the Notice, and he signed the Notice on the direction of his supervisors, and reasonably relied on their directive. The Notice was a statement of the DAO's legal position and nothing more. He therefore had no obligation to investigate the facts supporting or not supporting its position; his obligation was to determine whether that was in fact the DAO's decision.

It is important to note as well that the Rule 11 standard has been "applied with particular stringency" when it is raised by a court, *sua sponte*. *See United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115–16 (9th Cir. 2001) (Rule 11 "applied with particular stringency" when raised *sua sponte* because there is no "safe harbor" in the Rule allowing lawyers to correct or withdraw their challenged filings); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) ("Importantly, a sua sponte

show cause order deprives a lawyer against whom it is directed of the mandatory twenty-one day 'safe harbor' provision . . . In such circumstances, a court is obliged to use extra care in imposing sanctions on offending lawyers."); *accord In re 15375 Mem'l Corp.*, 430 B.R. 142, 150 (Bankr. D. Del. 2010) ("Like courts' *sua sponte* sanctions under FRCP 11, requests [for Bankruptcy] Rule 9011 sanctions for filing a petition require heightened scrutiny. In *sua sponte* circumstances . . . there is no 'safe harbor' in the rule allowing lawyers to correct or withdraw their challenged filings. Courts will therefore impose 'sua sponte sanctions only in situations that are akin to contempt of court.'") (assessing bankruptcy Rule 9011 sanction issue and citing *United Nat'l Ins. Co.*, 242 F.3d 1102) (punctuation omitted).

### 3.     The Notice's Statement Concerning Communication with the Victims' Family Did Not Violate Any Ethical Duty.

The Opinion also preliminarily faults the DAO for including in the Notice that the DAO communicated with the victims' family: "Having provided no details regarding the victims' family's position on this significant concession, where the facts were so heinous and the most serious penalty—death—had been imposed, the unmistakable impression conveyed by the District Attorney's concession was that the victims' family had agreed with the District Attorney's change of position. But this was not the case." (Op. at 36.)

There is no basis for finding that the DAO violated its duty of candor regarding the DAO's disclosure about its communication with the victims' family. First, that the Court was left with the "unmistakable conclusion" that the "victims' family had agreed with the District Attorney's change of position" is a belief, no doubt strongly held by the Court. But the Court's conclusion was not reasonably foreseen or anticipated at the time the Notice was filed. The Notice did not report any information as to the family's

position on the legal issue or on the sentence generally. Indeed, as we show below, the family's views on the constitutional issue before the Court are entirely irrelevant to its decision on the merits.

Mr. Kaufman makes clear that no one realized that the phrase might be misleading, much less intentionally misleading, to the Court. Ex. 12, ECF 287-1, at ¶ 12; Ex. 10, Green Expert Report, at 7-8. When Kaufman filed the Notice, he meant only to communicate just what the Notice said: that the DAO's decision to concede penalty phase relief had been communicated to the victims' family, which he believed to be the case. Ex. 12, ECF 287-1, at ¶ 12. He did not state, and did not intend to imply, that every member of the victims' family had been contacted or that the family agreed with the decision.[11] *See id.* As Professor Green concludes, "[t]here is no reason to believe that he or anyone else in the Office anticipated the Court's reading of the phrase and its significance to the Court. And Kaufman apologized in his affidavit for the Notice's lack of clarity." Ex. 10, Green Expert Report, at 8.

Second, whatever the merits of the Court's conclusion that the DAO did not adequately communicate with the victims' family or whether it conformed with the Victims' Rights Statute, 18 U.S.C. § 3771, the law is clear that the family's views cannot, as a matter of law, be considered on the merits of a *Strickland* claim. That claim must be resolved on the effectiveness or ineffectiveness of Mr. Wharton's counsel. Put

---

[11] As of September 2021, when the Office filed the post-hearing brief, the DAO understood that its representative had contacted a family member who said that he did not oppose penalty phase relief and who said that he would inform other surviving victims, which the representative later assumed he had done. *See* Exhibit 14 hereto, ECF 176 (Affidavit of Heather Wames); Ex. 13, ECF 278, Commonwealth Post-Hearing Brief, at 23.

another way in the context of this ethics matter, the view that the DAO should have had more or different communications with the victims' family pursuant to the Victims' Rights Statute, 18 U.S.C. § 3771(a) (a view which in retrospect we do not challenge, *see* Op. at 3, quoting Post-Hearing Brief at 23), does not render the statement in the Notice false or misleading. On its face, the Notice was silent on what was communicated and what the reaction was; it was thus true. The Notice did not state and was not intended to suggest that the victims' family's views were supportive of the decision to concede the death penalty. Having said that, Mr. Kaufman has apologized to the Court for any lack of clarity in the Notice. Ex. 12, ¶ 12. The DAO agrees with his statement.

Additionally, victim family communications are not "material" within the meaning of Rule 3.3(a), and therefore cannot be a basis for a Rule 3.3 duty of candor violation. *See* Pa. R.P.C. 3.3(a) (stating that a false or misleading statement must concern a "material" fact); s*ee also Martinez*, 2021 WL 510276, at *12 ("I agree . . . that the issue of materiality should be considered when determining whether a duty of candor has been violated.").

