# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ROBERT WHARTON, | CIVIL ACTION |
| Petitioner, | No. 2:01-cv-06049-MSG |
| v. | |
| DONALD T. VAUGHN, | CAPITAL CASE |
| Respondent. | |

## SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO THE IMPOSITION OF ANY SANCTIONS

David Rudovsky (No. 15168)

KAIRYS, RUDOVSKY, MESSING,
FEINBERG & LIN
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400
drudovsky@krlawphila.com

John S. Summers (No. 41854)
Andrew M. Erdlen (No. 320260)
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
(215) 568-6200
jsummers@hangley.com
aerdlen@hangley.com

*Counsel for the Philadelphia District Attorney's Office*

# TABLE OF CONTENTS

I.    Background ................................................................................................ 2

II.    Argument ................................................................................................... 6

      A.    The Court May *Sua Sponte* Find a Violation of Rule 11 Only on a Very High Threshold Akin to Contempt ............................................................ 6

      B.    There is No Basis for Finding Any Violation of Rule 11 or Other Obligation Concerning the Escape Evidence or Victim Family Communication............................................................................................ 8

      C.    There is No Basis for Finding Any Violation of Rule 11 or Other Obligation Concerning the Court of Appeals Remand ............................... 11

III.    Conclusion ............................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 15375 Mem'l Corp.,*
   430 B.R. 142 (Bankr. D. Del. 2010) ................................................................. 7

*Hockley by Hockley v. Shan Enterprises Ltd. P'ship,*
   19 F. Supp. 2d 235 (D.N.J. 1998) ..................................................................... 7

*Hunter v. Earthgrains Co. Bakery,*
   281 F.3d 144 (4th Cir. 2002) ............................................................................ 7

*Kaplan v. DaimlerChrysler, A.G.,*
   331 F.3d 1251 (11th Cir. 2003) ......................................................................... 7

*Mary Ann Pensiero, Inc. v. Lingle,*
   847 F.2d 90 (3d Cir. 1988) ................................................................................ 8

*MHC Inv. Co. v. Racom Corp.,*
   323 F.3d 620 (8th Cir. 2003) ............................................................................ 7

*In re Pennie & Edmonds LLP,*
   323 F.3d 86 (2d Cir. 2003) ................................................................................ 7

*TEGG Corp. v. Beckstrom Elec. Co.,*
   No. CIV.A. 08-435, 2008 WL 5216169 (W.D. Pa. Dec. 10, 2008) ................ 8

*United Nat. Ins. Co. v. R&D Latex Corp.,*
   242 F.3d 1102 (9th Cir. 2001) .......................................................................... 7

*Wharton v. Vaughn,*
   722 F. App'x 268 (3d Cir. 2018) ..................................................... 1, 4, 11, 12

*Williams v. Beard,*
   637 F.3d 195 (3d Cir. 2011) ............................................................................ 12

**Other Authorities**

E.D. Pa. Local Civ. R. 83.6(V) ............................................................................ 2, 13

Fed. R. Civ. P. 11 .......................................................................................... *passim*

Pa. R.P.C. 3.3(a) ................................................................................................. 1, 2

Respondents The Office of District Attorney ("DAO"), Paul George, Max Kaufman and Nancy Winkelman submit this Supplemental Memorandum in Opposition to the Imposition of Any Sanctions to address two sets of issues raised by the Court at the June 23, 2022 Hearing and in its email dated June 28, 2022 to the Office of Attorney General (ECF 311). *First,* the Court questioned Respondents at the hearing about their investigation of the facts concerning (a) Mr. Wharton's previous escape attempt and (b) the victim family member's views on the DAO Notice of Concession. This issue was also the subject of the Court's June 28 email. *Second*, the Court questioned Respondents on the issue of whether they failed to comply with the Third Circuit's decision and Order in *Wharton v. Vaughn*, 722 F. App'x 268 (3d Cir. 2018).