Finally*,* the Opinion mistakenly states that the Notice reported multiple "communications" with the victim's family. (*See* Op. at 8 (twice), 35-36, 39.) It appears that the Court believes that the Notice improperly exaggerated the extent of its communications. That is not so, as the Notice used the singular "communication," not plural, in characterizing the DAO's communication with the victims' family. Ex. 5, ECF 155, at ¶ 9; *supra* Part II.A.

**C.    The Opinion's "Preliminary Conclusion" of Breach of an Ethical Duty May Trigger Mandatory Transfer to the Chief Judge Pursuant to Local Civil Rule 83.6, Rule V(A)**

For the reasons stated above, the DAO requests that the Court terminate its ethics inquiry, vacate Part IV of its Opinion and cancel the scheduled hearing.  If the Court disagrees, Local Civil Rule 83.6, Rule V(A), requires this Court to refer the matter to the Chief Judge on the allegations of the DAO's breach of the duty of candor or other ethical violations.

Rule V(A) states:

> When the misconduct or other basis for action against an attorney (other than as set forth in Rule II) or allegations of the same which, if substantiated, would warrant discipline or other action against an attorney admitted to practice before this court shall come to the attention of a Judge of this court, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by these Rules, the judge shall refer the matter to the Chief Judge who shall issue an order to show cause.

L. Civ. R. 83.6, at V(A).

This Rule requires that the allegations in the Opinion be referred to the Chief Judge.  If there were a hearing on an order to show cause, the Rule establishes safeguards, including review by three judges and confidentiality of the panel's findings and the attorney's objections in matters involving serious charges of ethical violations. Rule (V)(E).  To date, however, Respondents have been denied these mandatory protections.  *See Adams v. Ford Motor Co.*, 653 F.3d 299, 305-08 (3d Cir. 2011) (interpreting analogous D.V.I. Rule and vacating finding of ethical violation on that and other grounds).[12]

_____

[12] Judges in this District have referred matters to the Chief Judge of this Court pursuant to this Local Rule.  *See, e.g.*, *Woosley v. U.S. District Court, Dist. of Conn.*,

Accordingly, while the DAO is hopeful that in light of the preceding sections, as well as Professor Green's expert report, that the Court will vacate Part IV of its Opinion and terminate these ethics proceedings. If it does not, the Opinion triggers the mandatory referral to the Chief Judge. *See* L. Civ. R. 83.6, Rule V(A).

IV. <u>CONCLUSION</u>

For the foregoing reasons, Respondents respectfully request that the Court issue an Order (a) finding that the DAO and its attorneys did not violate any ethical duty or engage in sanctionable misconduct; (b) finding that the matters raised in the Opinion did not satisfy the requirements of Local Rule of Civil Procedure 83.6, including Rule V, and therefore did not require transfer to the Chief Judge; (c) vacating the May 13, 2022 Order (ECF 286) and pages 30-40 of its May 11, 2021 Memorandum Opinion (ECF 284), which note a "possible breach of the duty of candor;" and (d) cancelling the June 23 hearing; or, in the alternative, enter an Order transferring this matter to the Chief Judge pursuant to Local Rule 83.6, Rule V(A).

---

2016 WL 4247561, at *12 (E.D. Pa. Aug. 10, 2016) (referring attorney's "repeated abuse of the legal system" to Chief Judge under this Local Rule); *cf. Rhedrick v. Option One Morg. Corp.*, 2015 WL 3871593, at *4-5 (E.D. Pa. June 22, 2015) (finding that attorney had not been *de facto* sanctioned, in part because there were no factual findings of misconduct per Local Rule 83.6(V)). In *Adams*, 653 F.3d at 305-308, in vacating a magistrate judge's imposition of sanctions in the District Court, the Third Circuit ruled that "the magistrate judge should have referred the allegations of misconduct to the Chief Judge" consistent with the local rule. *Adams*, 653 F.3d at 308.

Dated: June 17, 2022

Respectfully submitted,

KAIRYS, RUDOVSKY, MESSING,
FEINBERG & LIN

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

By: */s/ David Rudovsky*
    David Rudovsky (No. 15168)
    drudovsky@krlawphila.com

By: */s/ John S. Summers*
    John S. Summers (No. 41854)
    jsummers@hangley.com
    Andrew M. Erdlen (No. 320260)
    aerdlen@hangley.com

718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400

One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
(215) 568-6200

*Counsel for the District Attorney's Office*

**CERTIFICATE OF SERVICE**

I, John S. Summers, hereby certify that on June 17, 2022, I caused the foregoing

Motion to Cancel the Scheduled Evidentiary Hearing and Dismiss All Allegations of

Sanctionable Conduct of the District Attorney's Office or, in the Alternative, to Transfer

the Investigation of Possible Professional Conduct Violations to the Chief Judge of the

Eastern District to be served on the following counsel of record via ECF:

<table>
<tr>
<td>

James P. Barker<br>
Cari Mahler<br>
Pennsylvania Office of Attorney<br>
General<br>
16th Floor-Strawberry Square<br>
Harrisburg, PA 17120

</td>
<td>

Elizabeth McHugh<br>
Claudia Van Wyk<br>
Federal Community Defender Office<br>
Capital Habeas Corpus Unit District<br>
Attorney's Office<br>
601 Walnut Street, Suite 545 West 3<br>
South Penn Square<br>
Philadelphia, PA 19106

</td>
</tr>
</table>

*/s/ John S. Summers*
John S. Summers

*Counsel for the District Attorney's Office*