Respondents' Motion to Cancel and Dismiss (ECF 300) addressed the first of these issues in the context of the Court's preliminary finding that the DAO had violated its duty of candor under Rule 3.3(a), as well as the law governing prosecutors' general obligations, the Court's supervisory powers and habeas corpus, but we did not fully address any Rule 11 implications. *See* ECF 300-1, at 28-29. The second issue was first presented to Respondents by the Court at the hearing.

This Supplemental Memorandum demonstrates that there is no basis for sanctioning Respondents for their conduct regarding any of these issues, including that they engaged in no alleged failure to investigate under Rule 11 or otherwise.

## I.   <u>BACKGROUND</u>

The Court's June 21 Order stated that it was holding "under advisement" Respondents' arguments presented in its Motion to Cancel and Dismiss. (ECF 304).[1]  In explaining why the Court was not referring the matter to the Chief Judge pursuant to Local Rule 83.6(V), the Court explained that any referral would be premature because the Court's May 11 Memorandum Opinion "raised concerns that the District Attorney's Office may have litigated the case in a way that threatened to undermine the limited role federal habeas corpus jurisdiction is intended to play in the state criminal justice system." (ECF 304).[2]

The Court opened the hearing, stating "[w]e are here for an exploration of a concern I have raised regarding the Philadelphia District Attorney's Office litigation conduct in this matter, as it relates to their obligation to be candid with the Court, pursuant to their ethical obligations, and also whether, separately, there should be any type of sanctions levied, based on my independent authority to oversee the case." June 23, 2022 Hearing Transcript ("Tr."), at 3:18-24.[3]

_____

[1] The Motion to Cancel and Dismiss addressed whether Respondents violated a duty of candor as expressed by the Court in its May 11, 2022 Memorandum Opinion.  It also argued in summary fashion that there was no basis for concluding that Respondents had violated Rule 11 for some alleged failure to investigate.  ECF 300-1, at 28-29.

[2] We again assert that if the Court still believes that there was any sanctionable misconduct by Respondents under Rule 3.3(a) or Rule 11 that the matter must be referred to the Chief Judge under the Local Rule 83.6(V).  Surely, if after the hearing and the Court's email exchange with the Attorney General it is of the opinion that sanctions are warranted, this proceeding is far beyond the threshold for referral.

[3] Respondents objected to the hearing based on the arguments in Respondents' Motion to Cancel and Dismiss (ECF 300), the changing nature of the scope of the hearing, the Court's interpretation of the Third Circuit's opinion, and the privileged deliberations of the DAO's Capital Case Review Committee.  _See, e.g._, Tr., at 6:2-12:14.

At the hearing, the Court asked Respondents questions regarding the investigation of Mr. Wharton's previous escape attempt and the DAO's communications with the victims' family.  Ms. Winkelman, Mr. George, and Mr. Kaufman each testified that they were not personally aware of Mr. Wharton's escape attempt at the time of the Notice of Concession or on the filing of the DAO's April 3, 2019 brief.  *See* Tr., at 49:25-50:5 (Ms. Winkelman); *id*. at 61:22-25, 71:20-72:18 (Mr. George); *id*. at 85:8-12, 92:1-8 (Mr. Kaufman).  They testified that the decision to concede relief was made by the District Attorney on a recommendation of DAO's Capital Case Review Committee.  *See id*. at 24:7-17 (Ms. Winkelman), 42:13-16 (Ms. Winkelman), 60:6-8 (Mr. George), 65:23-66:5 (Mr. George).  They further testified that Mr. George advised Mr. Kaufman of the Committee's decision and Mr. Kaufman submitted the Notice based on that decision.  Mr. George reported to Mr. Kaufman the Committee's decision, as he had done in other matters.  *Id*. at 77:21-78:4; *see also id*. at 50:24-51:13 (Ms. Winkelman).  Mr. George testified that he did not believe that the Committee was aware of the escape evidence. *Id*. at 62:1-5, 62:23-63:19.

Respondents testified that they each learned of the escape evidence when the Attorney General filed its brief and not before.  *Id*. at 39:24-40:16 (Ms. Winkelman); 72:16-21 (Mr. George); 92:1-12 (Mr. Kaufman).  Ms. Winkelman and Mr. Kaufman also testified as to their knowledge of DAO communications with the victims' family.  *Id*. 46:17-48:21, 92:16-93:22.  Ms. Winkelman stated that the DAO, through Heather Wames, the Victim Witness Coordinator, communicated with the apparent "patriarch" of the Hart family, who served as a spokesperson for the family.  *Id*. at 47:3-12.  He did not oppose the concession and stated that Wharton should never be released from prison, and Ms. Wames invited him to give her contact information to the other family

- 3 -

members and the surviving victim and encouraged them to contact her.  *Id.* at 39:13-17.
Mr. Kaufman explained that he had communications with Ms. Wames about this
matter, but he could not specifically recall what was said, except to note whenever the
DAO filed a notice of concession, he would always confirm that there was
communication with the victims' family.  *See id.* at 92:16-93:22.

Mr. George stated that that the District Attorney's Office *as an entity* was aware
of the escape attempt because it had prosecuted Wharton, *id.* at 74:2-9, 76:3-8, 76:24-
77:14, but he was not *personally* aware of that fact at the time of the case review.  *Id.* at
61:22-25, 71:20-72:18.  This testimony was consistent with his statement at the
evidentiary hearing.

In the email dated June 28 to counsel for *amicus* Attorney General's Office, the
Court asked, "how and when it learned of Wharton's 1986 escape" and "whether, aside
from docketed briefs, this information was provided to the District Attorney's Office."
ECF 311.  Counsel responded that it "started from scratch to uncover as much
information as possible about Wharton's time in prison and criminal history" and
obtained records from the Pennsylvania Department of Corrections that referenced the
escape attempt.  *Id.*  The AG's Office did not share this information with DAO before it
filed its brief.  *Id.*

On the issue of the Court of Appeals' decision and remand order in *Wharton v.
Vaughn*, 722 F. App'x 268 (3d Cir. 2018), the Court stated its understanding that the
Third Circuit had required an evidentiary hearing on petitioner's remaining claim.  "I
read [the opinion] to say the hearing must include not only positive mitigation evidence
of Prison adjustment, but also negative evidence."  Tr., at 16:10-13.  The Court also
stated that the opinion discussed how

>the Commonwealth might have countered [petitioner's expert testimony] with other evidence holding a contrary opinion. To-date, though, the Commonwealth has yet to proffer any such testimony . . . [this] further confirms my view that you [DAO] were obligated to present both evidence in favor of Mr. Wharton – and by the way, you are the Prosecutor.  We have a Defense Attorney very capable of doing that.  But it was expected that you would present not only favorable evidence, but evidence that would not be favorable.  And you withheld the fact that Mr. Wharton violently escaped from a City Hall Courtroom.

*Id.* at 16:14-17:1.

With this background, the Court questioned Respondents as to whether they agreed that the Third Circuit's opinion directed that the evidentiary hearing take into account anti-mitigation evidence and, if it did, why Respondents did not provide information regarding the escape to the Court.  *See id.* at 16:25-17:2, 20:19-21:4, 23:6-9, 25:6-10, 25:16-20, 26:10-12 (Ms. Winkelman); 63:20-64:23, 65:3-66:5 (Mr. George); 94:23-95:7, 96:9-18 (Mr. Kaufman).  Ms. Winkelman testified (correctly) that she did not believe there was anything in the Third Circuit opinion about the escape.  *Id.* at 43:4-7.  Nor were there any references to the escape attempt in the Pennsylvania Supreme Court's decisions regarding Mr. Wharton's PCRA claim or in the DAO's submissions in this matter prior to the Notice of Concession.

## II.   <u>ARGUMENT</u>

Whether as a matter of the Rules of Professional Conduct, case law governing the Court's supervisory powers or habeas corpus, or Rule 11, it appears that the Court has concerns regarding both the duty of candor and the duty to investigate.  At the hearing the Court directed questions on the duty to investigate and on its additional concern that the DAO had improperly sought to undermine the limitations on federal habeas remedies on a review of a state conviction.  Since these issues could implicate Rule 11, we focus on that Rule.

### A.   **The Court May *Sua Sponte* Find a Violation of Rule 11 Only on a Very High Threshold Akin to Contempt**

Rule 11(b)(2) states:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Where a Rule 11 issue is raised *sua sponte* by a court, it must be applied with particular care and stringency because there is no safe-harbor provision (as when sanctions are sought by a party) that permits withdrawal of the challenged filing.  *See* Memorandum in Support of Motion to Cancel and Dismiss (ECF 300-1), at 28 (collecting cases and authorities).

For the Court to sanction Respondents on its own motion, Respondents' conduct must be "akin to a contempt of court."  *See* 1993 Adv. Comm. Note, Fed. R. Civ. P. 11(b)

and (c); *see also Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) ("The initiating court must employ . . . a higher standard ('akin to contempt') than in the case of party-initiated sanctions.") (reversing sanctions); *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89–90 (2d Cir. 2003); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002); *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 623 (8th Cir. 2003); *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115–16 (9th Cir. 2001).

 Although the Court of Appeals for the Third Circuit has not expressly addressed the "akin to contempt" standard, courts in this Circuit have applied it when considering *sua sponte* sanctions.  *See In re 15375 Mem'l Corp.*, 430 B.R. 142, 150 (Bankr. D. Del. 2010) ("In *sua sponte* circumstances . . . there is no 'safe harbor' in the rule allowing lawyers to correct or withdraw their challenged filings.  Courts will therefore impose 'sua sponte sanctions only in situations that are akin to contempt of court.'") (assessing bankruptcy Rule 9011 sanction issue and citing *United Nat'l Ins. Co.*, 242 F.3d 1102) (punctuation omitted); *see also Hockley by Hockley v. Shan Enterprises Ltd. P'ship*, 19 F. Supp. 2d 235, 240 (D.N.J. 1998) ("Implicit in the amended Rule 11 is the policy provision that, absent clearly abusive behavior akin to contempt of court, a party will always have the chance to withdraw offending papers it has submitted.").

 When contemplating sanctions, "[t]he court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed. R. Civ. P. 11, 1983 Adv. Comm. Note.  "[W]hat constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was

based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar." *Id.*; *see generally* Gregory P. Joseph, 1 Sanc. Fed. Law of Lit. Abuse § 8 (2021) ("At its simplest, the duty to perform an adequate factual investigation requires no more than a reasonable inquiry into each factual element of the position asserted.").

Finally, "disagreement about the resolution of a legal matter in litigation is not a ground for sanctions." *TEGG Corp. v. Beckstrom Elec. Co.*, No. CIV.A. 08-435, 2008 WL 5216169, at *5 (W.D. Pa. Dec. 10, 2008) (citing *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987)); *see also Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 96 (3d Cir. 1988) (reversing sanctions order based on court's erroneous interpretation of duty of candor).

**B.    There is No Basis for Finding Any Violation of Rule 11 or Other Obligation Concerning the Escape Evidence or Victim Family Communication**

There is no basis upon which the Court can impose sanctions under Rule 11(b)(2) as the DAO engaged in a reasonable inquiry at the time it submitted its Notice of Concession and follow-up Brief of facts such that its concession was "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

Ms. Winkelman explained that the Capital Case Review Committee promptly reviewed this case on remand. Tr., at 23:23-25:5.  Mr. George "read[] the Opinions and Briefs [in this matter], Briefs filed by the prior Administration, Opinions in Appellate Courts addressing the issues.  And that escape attempt was not ever mentioned in any of them." *See id.* at 63:9-19.

The Committee recommended that the DAO concede relief on Wharton's remaining habeas claim.  *See id.* at 24:7-23.  It concluded that Wharton's counsel provided ineffective assistance at Wharton's sentencing hearing because he did not present evidence of Wharton's adjustment to prison at the second penalty phase hearing.  *See* ECF 162, at 3.  The DAO promptly apprised the Court of this conclusion by submitting a Notice of Concession, in a form consistent with the practice of the current and prior administrations whenever the DAO conceded relief.  ECF 155; *see also* Tr., at 24:18-23.

Mr. Kaufman, who signed the Notice, was not a part of the Committee's decision-making process, and he signed the Notice at the direction of his supervisors.  Mr. George stated that he "would have been part of informing Mr. Kaufman of the Committee's decision," Tr. at 77:21-78:4, which was the operating practice of DAO.  Hence, Mr. Kaufman relied on the Committee's directive to concede relief on behalf of DAO.  *See generally* Joseph, 1 Sanc. Fed. Law of Lit. Abuse § 8.

There are no grounds for finding a violation of Rule 11 (or any other law or rule.)

First, the Capital Case Review Committee did not know about the escape attempt, nor would it have made a difference.  As we have demonstrated, the former District Attorney who zealously sought and defended the death penalty never referenced or sought to use this evidence.  Indeed, even the AG's Office argued at the hearing that this evidence was irrelevant at the penalty hearings.  Specifically, Mr. Barker stated, "I don't believe that the escape was admissible under the evidence that was presented at trial." Tr., at 67:24-68:1.

And even if the Committee had known about the escape evidence, the Notice of Concession would not have referenced it because the Notice simply stated the decision of

- 9 -

the DAO to concede.  *See* Memorandum in Support of Motion to Cancel and Dismiss (ECF 300-1), at 3-4, 9-11, 24-33.  It was not an advocacy paper, and it did not provide – and was not required to provide -- supporting or contrary evidence.  Indeed, this Court did not request any information about the evidentiary support for or against concession. ECF 160, at 6, 12 (Mar. 4, 2019 Memorandum Opinion); ECF 161 (Order stating that the parties "may file . . . a brief addressing the issues raised in the accompanying memorandum" and specifying the two issues); ECF 162 (DAO's April 3, 2019 Brief (addressing the two specific issues identified in ECF 161 and 162).

Second, even when the evidence was presented by the Attorney General, the Committee did not change its position on the legal issue of ineffective assistance of counsel.

Third, while this Court was persuaded that this evidence would have more than neutralized any evidence of good adjustment in prison, it found sufficient basis to issue a Certificate of Appealability, demonstrating that reasonable jurists might disagree over the significance of the escape attempt to the *Strickland* claim.

On the issue of the communications with the victims' family, the Court has been critical of what it deems lack of full and meaningful communications.  But whatever the merits of this criticism (and the DAO has stated that it should have reached out as well to the surviving victim) that has nothing to do with Rule 11 or any other relevant ethical or legal obligation as that criticism does not relate to a "lack of investigation" of a legal or factual issue of relevance in the case.

**C.    There is No Basis for Finding Any Violation of Rule 11 or Other Obligation Concerning the Court of Appeals Remand**

At the hearing, the Court questioned Respondents about their views on what was required on remand.  *See, e.g.*, Tr., at 14:22-26:13, 63:20-66:5, 94:23-96:18.  The Court's questions focused on the following portion of the opinion:

> [T]o determine whether Wharton's proffered evidence had a reasonable probability of changing at least one juror's vote, 'we must reconstruct the record and assess it anew. In so doing, we cannot merely consider the mitigation evidence that went unmentioned in the first instance; we must also take account of the anti-mitigation evidence that the Commonwealth would have presented to rebut the petitioner's mitigation testimony.'

*Wharton v. Vaughn*, 722 F. App'x 268, 282–83 (3d Cir. 2018).  The Court of Appeals found that Wharton "made a prima facie showing that there is a reasonable probability that at least one juror would have changed his or her vote if presented with this evidence."  *Id.* at 283.

At the hearing, the Court stated that the Court of Appeals' opinion

> Further confirms my view that you [Respondents] were obligated to present both evidence in favor of Mr. Wharton -- and by the way, you are the Prosecutor.  We have a Defense Attorney very capable of doing that.  But it was expected that you would present not only favorable evidence, but evidence that would not be favorable.  And you withheld the fact that Mr. Wharton violently escaped from a City Hall Courtroom.

Tr., at 16:19-17:1.

The Court's criticism appears to be based on its understanding that the Court of Appeals mandated a full vetting of all evidence when it directed "we must reconstruct the record and assess it anew," that "we cannot merely consider the mitigation evidence that went unmentioned in the first instance," and that "we must also take account of the anti-mitigation evidence that the Commonwealth would have presented to rebut the

petitioner's mitigation testimony." *Wharton*, 722 F. Appx. at 282-83 (quoting *Williams v. Beard*, 637 F.3d 195, 227 (3d Cir. 2011)).

The Court appears to take the Notice of Concession as defiance of the Court of Appeals' mandate.  This is mistaken.  The Court of Appeals simply directed how the issue should be assessed *by the Court.  E.g., Williams*, 637 F.3d at 227-37.  Fundamentally, the Court of Appeals' view of the scope of the hearing, while instructive to the Court and parties, *if a hearing is held*, has nothing to do with the required contents of the DAO's statement conceding Wharton's *Strickland* claim.  On remand, the Court and the parties were in the same position as they were before the Court addressed this habeas petition, and parties often concede issues or arguments that narrow or preclude an evidentiary hearing.[4]  Moreover, the Court of Appeals' direction to this Court on the scope of an evidentiary hearing on remand is hardly surprising, as it found that there should have been an evidentiary hearing on the *Strickland* claim.

Accordingly, the Capital Case Review Committee did what it was fully entitled to do – it reviewed the matter and decided whether to concede the legal issue.  The Court of Appeals did not (1) preclude the DAO from conceding relief or otherwise changing its legal position; or (2) require the DAO to present any evidence – pro or con – in a Notice of Concession or at any time prior to a hearing; or (3) require the DAO to take the matter to a hearing.  Respondents, therefore, cannot be criticized for acting contrary to the Court of Appeals decision, as the Court's questions appear to do.

---

[4] On the Court's concern that the DAO was seeking to undermine the limits on habeas relief, we rest on the arguments made at the hearing.  *See, e.g.*, Tr. at 5:25-9:3, 27:25-31:4.  A party's good faith pleadings on a legal issue, even if rejected by a court, provide no basis for Rule 11 or any other sanctions.  This applies with the same full force in habeas cases as it does in all federal litigation.

III.   **<u>CONCLUSION</u>**

This is an extraordinary matter not only because it is a death penalty matter. There is no basis for sanctioning or criticizing Respondents, who complied fully with their legal and ethical obligations.  As a matter of law, Respondents may take legal positions that are contrary to this Court's views on habeas jurisprudence and the traditional alignments of the prosecutor and the defendant.  While a Court may disagree with a party's legal position and think it incorrect, it is yet another matter for the Court to threaten sanctions for doing so.  The Court should withdraw all suggestions of ethical violations or sanctionable conduct or refer the matter to the Chief Judge pursuant to Local Rule 83.6(V).

Dated:  July 14, 2022

Respectfully submitted,

KAIRYS, RUDOVSKY, MESSING,
FEINBERG & LIN

By: *<u>/s/ David Rudovsky</u>*
    David Rudovsky (No. 15168)
    drudovsky@krlawphila.com

718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

By: *<u>/s/ John S. Summers</u>*
    John S. Summers (No. 41854)
    jsummers@hangley.com
    Andrew M. Erdlen (No. 320260)
    aerdlen@hangley.com

One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
(215) 568-6200

*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I, John S. Summers, hereby certify that on July 14, 2022, I caused the foregoing

Supplemental Memorandum in Opposition to the Imposition of Any Sanctions to be

served on the following counsel of record via ECF:

James P. Barker
Cari Mahler
Pennsylvania Office of Attorney
General
16th Floor-Strawberry Square
Harrisburg, PA 17120

Elizabeth McHugh
Claudia Van Wyk
Federal Community Defender Office
Capital Habeas Corpus Unit District
Attorney's Office
601 Walnut Street, Suite 545 West 3
South Penn Square
Philadelphia, PA 19106


*/s/ John S. Summers*
John S. Summers

*Counsel for Respondents*